## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROCHELLE GARZA, as guardian ad litem to unaccompanied minor J.D., on behalf of herself and others similarly situated,  )  )  ) | |
| c/o ACLU  )  125 Broad Street, 18th Fl.  )  New York, NY  10004,  )  ) | No. 17-cv- _____ |
| Plaintiff,  )  ) | |
| v.  )  ) | |
| ERIC HARGAN, Acting Secretary of Health and Human Services  )  ) | |

ROCHELLE GARZA, as guardian ad litem to                    )
unaccompanied minor J.D., on behalf of                       )
herself and others similarly situated,                            )
    c/o ACLU                                                        )        No. 17-cv- _____
    125 Broad Street, 18th Fl.                             )
    New York, NY  10004,                                        )
                                                          )
                   Plaintiff,                                   )
                                                    )
 v.                                                                         )
                                                    )
ERIC HARGAN, Acting Secretary of Health         )
and Human Services                                               )
U.S. Department of Health & Human                       )
Services                                                                    )
    200 Independence Avenue, S.W.                       )
    Washington, D.C. 20201;                                   )
                                                    )
STEPHEN WAGNER, Acting Assistant                  )
Secretary for Administration for Children and      )
Families, in his official and individual                   )
capacity                                                                    )
    330 C Street, S.W.                                            )
    Washington, D.C. 20201; and                            )
                                                    )
SCOTT LLOYD, Director of Office of                    )
Refugee Resettlement, in his official and           )
individual capacity                                                  )
    330 C Street, S.W.                                            )
    Washington, D.C. 20201,                                   )
                                                    )
                  Defendants.                              )
                                                    )

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES
### (Interference with minor's constitutional right to obtain an abortion)

Plaintiff Rochelle Garza, court-appointed guardian ad litem to minor J.D., on behalf a

class of similarly situated pregnant unaccompanied immigrant minors in the legal custody of the

federal government, for her complaint in the above-captioned matter, alleges as follows:

1

**PRELIMINARY STATEMENT**

1.       There are currently thousands of unaccompanied immigrant minors (also known as unaccompanied children, or "UCs") in the legal custody of the federal government. These young people are extremely vulnerable: Many have come to the United States fleeing abuse and torture in their home countries; many have been sexually abused or assaulted either in their home countries, during their long journey to the United States, or after their arrival; some have also been trafficked for labor or prostitution in the United States or some other country; and many have been separated from their families.

2.       The federal government is legally required to provide these young people with basic necessities, such as housing, food, and access to emergency and routine medical care, including family planning services, post-sexual assault care, and abortion.  And as is true with everyone in the United States, the Constitution prohibits the government from imposing an "undue burden" on the right to obtain an abortion.

3.       Defendants have recently revised nationwide policies that allow them to wield an unconstitutional veto power over unaccompanied immigrant minors' access to abortion in violation of their Fifth Amendment rights. Under these nationwide policies, Defendants also force unaccompanied minors who request abortion to visit a pre-approved anti-abortion crisis pregnancy center, which requires the minor to divulge the most intimate details of her life to an entity hostile to their abortion decision, in violation of her First and Fifth Amendment rights. Defendants also force minors to notify parents or other family members of their request for abortion and/or the termination of their pregnancy, or notify family members themselves, in violation of the First and Fifth Amendments.

4.       Recently, an unaccompanied immigrant minor in the legal custody of the federal government, J.D., learned she was pregnant and told the shelter in Texas where she lives that she would like to have an abortion. Because Texas requires parental consent or a judicial waiver of that requirement, J.D. (for "Jane Doe;" a motion to refer to her by pseudonymous initials will be forthcoming) went to court and, with the assistance of an attorney ad litem and a guardian ad

litem, received judicial permission to consent to the abortion on her own.  Defendants have,

however, taken the position that J.D. is prohibited from accessing an abortion: Defendants will

not transport her for the abortion, nor will they allow anyone else to do so.  Defendants are

essentially holding J.D. hostage to prevent her from getting an abortion in blatant violation of

J.D.'s constitutional rights.

5.      Defendants have also forced J.D. to visit a religious, anti-abortion crisis

pregnancy center, and, over J.D.'s objections, told J.D.'s mother that J.D. was pregnant. To

vindicate her constitutional rights to terminate her pregnancy and to avoid compelled speech, her

court-appointed guardian ad litem, Rochelle Garza seeks an immediate TRO to grant J.D. access

to judicially approved abortion, and on behalf of the class of similarly situated unaccompanied

immigrant minors, a preliminary injunction to prevent Defendants from obstructing, interfering

with, or blocking other individuals' access to abortion.

6.      While abortion is a very safe procedure, each week of delay increases the risk

associated with it.

7.      Absent emergency injunctive relief, Defendants' actions will have the effect of

forcing J.D. to continue her pregnancy and have a baby against her will.

## JURISDICTION AND VENUE

8.      This action arises under the First and Fifth Amendments to the United States

Constitution and presents a federal question within this Court's jurisdiction under Article III of

the Constitution and 28 U.S.C. § 1331.

9.      Plaintiff's claims for declaratory and injunctive relief are authorized by 28 U.S.C.

§§ 2201 and 2202, by Federal Rules of Civil Procedure 57 and 65, and by the inherent equitable

powers of this Court.

10.     Plaintiff J.D. is entitled to damages based on civil rights violations committed by

federal officials contrary to the First and Fifth Amendments to the United States Constitution

pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).

11.     The Court has authority to award costs and attorneys' fees under 28 U.S.C. § 2412.

12.     Venue is proper in this district under 28 U.S.C. § 1391(e).

### PARTIES

13.     Plaintiff Rochelle Garza is the court-appointed guardian ad litem for J.D., a minor who came to the United States without her parents from her home country. J.D. was detained by the federal government and placed in a federally funded shelter in Texas. J.D. is years old, pregnant, and told the staff at the shelter where she is currently housed that she wanted an abortion. J.D. faced extreme resistance from Defendants. After Plaintiff's counsel contacted Defendants' counsel, J.D. was allowed to pursue a judicial bypass in lieu of securing parental consent for the abortion as required by Texas law. With the assistance of attorney and guardian ad litems, J.D. secured a court order permitting her to have an abortion without parental consent. Nevertheless, Defendants have now taken the position that they will not allow J.D. to access abortion.

14.     J.D. was forced to cancel multiple appointments for state-mandated counseling and the abortion due to Defendants' obstruction, which has pushed J.D. later into pregnancy; although abortion is very safe, each week of delay increases the risks. Abortion is approximately 14 times safer than childbirth in terms of morbidity. Absent a TRO from this Court, J.D. will be forced to carry to term against her will.

15.     Defendants also forced J.D. to visit an anti-abortion crisis pregnancy, and over J.D.'s objection, Defendants told J.D.'s mother about her pregnancy.

16.     Defendants' actions have caused, and continue to cause, J.D. physical, mental, and emotional pain and suffering.

17.     J.D. will move this Court to be referred to in this litigation by the initials "J.D." for "Jane Doe" to protect her privacy.  She fears retaliation because she has requested an abortion, and she does not want her family to know she is seeking an abortion.

18.     J.D. sues on her own behalf and as the class representative of other similarly situated young women.

19.     Defendant Eric Hargan is the Acting Secretary of the United States Department of Health and Human Services ("HHS") and is responsible for the administration and oversight of the Department. Defendant Hargan has authority over the Administration for Children and Families, a subdivision of HHS. By interfering with, prohibiting and/or obstructing unaccompanied immigrant minors' access to abortion, Defendant Hargan is violating the First and Fifth Amendments.

20.     Defendant Steven Wagner is the Acting Assistant Secretary for Administration for Children and Families. Defendant Wagner has authority over the Office of Refugee Resettlement ("ORR"), a subdivision of Administration for Children and Families. By interfering with, prohibiting and/or obstructing unaccompanied immigrant minors' access to abortion, Defendant Wagner is violating the First and Fifth Amendments.  Defendant Wagner is sued in his individual capacity.

21.     Defendant Scott Lloyd is the Director of ORR. By interfering with, prohibiting and/or obstructing unaccompanied immigrant minors' access to abortion, Defendant Lloyd is violating the First and Fifth Amendments.  Defendant Lloyd is sued in his individual capacity.

## FACTS GIVING RISE TO THIS ACTION

### The Unaccompanied Children ("UC") Program

22.     ORR has responsibility for the "care and custody of all unaccompanied [] children, including responsibility for their detention, where appropriate." 8 U.S.C. § 1232(b)(1). Unaccompanied immigrant minors are under 18 years old, have no legal immigration status, and either have no parent or legal guardian in the United States, or there is no parent or legal guardian in the United States able to provide care and physical custody. 6 U.S.C. § 279(g)(2).

23.     By statute, any federal department or agency that determines that it has an unaccompanied immigrant minor in its custody must transfer the minor to ORR within 72 hours

of making that determination. *Id.* § 1232(b)(3). The federal government reports that in Fiscal

Year 2016, 59,692 unaccompanied immigrant minors were referred to ORR.

24.     The federal government and all of its programs are required to ensure that the best

interests of the unaccompanied immigrant minor are protected. Section 462 of the Homeland

Security Act requires ORR to "ensur[e] that the interests of the child are considered in decisions

and actions relating to the care and custody of an unaccompanied child." 6 U.S.C. §

279(b)(1)(B).

25.     In addition, Section 235 of the Trafficking Victims Protection Act directs HHS to

ensure that unaccompanied immigrant minors are "promptly placed in the least restrictive setting

that is in the best interest of the child." 8 U.S.C. § 1232(c)(2)(A).

26.     Most unaccompanied immigrant minors who are referred to ORR are eventually

released from custody to parents or sponsors who live in the United States. Such minors are often

held in short-term facilities or shelters while they await release to their parents or sponsors. A

significant number of unaccompanied immigrant minors are not released to parents or sponsors,

and spend longer periods of time in custody. For some minors, ORR cannot identify an

individual who can serve as a viable sponsor. Young people who are expected to be in the

government's custody for an extended period or those who have special needs are sometimes

transferred to group homes or a foster family. For others, ORR may determine that the minor

should be placed in a more restrictive custodial setting. Young people who are flight risks, for

example, are held in jail-like facilities with limited, if any, freedom.

## Unaccompanied Immigrant Minors Are Legally Entitled to Receive Access to Reproductive Health Care

27.     Unaccompanied immigrant minors have an acute need for reproductive health

care, which is both time-sensitive and is necessary over the course of their time in federal

custody. For example, a high number of these young women are victims of sexual assault. Some

of these women will need access to emergency contraception, and some will need access to

abortion. Any female aged 10 or older must undergo a pregnancy test within 48 hours of

admission to an ORR-funded facility. This is the point at which many young women first learn

they are pregnant. Many unaccompanied minors need pregnancy prevention services and/or

access to abortion during their short or long periods in ORR custody.

28.     The federal government is legally obligated to ensure that all programs that

provide care to these young people comply with the minimum requirements detailed in the

*Flores v. Reno* Settlement Agreement, CV-85-4544-RJK (C.D. Cal. Jan. 17, 1997) ("*Flores*

agreement"). The *Flores* agreement is a nationwide consent decree that requires the government

to provide or arrange for, among other things, "appropriate routine medical . . . care," including

specifically "family planning services[] and emergency health care services."

29.     Additionally, in response to its obligations under the Prison Rape Elimination Act

and the Violence Against Women Reauthorization Act of 2013, ORR issued a regulation

requiring all ORR-funded care provider facilities to, among other things, provide unaccompanied

immigrant minors who are victims of sexual assault with access to reproductive healthcare. The

regulation states, in relevant part, that grantees providing care to unaccompanied immigrant

minors who have experienced sexual abuse while in federal custody must ensure "unimpeded

access to emergency medical treatment, crisis intervention services, emergency contraception,

and sexually transmitted infections prophylaxis." 45 C.F.R. § 411.92(a). The regulation further

provides that grantees must ensure that a young person subject to sexual abuse is offered a

pregnancy test, and "[i]f pregnancy results from an instance of sexual abuse, [the] care provider

facility must ensure that the victim receives timely and comprehensive information about all

lawful pregnancy-related medical services." *Id.* § 411.93(d). Grantees were required to comply

with this regulation by June 24, 2015.

30.     Upon information and belief, unaccompanied immigrant minors face significant

barriers to obtaining services not provided by the government and/or its grantees. For example,

even if a teen can leave the shelter, she still may not be able to obtain access to abortion or

contraceptives without assistance because she likely speaks little or no English; she may have no

support system, other than that provided by the federal program; she may have no means of

transportation to the doctor's office; and she may have little or no financial resources. If she is not informed that contraceptives and abortions are available in the United States, she may not even know that these options exist, given that many of these young people come from countries where abortion is illegal.

### Defendants' Interference With, Obstruction, or Prohibition On Unaccompanied Immigrant Minors' Access to Abortion

31.     Defendants are wielding an unconstitutional veto power over unaccompanied immigrant minors' access to abortion. In March 2017, ORR revised its policies to prohibit all federally funded shelters from taking "any action that facilitates" abortion access for unaccompanied minors in their care without "direction and approval from the Director of ORR." This includes scheduling appointments with medical providers, ensuring access to non-directive options counseling, ensuring access to court to seek a judicial bypass in lieu of parental consent, and providing access to the abortion itself.

32.     In an email to all ORR staff, then-Acting Director of ORR Ken Tota summarized the policy: "Grantees are prohibited from taking any actions in [requests for abortion] without . . . signed authorization from the Director of ORR."

33.     Defendants have exercised their unconstitutional veto power to deny J.D. access to abortion. After Plaintiff's counsel's intervention, Defendants permitted J.D. to seek a judicial bypass in lieu of parental consent required by Texas law. J.D. secured that court order with the assistance of an attorney ad litem and a guardian ad litem, Plaintiff Garza. J.D. had an appointment scheduled with a health center for options counseling (the first step in the process of obtaining an abortion under Texas law), but Defendants told the ad litems, Plaintiff's counsel, and the shelter that Defendants prohibited J.D. to be transported by her ad litems to the health

center. Defendants also made clear that J.D. would be prohibited from obtaining the abortion itself.

34.     The judicial bypass order obtained for J.D. is still valid. Plaintiff Garza is ready and able to transport J.D. to all appointments necessary for the abortion, including the state-mandated options counseling sessions and the medical procedure itself.

35.     Upon information and belief, Defendants have instructed the shelter in which J.D. resides to prohibit J.D. from leaving the facility to access abortion, and has told the shelter that if they allow her access, they will revoke the shelter's government grant. But for that instruction, the shelter is willing to allow Plaintiff Garza to transport J.D. to the abortion facility.

36.     Upon information and belief, Stephen Wagner and/or Scott Lloyd personally authorized ORR to block J.D.'s access to abortion.

37.     Defendants have also interfered with abortion access for other minors. In fact, the Director of ORR, Scott Lloyd, has taken the position that "[g]rantees should not be supporting abortion services pre or post-release; only pregnancy services and life-affirming options counseling."

38.     Defendants' actions toward J.D. are consistent with their policy, which has been enforced against other young women as well.

39.     For example, in March 2017, another unaccompanied minor at a federally funded shelter in Texas decided to have an abortion. After obtaining a judicial bypass and receiving counseling, she started the medical abortion regimen for terminating a pregnancy. This regimen begins with a dose of mifepristone, followed by a dose of misoprostol within 48 hours later. After the minor took the mifepristone, ORR intervened, and forced her to go to an "emergency room of a local hospital in order to determine the health status of [her] and her unborn child."

The Acting Director of ORR, Ken Tota, directed ORR as follows: "[i]f steps can be taken to preserve the life of . . . her unborn child, those steps should be taken." Eventually, after the intervention of other advocates, ORR allowed the minor to complete the medication abortion and take the second dose of pills.

40.     Furthermore, Defendant ORR Director, Scott Lloyd, has personally contacted one or more unaccompanied immigrant minors who was pregnant and seeking abortion, and discussed with them their decision to have an abortion. Upon information and belief, Defendant Lloyd is trying to use his position of power to coerce minors to carry their pregnancies to term.

41.     ORR has also created a nationwide list of "Trusted Providers in HHS Cities," which is predominately comprised of anti-abortion crisis pregnancy centers.

42.     Crisis pregnancy centers ("CPCs") are categorically opposed to abortion, and generally do not provide information about pregnancy options in a neutral way. Many are also religiously affiliated, and proselytize to women.

43.     Defendants forced J.D. to visit one of these centers for "counseling," forcing her to share her most private personal and medical information to an entity that is hostile to her decision to have an abortion.

44.     Defendants have also required other minors to be counseled by crisis pregnancy centers, both before and after the abortion, including at the explicit direction of Defendant ORR Director Scott Lloyd.

45.     Defendants have also unconstitutionally forced unaccompanied immigrant minors to tell their parents and/or immigration sponsors about their abortion decision, or Defendants themselves have told minors' family members or sponsors about the minors' pregnancy and/or abortion decision, against the express wishes of the minor, both before and after the abortion.

46.     Defendants told J.D.'s mother about J.D.'s pregnancy – over J.D.'s objections –

and are trying to force J.D. to also tell her mother she is pregnant and seeking an abortion. In

another minor's case, Defendant Lloyd explicitly required "the grantee or the federal field staff

[to] notify her parents of the termination," even after she had obtained a judicial bypass to be

allowed to access abortion without her parents' involvement or knowledge.

## CLASS ALLEGATIONS

47.     Pursuant to Federal Rule of Civil Procedure 23(b)(1) and (b)(2), Plaintiff Rochelle

Garza brings this action as a class on her behalf of J.D., and on behalf of all other pregnant

unaccompanied immigrant minors in ORR custody nationwide, including those who will become

pregnant during the pendency of this lawsuit.

48.     The class is so numerous that joinder is impracticable. In any given year, there are

hundreds of pregnant unaccompanied minors in defendants' custody. Joinder is inherently

impractical because the number of unnamed, future class members who will be pregnant while in

ORR custody is unknown and unknowable, especially given the transient nature of the

unaccompanied minors population and the temporal limitations of pregnancy. The young people

affected by ORR's abortion restriction policy are geographically dispersed across the country.

Proposed class members are highly unlikely to file individual suits on their own behalf given the

practical, legal, linguistic, monetary, and fear-based barriers that prevent their ability to access

independent counsel to challenge ORR's abortion restrictions.

49.     The claims of the Plaintiff Class members share common issues of law, including

but not limited to whether: i) ORR's policy of exercising a veto power over a UC's abortion

access; ii) HHS's policy of requiring a forced visit to an anti-abortion crisis pregnancy center;

and iii) disclosing – or forcing the minor to disclose - to parents or immigration sponsor her abortion decision violate the Constitution.

50.     The claims of the Plaintiff Class members share common issues of fact, including but not limited to the implementation of Defendants' policy and practice of obstructing or preventing of access to abortion in the various ways detailed above.

51.     The claims of J.D. are typical of the claims of members of the Plaintiff Class.

52.     The named Plaintiff will fairly and adequately protect the interests of the Plaintiff Class. The named Plaintiff has no interest that is now or may be potentially antagonistic to the interests of the Plaintiff Class. The attorneys representing the named Plaintiff are experienced civil rights attorneys and are considered able practitioners in federal constitutional litigation. These attorneys should be appointed as class counsel.

53.     Defendants have acted, have threatened to act, and will act on grounds generally applicable to the Plaintiff Class, thereby making final injunctive and declaratory relief appropriate to the class as a whole. The Plaintiff Class may therefore be properly certified under Fed. R. Civ. P. 23(b)(2).

54.     Prosecution of separate actions by individual members of the Plaintiff Class would create the risk of inconsistent or varying adjudications and would establish incompatible standards of conduct for individual members of the Plaintiff Class. The Plaintiff Class may therefore be properly certified under Fed. R. Civ. P. 23(b)(1).

## <u>CAUSES OF ACTION</u>

### <u>FIRST CLAIM FOR RELIEF</u>
**FIFTH AMENDMENT RIGHT TO PRIVACY AND LIBERTY**
**(PLAINTIFF J.D. AND CLASS AGAINST DEFENDANTS)**

55.     Defendants violate unaccompanied immigrant minors' right to privacy guaranteed by the Fifth Amendment by wielding a veto power over their abortion decisions, and obstructing, interfering with, or blocking access to abortion, including by forcing minors to visit crisis pregnancy centers and preventing them from going to medical facilities where they can obtain legal abortions.

56.     Defendants violate the Fifth Amendment rights of unaccompanied minors by revealing, or forcing the minors to reveal, information about their pregnancy and abortions to their parents or other family members, including immigration sponsors, both before and after the abortion.

## SECOND CLAIM FOR RELIEF
### FREEDOM OF SPEECH
### (PLAINTIFF J.D. AND CLASS AGAINST DEFENDANTS)

57.     By compelling unaccompanied immigrant minors to discuss their decisions to have abortions and the circumstances surrounding those decisions with crisis pregnancy centers, and with their parents or immigration sponsors, Defendants violate the unaccompanied immigrant minors' rights against compelled speech guaranteed by the First Amendment.

## THIRD CLAIM FOR RELIEF
### INFORMATIONAL PRIVACY
### (PLAINTIFF J.D. AND CLASS AGAINST DEFENDANTS)

58.     By requiring unaccompanied immigrant minors to disclosure their identities, their pregnancies, and their decisions to seek or have an abortion, to a crisis pregnancy center, parents, and/or immigration sponsors, Defendants violate the minors' rights to informational privacy guaranteed by the Fifth Amendment.

## FOURTH CLAIM FOR RELIEF
### FIRST AMENDMENT – ESTABLISHMENT CLAUSE

**(PLAINTIFF J.D. AND CLASS AGAINST DEFENDANTS)**

59.     Defendants violate the Establishment Clause by requiring unaccompanied immigrant minors to obtain counseling at crisis pregnancy centers that are often religiously affiliated, and that proselytize the unaccompanied immigrant minors who are forced to go there.

60.     Defendants' actions alleged herein endorse and impose upon the class members a particular set of religious beliefs.

61.     Defendants' actions alleged herein have the predominant purpose of advancing a particular set of religious beliefs.

62.     Defendants' actions alleged herein have the predominant effect of advancing a particular set of religious beliefs.

63.     Defendants' actions alleged herein are religiously coercive.

**FIFTH CLAIM FOR RELIEF**
**FIFTH AMENDMENT AND *BIVENS***
**(PLAINTIFF J.D. AGAINST DEFENDANTS WAGNER AND LLOYD)**

64.     Defendants Wagner and/or Lloyd acted intentionally and unlawfully in violating Plaintiff J.D.'s clearly established rights under the Fifth Amendment by vetoing her abortion decision and blocking her ability to obtain an abortion, and otherwise obstructing, interfering with access to abortion, including forcing J.D. to visit a crisis pregnancy center, telling J.D.'s mother about her pregnancy, and attempting to force J.D. to discuss her pregnancy and abortion decision with her mother. These defendants therefore caused J.D. to suffer injuries that can be compensated with money damages.

65.     Defendants Wagner and Lloyd acted with the intention of violating J.D.'s Fifth Amendment rights, or with reckless indifference or callous disregard for J.D.'s Fifth Amendment rights, thus entitling her to punitive damages.

66.     These violations are redressable under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971).

### SIXTH CLAIM FOR RELIEF
### FIRST AMENDMENT AND *BIVENS*
### (PLAINTIFF J.D. AGAINST DEFENDANTS WAGNER AND LLOYD)

67.     Defendants Wagner and/or Lloyd acted intentionally and unlawfully in violating J.D.'s clearly established rights under the First Amendment to refrain from compelled speech by forcing J.D. to visit a crisis pregnancy center and discuss her medical decisions.

68.     Defendants Wagner and Lloyd acted with reckless indifference or callous disregard for J.D.'s First Amendment rights, thus entitling her to punitive damages.

69.     These violations are redressable under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971).

### RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and:

1.     Certify this action as a class action under Federal Rule of Civil Procedure 23.

2.     Declare, pursuant to 28 U.S.C. § 2201, that Defendants' actions, as set forth above, violate the Establishment and Free Speech Clauses of the First Amendment to the United States Constitution, and the Fifth Amendment right to privacy, liberty, and informational privacy;

3.     Enter a Temporary Restraining Order preventing Defendants from obstructing J.D.'s access to abortion;

4.     Enter a preliminary injunction as to the Plaintiff Class;

5.      Enter a permanent injunction preventing Defendants from wielding a veto power over an unaccompanied minors' abortion decision, including interfering, obstructing, or blocking her abortion;

6.      Enter a permanent injunction preventing Defendants from forcing unaccompanied immigrant minors from visiting crisis pregnancy centers as a condition of having an abortion or after an abortion;

7.      Enter a permanent injunction preventing Defendants from revealing, or forcing unaccompanied immigrant minors to reveal, to the minors' parents or immigration sponsors information about the minors' abortion decisions, either prior to or after the abortion decisions;

8.      Enter a permanent injunction preventing Defendants from retaliating against unaccompanied immigrant minors for seeking or obtaining abortions;

9.      Award compensatory and punitive damages to J.D. against Defendants Wagner and Lloyd in an amount to be determined at trial;

10.     Award costs and fees for this action, including attorneys' fees;

11.     Award such further relief as this Court deems appropriate.


October 13, 2017

<div style="margin-left:40%">

Respectfully Submitted,

/s Arthur B. Spitzer

Arthur B. Spitzer (D.C. Bar No. 235960)
Scott Michelman (D.C. Bar No. 1006945)
American Civil Liberties Union Foundation
  of the District of Columbia
4301 Connecticut Avenue NW, Suite 434
Washington, D.C. 20008
Tel. 202-457-0800
Fax 202-457-0805

</div>

*aspitzer@acludc.org*
*smichelman@acludc.org*

Brigitte Amiri*
Meagan Burrows*
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Tel. (212) 549-2633
Fax (212) 549-2652
*bamiri@aclu.org*

Daniel Mach (D.C. Bar No. 461652)
American Civil Liberties Union Foundation
915 15th Street NW
Washington, DC 20005
Telephone: (202) 675-2330
*dmach@aclu.org*

Jennifer L. Chou
Mishan R. Wroe
American Civil Liberties Union Foundation of
Northern California, Inc.
39 Drumm Street
San Francisco, CA 94111
Tel. (415) 621-2493
Fax (415) 255-8437
*jchou@aclunc.org*
*mwroe@aclunc.org*

Melissa Goodman
American Civil Liberties Union Foundation of
Southern California
1313 West 8th Street
Los Angeles, California 90017
Tel. (213) 977-9500
Fax (213) 977-5299
*mgoodman@aclusocal.org*

*Motion for admission for *pro hac vice* forthcoming

*Attorneys for Plaintiff*