# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ROCHELLE GARZA, as guardian ad litem to unaccompanied minor J.D., on behalf of J.D. and others similarly situated, | ) ) ) ) | |
|     c/o ACLU | ) | |
|     125 Broad Street, 18th Fl. | ) | Civil Action No. 17-cv-02122-TSC |
|     New York, NY 10004, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     v. | ) | |
| | ) | |
| ERIC D. HARGAN, Acting Secretary, Health and Human Services, et al., | ) ) | |
|     200 Independence Avenue, S.W. | ) | |
|     Washington, D.C. 20201; | ) | |
| | ) | |
| STEPHEN WAGNER, Acting Assistant Secretary for Administration for Children and Families, in his official and individual capacity | ) ) ) ) | |
|     330 C Street, S.W. | ) | |
|     Washington, D.C. 20201; and | ) | |
| | ) | |
| SCOTT LLOYD, Director of Office of Refugee Resettlement, in his official and individual capacity | ) ) ) | |
|     330 C Street, S.W. | ) | |
|     Washington, D.C. 20201, | ) | |
| | ) | |
|     Defendants. | ) | |

---

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND MOTION FOR A PRELIMINARY INJUNCTION

---

CHAD A. READLER
Acting Assistant Attorney General

SCOTT G. STEWART (D.C. Bar No. 990396)
Deputy Assistant Attorney General

By: *s/ Alexander K. Haas*
ALEXANDER K. HAAS (D.C. Bar No. 1007081)
Special Counsel to the Assistant Attorney General
United States Department of Justice
Civil Division
950 Pennsylvania Ave., NW
Washington, DC 20430
Tel: (202) 353-8679
Fax: (202) 252-2599
Email: alex.haas@usdoj.gov

DATED:  October 17, 2017          Attorneys for Defendants

## INTRODUCTION[1]

This Court should reject Jane Doe's request for an order directing the government to affirmatively facilitate her decision to have an elective abortion.  Ms. Doe cannot meet the requirements for a temporary restraining order or a preliminary injunction.  And she certainly cannot meet the demanding standard for the effectively permanent relief that she seeks:  a mandate that the government facilitate her, an unaccompanied alien minor who entered the United States illegally while pregnant and who is in a shelter in Texas, obtaining an irreversible elective abortion.

All relevant criteria weigh strongly against granting Ms. Doe the order she seeks.

*First*, Ms. Doe has no likelihood of succeeding on the claims supporting her request for injunctive relief.  Ms. Doe contends that the government has imposed an unconstitutional "undue burden" by failing to provide her with transportation to an abortion facility or by otherwise facilitating her abortion.  The government has not imposed any undue burden, but instead has exercised a legitimate choice to refuse to facilitate an abortion.  Any undue-burden argument is particularly unsound here, where Ms. Doe could request a voluntary departure from the United States, yet has not done so and has instead has chosen to remain in federal custody.  Her failure to make this request—despite the option being made clear for weeks—underscores that she is demanding that the government facilitate abortion.  Ms. Doe next contends that the government is violating the Fifth Amendment "by forcing minors to tell their parents or sponsors about their abortion decision, or telling the parents or sponsors themselves."  Br. 11.  This claim fails too:  to the extent that the government has informed Ms. Doe's parents of her pregnancy, that action does not impose an undue burden and is permissible in light of the strong governmental interest at stake.  Ms. Doe contends

---

[1]  Because this brief responds only to the plaintiff's request for equitable relief, and because government officials may not be sued in an individual capacity for equitable relief relating to their performance of official duties, this brief is filed on behalf of the defendants solely in their official, not individual, capacity.  *See, e.g.*, *Auleta v. United States Dep't of Justice*, No. CV 11-2131 (RWR), 2015 WL 738040, at *4 (D.D.C. Feb. 20, 2015).

finally that the government has violated her First Amendment freedom of speech by compelling her to meet with a crisis pregnancy center to discuss her decision to have an abortion. This claim fails as well because Ms. Doe has not adequately alleged that she has been unlawfully compelled to speak or prohibited from voicing her opinion freely.

*Second*, Ms. Doe cannot establish irreparable injury. It is undisputed that Ms. Doe has several weeks remaining pre-viability in which an abortion would be legally permissible, so it is not necessary for her to obtain emergency judicial relief this week to vindicate the right to abortion that she invokes. What is more, Ms. Doe has options for leaving federal custody—either by requesting a voluntary departure to her home country (which the federal government is willing to expedite if requested) or by being placed in the custody of a sponsor. Given these options, the government is not causing Ms. Doe to carry a pregnancy to term against her will. In contrast, granting immediate relief to Ms. Doe would disrupt the status quo and would irreversibly harm the government's interests without an opportunity for a full adjudication on the merits.

*Finally*, the balance of hardships and public interest weigh strongly against the relief that Ms. Doe has requested. The government has strong and constitutionally legitimate interests in promoting childbirth, in refusing to facilitate abortion, and in not providing incentives for pregnant minors to illegally cross the border to obtain elective abortions while in federal custody. Those interests would be irreparably undercut if Ms. Doe were granted the order she seeks.

However this Court rules on Ms. Doe's motion, it should do so in a way that preserves the right—of both sides—to seek appellate review. In particular, given the magnitude of the interests in play—including the irreversible nature of abortion—any ruling by this Court on the plaintiff's motion should account for the time needed for either party to seek emergency appellate review, which can be resolved in the period in which an abortion would still be legally permissible.

## BACKGROUND

This case arises from Ms. Doe's efforts to compel the government-official defendants to facilitate her decision to obtain an elective abortion.

*Factual Background.*  Jane Doe is a 17-year-old alien minor.  Jane Doe Decl. ¶ 3, Dkt. No. 5-2.  In early September 2017, she attempted to enter the United States without lawful authorization.  White Decl. ¶ 4.  She was detained and placed in federal custody.  *Id.*  She is currently sheltered by a federal grantee in Texas, under the supervision of the Department of Health and Human Services.  *Id.* ¶ 5  Ms. Doe is in federal custody only because she entered the United States illegally and has neither asked to return to her home country nor found a suitable sponsor in whose custody she could be released.  *See Id.* ¶¶ 20-21; *see also* Office of Refugee Resettlement, *ORR Guide: Children Entering the United States Unaccompanied* § 2.2 (Sept. 8, 2017), *available at* http://www.acf.hhs.gov/orr/resource/childrenentering-the-united-states-unaccompanied (ORR makes an ongoing assessment to determine whether there is a suitable sponsor for all children in its care); 6 U.S.C. § 279(a), (b); 8 U.S.C. § 1232(c)(3)(A).

Ms. Doe was given a physical medical examination after which she was informed that she is pregnant.  White Decl. ¶ 7; Jane Doe Decl. ¶ 5.  Ms. Doe alleges that on an unspecified date she was "forced . . . to visit [a crisis pregnancy] center[] for 'counseling'" and "look at [a] sonogram."  Compl. ¶ 43; Jane Doe Decl. ¶ 13.  Sometime thereafter, Ms. Doe requested an elective abortion; under Texas law Ms. Doe would need parental notification and consent to obtain an abortion.  Tex. Fam. Code Ann. §§ 33.001-33.014.  On September 25, a Texas state court granted her a judicial bypass of that consent requirement.  Brigitte Amiri Decl. ¶ 3.  Shelter staff gave Ms. Doe access to counsel and transported her to and from that bypass hearing. White Decl. ¶ 11.

After obtaining the judicial-bypass order, Ms. Doe and an appointed guardian sought release from her shelter so that she could obtain an abortion.  The shelter referred Ms. Doe's request to the

HHS Office of Refugee Resettlement (ORR) under an HHS policy requiring ORR approval for all major surgical procedures, including abortion.  White Decl. ¶¶ 6, 8-12.

ORR is responsible for the care and placement of unaccompanied alien children who enter the United States illegally and are "in federal custody by reason of their immigration status."  6 U.S.C. § 279(b)(1)(A).  ORR's Director is responsible for "ensuring that the interests of the child are considered in decisions and actions relating to the care and custody of an unaccompanied alien child," and for "implementing policies with respect to the care and placement of unaccompanied alien children."  *Id.* § 279(b)(1)(A), (B).  Federal law provides that the Director "shall not release" an unaccompanied minor child "upon their own recognizance."  *Id.* § 279(b)(2)(B).  Organizations that provide shelter and services to unaccompanied minor children—like the federal grantee here— do so at ORR's direction and in compliance with ORR policies and procedures.  White Decl. ¶ 6. ORR engages grantees who care for the unaccompanied alien children at no charge to the children, their parents, or their home nations.

When making a decision regarding an abortion or significant surgical or medical procedure, the ORR Director must review and consider relevant factors and make a decision authorizing the abortion.  6 U.S.C. § 279; White Decl. ¶ 12.  And ORR must take significant affirmative steps to facilitate a significant medical procedure, such as an abortion.  ORR field staff or grantee staff must bring the minor to and from medical appointments diagnosing the minor's pregnancy and evaluating her health; communicate the minor's medical and personal information to ORR; discuss the potential procedure with the minor and her parents; and maintain custody of the minor for the duration of any legal proceedings.  White Decl. ¶ 13.  If a medical procedure such as abortion were approved, ORR and shelter staff would be responsible for working to retain custody of the minor during the procedure and during appointments related to the procedure, as well as during transport to and from such appointments.  *Id.* ¶ 7.  In States like Texas, this requires transportation and

supervision for two appointments.  *Id.* ¶¶ 8, 9.  ORR's role is particularly pronounced in the context of heightened medical procedures such as abortion, which involves possibly serious health impacts on a minor, and thus have significant implications for ORR's responsibility to preserve the minor's well-being.  *Id.*  Indeed, to fulfill its obligations, ORR would need to ensure that the minor's health is stable during and immediately after an abortion.  *Id.*

On September 27, ORR denied Ms. Doe's request to obtain an abortion and to be transported from her shelter so that she could attend the abortion and associated appointments. White Decl. ¶ 10; Amiri Decl. ¶ 4.

***Legal Proceedings.***  This Court is the third forum in which Ms. Doe has sought to force HHS to facilitate an abortion.  On October 5, eight days after ORR's September 27 decision to deny Ms. Doe's request for release, Ms. Doe and her guardian filed two of the three suits they have filed to date.  Each suit seeks to have HHS facilitate Ms. Doe's requested elective abortion procedure.

First, Ms. Doe filed a state habeas lawsuit in Texas state court, seeking a TRO forcing grantees to release Ms. Doe for a scheduled abortion.  *In re Jane Doe*, No. 2017-DLL-06644 (107th Jud. Dist.).  On October 8, that action was removed to the United States District Court for the Southern District of Texas, where it is now pending.  *In re Jane Doe v. International Educational Services (I.E.S.), Inc.*, No. 1:17-cv-00211 (S.D. Tex.).  These ongoing proceedings are sealed, so the defendants do not address them in detail.

Next, and also on October 5, Ms. Doe—represented by the counsel that represents her in this Court—moved to amend a complaint in an existing case, pending in a *California* federal district court, to add Ms. Doe as a plaintiff on behalf of the same putative class she seeks to represent here. *ACLU of Northern California v. Wright*, No. 3:16-cv-03539-LB, Dkt. 82 (N.D. Cal.).  The same day the ACLU filed with the California court a motion for a temporary restraining order seeking the same relief that Ms. Doe seeks here—release of Jane Doe for an abortion procedure.  *Id.*, Dkt. 84.

The plaintiffs in that suit, which has been pending for over 15 months and is near the end of discovery, allege that HHS "violated . . . the Establishment Clause . . . by permitting [religious] organizations to impose religiously based restrictions on the use of taxpayer funds."  First Amended Compl. ¶ 76, *ACLU of Northern California v. Wright*, No. 3:16-cv-03539-LB, Dkt. 57 (N.D. Cal.). The proposed second amended complaint would have added claims materially identical to the claims in this case and would have introduced the issue of abortion access into that suit for the first time.

The California district court rejected the ACLU's attempt to add Ms. Doe to that lawsuit.  In ruling that venue was improper in the Northern District of California, the court highlighted the lack of any connection between the amended claims and that forum:  "No defendant resides here," "[n]o events or omissions took place here," and "Jane Doe is in Texas."  Order Denying Motions for Leave to Amend and a TRO at 6, *ACLU of Northern California v. Wright*, No. 3:16-cv-03539-LB, Dkt. 102 (N.D. Cal. Oct. 11, 2017).  Moreover, a "'substantial part' of the defendants' allegedly wrongful activities relating to the new claims did not occur here: they occurred in Texas."  *Id.*

Finally, on Friday, October 13, Ms. Doe and her guardian filed this suit as a putative class action on behalf of herself and "all other pregnant unaccompanied immigrant minors in ORR custody nationwide."  Compl. ¶ 47.  Ms. Doe claims to seek a TRO or preliminary injunction providing the same relief sought in her Texas proceeding, along with claims identical to those articulated in the California court.  *See, e.g.*, Proposed Second Amended Compl. ¶ 100 *ACLU v. Wright*, (alleging Freedom of Speech Claim); Compl. ¶ 57 (alleging Freedom of Speech Claim using identical language).

As relevant to her motion, Ms. Doe makes three claims.[2]  *First*, she claims that the government is "violating Jane Doe's Fifth Amendment right by preventing [her] from obtaining an abortion."  Mem. in Support of App. for a TRO at 9, Dkt. No. 3-2 ("Br."); *see also id.* at 8-10.  To support this claim, Ms. Doe alleges that she "had several appointments scheduled with a licensed health facility in Texas" for pre-abortion counseling on "September 28 and October 6, 2018" and that she had "an appointment scheduled for the abortion on September 29 and October 7, 2017," but "Defendants prohibited [her] from traveling to the health care center for the examination, counseling, and abortion."  Jane Doe Decl. ¶¶ 9-11.  *Second*, Ms. Doe claims that the government is "violating the Fifth Amendment by forcing minors to tell their parents or sponsors about their abortion decision, or telling the parents or sponsors themselves."  Br. 11; *see also id.* at 11-12.  Ms. Doe alleges that "Defendants told my mother about my pregnancy and are trying to force me to tell her as well."  Jane Doe Decl. ¶ 15.  *Third*, Ms. Doe claims that the government "violate[d] the First Amendment prohibition on government-compelled speech" by "compelling a young woman to disclose her decision to have an abortion and discuss the circumstances surrounding that decision . . . to a third party who is opposed to her decision."  Br. 12; *see also id.* at 12-14.  To support this claim, Ms. Doe alleges that the government has "forced [her] to obtain counseling from a religiously affiliated crisis pregnancy center where [she] was forced to look at the sonogram," and "have been talking to [her] about [her] pregnancy—[she] feel[s] like they are trying to coerce [her] to carry [her] pregnancy to term."  Jane Doe Decl. ¶¶ 13-14.

---

[2] Ms. Doe also makes Establishment Clause, informational-privacy, and *Bivens* claims, *see* Compl. ¶¶ 58-69, but she does not press those claims in her motion for a TRO or preliminary injunction. Therefore, and as noted above, this brief is filed on behalf of the defendants solely in their official capacity.

## ARGUMENT

The Court should deny Ms. Doe's request for a TRO or injunction.  To obtain a TRO or preliminary injunction, Ms. Doe must establish that she "is likely to succeed on the merits," that she "is likely to suffer irreparable harm in the absence of preliminary relief" that "the balance of equities tips in [her] favor," and that "an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008); *In re Navy Chaplaincy*, 697 F.3d 1171 (D.C. Cir. 2012).  Ms. Doe cannot satisfy any of those requirements, principally because she retains the option to leave federal custody by voluntarily departing and thus ending her illegal entry into this country.

And here Ms. Doe must meet an even more stringent standard because the injunctive relief sought would reverse the status quo and compel the government to take affirmative actions.  Ms. Doe asks this Court to order the government to "transport [her] to an abortion provider closes to [her] shelter to obtain counseling . . . and the abortion procedure" and to be restrained "from interfering with or obstructing [Ms. Doe's] access to abortion counseling or abortion."  Pl.'s Proposed Order ¶¶ 1-2, Dkt. 3-15.  That relief would compel the government to draft approval documents, review information relevant to the procedure, provide authorization for the procedure to take place, and provide Ms. Doe with transportation and escort to and from the necessary appointments for the procedure or release Ms. Doe from federal custody into the care of someone not otherwise approved by the federal government to have custody of her, all while monitoring her health during and after the procedure.  Accordingly, Ms. Doe does not seek to preserve the status quo, but rather to alter it.  Such a request constitutes a mandatory injunction and goes well beyond maintaining the status quo.  Indeed, Ms. Doe seeks relief that would not be temporary or preliminary, but instead irreversible.  If Ms. Doe's request for injunctive relief were granted, Ms. Doe would presumably undergo the abortion procedure scheduled for October 20, finally resolving

8

her claims.  Such relief would be inappropriate.  In any event, Ms. Doe has not made the sort of clear, compelling showing that would be needed for such permanent relief.

**I.      Ms. Doe's Request for Mandatory Injunctive Relief Should Be Denied Because She Cannot Show a Likelihood of Success on the Merits.**

Ms. Doe's request for relief fails at the first step because she is not likely to succeed on the merits of any of her claims.

**A.      Ms. Doe Has Failed to Demonstrate a Likelihood of Success on the Merits of Her Fifth Amendment Undue-Burden Claim.**

Ms. Doe is not likely to succeed on her claim (*see* Br. 8-10) that the government's refusal to facilitate her elective abortion imposes an undue burden in violation of the Fifth Amendment.

Under the framework of *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833 (1992), the government may restrict abortion so long as the limitations that it imposes do not impose an "undue burden" on a woman's choice to terminate her pregnancy before viability. The government is entitled to impose such restrictions because, as the Supreme Court has repeatedly recognized, it has a substantial and legitimate interest in promoting childbirth and protecting the life of an unborn child.  *See, e.g.*, *Gonzales v. Carhart*, 550 U.S. 124, 145, 157, 163 (2007) ("the government has a legitimate and substantial interest in preserving and promoting fetal life"); *Casey*, 505 U.S. at 846 (joint opinion of O'Conner, Kennedy, and Souter, JJ.) ("The government may use its voice and its regulatory authority to show its profound respect for the life within the woman.").  That interest begins at the start of pregnancy.  *See Gonzales*, 550 U.S. at 158; *Casey*, 505 U.S. at 846.  Courts have upheld restrictions on abortion so long as those limitations do not impose an "undue burden" on a woman's right to choose to terminate her pregnancy prior to viability.  *See, e.g.*, *Casey*, 505 U.S. at 877; *Gonzales*, 550 U.S. at 157 (upholding Partial-Birth Abortion Ban Act); *Lambert v. Wicklund*, 520 U.S. 292 (1997) (upholding Montana parental notification statute that had a judicial bypass provision); *Texas Medical Providers Performing*

*Abortion Services v. Lakey*, 667 F.3d 570 (5th Cir. 2012) (upholding Texas statute requiring informed consent); *Barnes v. Moore*, 970 F.2d 12 (5th Cir. 1992) (upholding Mississippi statute requiring physicians to inform the patient of medical risks of abortion and required a 24-hour waiting period before procedure did not impose an undue burden); *Karlin v. Foust*, 188 F.3d 446, 471 (7th Cir. 1999) (upholding Wisconsin statute requiring "a physician to inform a woman seeking an abortion of the 'probable gestational age' of the fetus, the 'probable anatomical and physiological characteristics' of the fetus, and the 'medical risks' associated with abortion including the risk of 'psychological trauma' and any 'danger to subsequent pregnancies,'" and  requiring a face-to-face meeting between an attending physician and a patient 24 hours before an abortion procedure).

Importantly, the undue-burden standard does not require the government to *facilitate* abortions.  Rather, to impose an "undue burden," a statute or regulation must have "the effect of placing *a substantial obstacle* in the path of a woman's choice" to terminate her pregnancy.  *Casey*, 505 U.S. at 877 (emphasis added).  Requests to *affirmatively facilitate* abortion are of a different order.  In light of the substantial governmental interest in protecting fetal life and promoting childbirth, the government may refuse to facilitate, including by refusing to approve the procedure as in the woman's best interest, an abortion without unduly burdening a woman's desire to terminate her pregnancy through abortion.  *See, e.g., Harris v. McRae*, 448 U.S. 297, 315, 317-19 (1980) (holding that the Due Process Clause does not confer an entitlement to government assistance in obtaining an elective abortion procedure; decision not to fund abortion does not pose any "governmental obstacle"); *see also Maher v. Roe*, 432 U.S. 464, 471-74 (1977) (rejecting claim that unequal subsidization for child birth, as opposed to abortion, was unconstitutional); *Webster v. Reproductive Health Servs.*, 492 U.S. 490, 510 (1989) (holding that the government has no constitutional duty to subsidize an activity merely because the activity is constitutionally protected

and specifically that government has no affirmative duty to "commit any resources to facilitating abortions").  Neither *Casey* nor any case under it have held that pregnant minors from other countries are constitutionally entitled to elective abortions simply by entering the country illegally, being apprehended by border patrol, and insisting that the federal government facilitate their abortion even though they are free to voluntarily depart back to their home country.  Such an extension would significantly infringe on the government's interests in preserving life and protecting national boundaries, as discussed below.

The government wields especially broad authority to refuse to facilitate abortion in the area of foreign affairs.  *See DKT Memorial Fund Ltd. v. Agency for Int'l Development*, 887 F.2d 275 (D.C. Cir. 1989) (upholding the federal government's authority to ban federal funding of foreign groups that perform or promote abortions).  Indeed, United States foreign policy discourages elective abortion procedures and prohibits the expenditure of federal funds for non-governmental organizations that provide abortion.  Mexico City Policy, 82 Fed. Reg. 8495 (Jan. 25, 2017); *see also Center for Reproductive Law and Policy v. Bush*, 304 F.3d 183 (2d Cir. 2002) (Sotomayor, J.) (rejecting First Amendment and equal-protection challenges to Mexico City Policy).

Under these principles, Ms. Doe has failed to show that the government has imposed an undue burden on her right to choose to have an abortion.  She cannot obtain a TRO or injunctive relief on this claim.

The government has not imposed any limitations on a right of Ms. Doe to obtain an abortion.  Ms. Doe is in government custody because she illegally entered the United States, and she can leave government custody by voluntarily departing.  Moreover, the government has provided Ms. Doe with access to her attorneys and guardian and worked to find a suitable sponsor for Ms. Doe.  White Decl. ¶ 21.  The government stands ready to aid Ms. Doe with any request for a

voluntary departure to her home country or to release Ms. Doe to a guardian that would satisfy relevant legal requirements.

Given these points, Ms. Doe is wrong to claim that the government has imposed an undue burden on her abortion decision.  Indeed, the crux of Ms. Doe's challenge is to HHS's refusal to *facilitate* her elective abortion while she is in federal custody.  Ms. Doe's request would require government and shelter staff to draft approval documents, review information relevant to her health and the procedure, determine that the procedure is in her best interest, and maintain custody of her (while ensuring her health remains stable) during and after the abortion procedure.  As in the case of any major surgical or medical procedure that an unaccompanied alien child seeks, the government must determine that it is in the child's interest.  6 U.S.C. § 279(b); White Decl. ¶ 6.  So too here. What Ms. Doe seeks is for the government to take affirmative steps to ensure she can receive that procedure.

Ms. Doe is an unaccompanied alien child who is in HHS's legal custody after being apprehended while entering the United States illegally.  To the government's knowledge, no court has held that the government imposes an undue burden when it refuses to facilitate an abortion in these circumstances.  To the contrary, *McRae*, *Maher*, *Webster*, and other cases establish that the federal government's refusal to assist a woman in obtaining an abortion is constitutional.  Without a case overriding that line of precedent—much less one that would require the government either (1) to provide Ms. Doe with transportation and an escort to and from the necessary appointments for the procedure, or (2) to release Ms. Doe from federal custody into the care of someone not otherwise approved by HHS to have custody of Ms. Doe[3]—Ms. Doe has no likelihood of success on the merits for her undue-burden claim.

---

[3] In either circumstance, Ms. Doe would no longer be in federal custody.  So after having elected to remain in federal custody, Ms. Doe is unlikely to succeed in also compelling HHS to authorize her elective abortion and transport her to an abortion provider.

Indeed, Ms. Doe seeks even more than run-of-the-mill facilitation.  She asks this Court to rule that a pregnant minor from a foreign country, simply by crossing the border illegally, has a right under the U.S. Constitution to demand that the federal government facilitate her elective abortion while she is still in federal custody after border apprehension.  She asks the Court to issue such a ruling, moreover, when she has not requested a voluntary departure from the United States, which would result in her release from federal custody and leave her at liberty to pursue an elective abortion outside of federal custody.  Ms. Doe cites no case supporting such a sweeping claim.

Ms. Doe relies on cases addressing state laws permitting a judicial bypass mechanism for minors seeking an abortion without their parents' consent, *see, e.g., Bellotti v. Baird*, 443 U.S. 622 (1979), as support for the contention that the federal government must not only defer to the minor's choice to terminate her pregnancy, but also assist her in obtaining an abortion.  But those cases hold merely that state laws *prohibiting* the right to abortion absent parental consent may, in some circumstances, impose an "undue burden" on the right to choose an abortion, unless there is a judicial bypass procedure.  *See, e.g.*, *Cincinnati Women's Services, Inc. v. Taft*, 486 F.3d 361 (6th Cir. 2006).  Critically, those cases do not say that the government must affirmatively facilitate a minor's preference to terminate her pregnancy.  Nor does caselaw on prisoner access to abortion help Ms. Doe's claim.  *See, e.g., Roe v. Crawford*, 514 F.3d 789 (8th Cir. 2008); *Monmouth Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326 (3d Cir. 1987).  A prisoner's ability to obtain an abortion is entirely prohibited solely by virtue of their incarceration.  That is not so here: unlike a prisoner, Ms. Doe has the ability to choose to exit federal custody by voluntarily departing the United States or by finding a sponsor who could take custody of her.  8 C.F.R. § 240.25; White Decl. ¶¶ 20-21.

Finally, it is important to note that Ms. Doe's request for relief is particularly suspect because it seeks to disrupt federal government decisions in the area of foreign affairs.  Here,

13

significant foreign interests are implicated if the government must oversee elective abortions for pregnant unaccompanied alien minors who have been apprehended illegally crossing the border and are still in federal care and custody.

**B.      Ms. Doe Has Not Demonstrated a Likelihood of Success on the Merits of Her Fifth Amendment Parental-Notification Claim.**

Ms. Doe is not likely to succeed on her claim that the government is "violating the Fifth Amendment by forcing minors to tell their parents or sponsors about their abortion decision, or telling the parents or sponsors themselves."  Br. 11; *see also id.* at 11-12.

The government has not imposed an "undue burden" by informing Ms. Doe's parents of her abortion decision.  Precedent holds that a parental-*consent* law might in some circumstances impose an undue burden on a woman's right to have an abortion, which may require in turn may require a judicial bypass procedure that protects the woman's anonymity.  *See, e.g.*, *Cincinnati Women's Services*, 468 F.3d at 370 (holding that Ohio provision limiting minors to one petition for a judicial bypass per pregnancy was an undue burden).  But that rule does not affect what the government has done here.  Here, the government has custody of a minor who has illegally entered the United States.  The government may, in these circumstances, inform the minor's parents about the minor's pregnancy or her abortion decision.  And it may do so independent from a state bypass procedure.  Sharing such information, in itself, in no way affects the minor's ability to seek an abortion in this country, and therefore does not impose an "undue burden."  Ms. Doe is not being denied access to an abortion due to her parents' having been informed.  Ms. Doe's parental-notification claim rests on her assertion that, "[o]nce a minor has been granted a judicial bypass, the government ceases to have any legitimate interest in notifying the minor's parents."  Br. 11.  That assertion is out of place in the circumstances here.

Indeed, the government's decision to provide parental notification is constitutionally different in kind from a government requirement to obtain parental consent.  "[A] parental notice

14

statute—unlike either a spousal notice or a blanket parental consent statute—has neither 'the purpose [n]or effect of placing a substantial obstacle in the path of a woman seeking an abortion,' and therefore cannot reasonably be said to unduly burden the minor's abortion right." *Planned Parenthood of Blue Ridge v. Camblos*, 155 F.3d 352, 367 (4th Cir. 1998) (en banc) (quoting *Casey*, 505 U.S. at 877 (joint opinion)).  It is not an undue burden to require parental-notification so long as there are appropriate exceptions.  *See id.* at 372-74 (holding that a "state may constitutionally require that mothers and fathers of teenage daughters be informed of their daughters' life-defining decisions to abort their pregnancies, provided that the state excepts from its requirement notice to abusive parents, noncustodial parents who have refused to accept their parental responsibilities, and parents with similar relationships to their children").  Ms. Doe has not demonstrated that the government's alleged notification violates these principles.  Nor could a TRO help her on this score anyway, because, according to her allegations, her mother has already been notified of her pregnancy.  She cannot obtain a TRO because such relief cannot aid her.

### C.   Ms. Doe Has Not Demonstrated a Likelihood of Success on the Merits of Her First Amendment Compelled-Speech Claim.

Finally, Ms. Doe has no prospect of success on her claim (*see* Br. 12-14) that the government has violated her First Amendment rights by taking her to a pregnancy counseling session and obstetric examination that included an ultrasound.  Ms. Doe asserts that, by doing so, the government "violate[s] unaccompanied immigrant minors' right against compelled speech." Compl. ¶ 57.  This assertion misses the mark.  The government impermissibly compels speech when it forces a speaker to convey a message and "the complaining speaker's own message was affected by the speech it was forced to accommodate."  *Rumsfeld v. FAIR*, 547 U.S. 47, 63 (2006); *see National Association of Manufacturers v. NLRB*, 717 F.3d 947, 958 (D.C. Cir. 2013) (a "compelled-speech violation' occur[s] when 'the complaining speaker's own message was affected by the speech it was forced to accommodate'"); *see also National Association of Manufacturers v.*

*SEC*, 800 F.3d 518, 521-23 (D.C. Cir. 2015) (collecting compelled speech cases).  Ms. Doe declares

that she was "forced to look at [a] sonogram" and that the defendants "have been talking to me

about my pregnancy."  Decl. of Jane Doe ¶¶ 13-14).  Insofar as she complains of those facts, she is

not alleging that she could not voice her own opinion freely, that she could not refrain from voicing

her opinion, or that she faced any negative consequences from either such choice.  This is

accordingly not an instance in which the government forced Ms. Doe to espouse or agree with any

particular viewpoint.  And to the extent that Ms. Doe was compelled to acknowledge an

understanding of the legal rights and requirements surrounding abortion procedures in Texas, the

constitutionality of such requirements has been upheld.  *Texas Med. Providers Providing Abortion*

*Servs. v. Lakey*, 667 F.3d 570, 574-80 (5th Cir. 2012) (rejecting First Amendment challenge by

abortion providers to a Texas law that required them to provide a sonogram and other information

to women seeking abortion services); *see also Planned Parenthood, Sioux Falls Clinic v. Miller*, 63

F.3d 1452, 1467 (8th Cir. 1995) (upholding a state mandatory-information provision that required

providing information regarding pregnancy, fetal development, child care, and child support among

other things).

     Moreover, insofar as Ms. Doe objects to being spoken to, she has no compelled-speech

claim on this score either.  The government may fund viewpoint-based speech when the government

itself is the speaker, *Legal Servs. Corp. v. Velazquez*, 531 U.S. 533, 541 (2001), and it also may use

private speakers to disseminate specific messages pertaining to government programs, *id.*;

*Rosenberger v. Rector and Visitors of the Univ. of Virginia*, 515 U.S. 819, 833 (1995).  Those rules

apply specifically in the context of abortion:  the government may prefer child birth over abortion

when it speaks.  *See, e.g.*, *ACLU of North Carolina v. Tennyson*, 815 F.3d 183 (4th Cir. 2016)

(upholding as government speech North Carolina's specialty license plate program which had a

"Choose Life" plate but rejected pro-choice license plates).  Ms. Doe is being subjected to

16

government speech because she has voluntarily placed herself in government custody by entering this country without legal authority—and by failing to request voluntary departure to her home country—and accordingly her First Amendment rights are not infringed. *See National Association of Manufacturers v. Perez*, 103 F. Supp. 3d 7, 17 (D.D.C. 2015) (explaining that provisions requiring contractors to host government speech as a condition of receiving federal benefits do not infringe upon First Amendment rights).

On top of all of these points, nothing suggests that Ms. Doe will be compelled in the future to provide any speech against her will, and thus there is nothing to restrain or enjoin. And it bears emphasizing again that Ms. Doe is in federal custody only because she entered the United States illegally and has neither requested to return to her home country nor found a suitable sponsor. She could readily be alleviated from the circumstances of which she complains.

*       *       *

For these reasons, Ms. Doe has failed to demonstrate a likelihood of success on the merits of her claims.

## II.     Ms. Doe Has Not Established that a TRO or Preliminary Injunction Is Needed to Prevent Irreparable Harm.

Ms. Doe cannot obtain relief for the independent reason that she has not established irreparable harm. Ms. Doe contends that, unless this Court grants her a TRO or injunction, she will face the irreparable injury of being "forced to carry the pregnancy to term against her will." Br. 15. That argument fails for two independent reasons.

*First*, Ms. Doe's claimed injury provides no basis for the permanent injunctive relief that she seeks. The issue before this Court is not whether Ms. Doe will have to carry a pregnancy to full term, but rather whether she can obtain a court order enabling her to have an abortion as early as this week. Ms. Doe has weeks, not a few days, before viability. She need not compel the government to facilitate her abortion to an abortion this week to vindicate the right that she claims.

Because Ms. Doe's fetus is still weeks away from viability, she will not be irreparably injured if she does not obtain effectively irreversible relief now, before the parties have had the opportunity for full briefing—or before she has a further chance to return to her home country.

*Second*, and in any event, the government is not forcing Ms. Doe to carry her pregnancy to full term. Ms. Doe is at liberty to leave federal custody either by voluntarily departing the United States or by finding a sponsor. 8 C.F.R. § 240.25; White Decl. ¶¶ 20-21. If Ms. Doe requests a voluntary departure, the government is willing to work with her to make that happen as expeditiously as possible.

## III. The Balance of Hardships and Public Interest Weigh Against Ms. Doe's Request for Relief.

The balance of the hardships and the public interest weigh against granting Ms. Doe's motion. The government has a legitimate and significant interest in ensuring that it does not affirmatively facilitate an abortion. That interest would be completely extinguished if Ms. Doe's motion is granted and Ms. Doe has an abortion this week or next week. In contrast, denying Ms. Doe's motion would not preclude her from obtaining an abortion: she could do so after voluntarily departing from federal custody, or if she were to secure a permanent injunction after prevailing on the merits of her claim. Finally, the public interest weighs against incentivizing illegal immigration by compelling the federal government to facilitate an unaccompanied alien child's request for an elective abortion.

## IV. Any Ruling by this Court Should Allow Time for Appellate Review.

The defendants appreciate the depth of issues presented in Ms. Doe's motion and recognize that granting that motion will have potentially irreversible consequences. The defendants therefore request that any disposition by the Court permit the unsuccessful party sufficient time to vindicate its position through emergency appeal. In particular, the defendants request that, if the Court is inclined to grant Ms. Doe's request for relief, it do so through the grant of a preliminary injunction

18

rather than the grant of a temporary restraining order, so as to remove any doubt as to the appealability of the Court's order.  In addition, the government asks that issuance of any injunction be stayed for a period of seven days to permit them to seek further review.

## CONCLUSION

Because Ms. Doe cannot satisfy the exacting requirements for a temporary restraining order or a preliminary injunction, her motion should be denied.


DATED:  October 17, 2017                    Respectfully submitted,

                                                          CHAD A. READLER
                                                          Acting Assistant Attorney General

                                                          SCOTT G. STEWART (D.C. Bar No. 990396)
                                                          Deputy Assistant Attorney General

                                                          By: *s/ Alexander K. Haas*
                                                          ALEXANDER K. HAAS (D.C. Bar No. 1007081)
                                                          Special Counsel to the Assistant Attorney General
                                                          United States Department of Justice
                                                          Civil Division
                                                          950 Pennsylvania Ave., NW
                                                          Washington, DC 20430
                                                          Tel: (202) 353-8679
                                                          Fax: (202) 252-2599
                                                          Email: alex.haas@usdoj.gov


                                                          Attorneys for Defendants

## CERTIFICATE OF SERVICE

I certify that on October 17, 2017, I electronically filed the foregoing with the Clerk of

Court by using the CM/ECF system which will deliver a copy to all counsel of record.


*s/ Alexander K. Haas*
ALEXANDER K. HAAS (D.C. Bar No. 1007081)
Special Counsel to the Assistant Attorney General
United States Department of Justice
Civil Division