IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROCHELLE GARZA, et al. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:17-cv-2122 |
| ) | |
| ERIC HARGAN, et al. ) | |
| ) | |
| Defendants. ) | |

**DECLARATION OF JONATHAN WHITE, DEPUTY DIRECTOR FOR CHILDREN'S PROGRAMS, OFFICE OF REFUGEE RESETTLEMENT, ADMINISTRATION FOR CHILDREN AND FAMILIES, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES**

I, Jonathan White, for my declaration pursuant to 28 U.S.C. § 1746, hereby state and depose as follows, based on my personal knowledge and information provided to me in the course of my official duties:

1. I am the Deputy Director for Children's Programs of the Office of Refugee Resettlement ("ORR"), an Office within the Administration for Children and Families ("ACF"), Department of Health and Human Services ("HHS").

2. I am familiar with ORR policies and procedures concerning requests for and approval of medical procedures, including abortions, on unaccompanied alien children ("UACs") in ORR care and custody, and on the procedures involved when ORR approves medical procedures.

3. I am also familiar with the policies, procedures, and decisions concerning the request for an abortion by the minor identified in the complaint as J.D.

1

4.	According to ORR records (which have been provided to attorneys for J.D.), in early September 2017, J.D. attempted to enter the United States without lawful authorization, J.D. was detained and placed in federal custody.

5.	J.D. is currently sheltered by a federal grantee (hereinafter the "shelter"), under a cooperative agreement with the Department of Health and Human Services.

6.	Organizations that provide shelter and services to UACs, including the shelter in this case, do so in compliance with ORR policies and procedures and for certain medical procedures, such as abortion or significant surgery, ORR provides additional direction. ORR maintains legal custody of J.D. and, under the requirements of the cooperative agreement, exercises decision-making authority for many determinations, according to ORR policies and procedures.

7.	J.D. was given a physical medical examination after which she was informed that she was pregnant.

8.	J.D. requested an abortion. ORR has not been advised of a medical report indicating that continuing the pregnancy is required to preserve the minor's physical health.

9.	At ORR's direction and consistent with ORR policies and procedures, shelter staff contacted her parents in home country to inform them she was pregnant.

10.	On September 27, the ORR Director denied J.D.'s request to obtain an abortion, and to be transported from her shelter so that she could attend the abortion and associated appointments.

11.	ORR and shelter staff have provided Ms. Doe with requested access to her guardian ad litem, her attorneys, and transport to court proceedings.

12. ORR policies and procedures require ORR direction and approval for abortions by UACs. For a UAC to undergo an abortion consistent with ORR policies and procedures, the ORR Director would need to make a decision authorizing the abortion, consistent with his duties under 6 U.S.C. § 279, and communicate that decision to ORR staff and the shelter.

13. Obtaining ORR direction and approval also involves work by shelter and/or ORR field staff including, but not limited to: bringing the minor to and from medical appointments diagnosing the minor's pregnancy and evaluating her health; communicating the minor's medical and personal information to ORR; discussing the potential procedure with the minor and her parents; and maintaining custody of the minor for any legal proceedings.

14. In addition, to approve a proposed procedure such as abortion requires work by ORR staff, including but not limited to: drafting approval documents and routing them through ORR leadership; reviewing the information about the minor relevant to the proposed procedure; providing pre-procedure direction to field and shelter staff; and providing and communicating ORR authorization for a procedure to take place. To my knowledge, ORR has not yet reached the stage of drafting such approval documents, and the Director has not approved the procedure.

15. If a medical procedure such as abortion were approved, ORR and shelter staff would be responsible to engage in work to retain custody of the minor during the procedure and appointments related to the procedure, and during transport to and from such appointments. Abortion is one of several kinds of medical procedures that require heightened ORR involvement under ORR's policies and procedures. For example, ORR would need to ensure that the minor's health is stable during and immediately after an abortion.

16. In Texas and some other states, ORR's involvement in retaining care and custody of the minor would involve ORR or shelter staff oversight of at least two appointments separated by 24 hours, because of state laws requiring pre-procedure counseling and a waiting period.

17. In the particular case of J.D., at issue in this matter, ORR was asked to transport the minor to two appointments, and the request indicated that each appointment would be at a clinic located approximately one-hour away from the shelter by car.

18. In addition, ORR maintains policy and regulations regarding a volunteer of a shelter accompanying a child to a procedure, including a medical procedure. Under such procedures, a volunteer who is not the attorney of record would be subject to a background check in order to have direct contact with a UAC. See 4.3.2 of the ORR Policy Guide, available at: https://www.acf.hhs.gov/orr/resource/children-entering-the-united-states-unaccompanied-section-4#4.3.2. Also see 45 C.F.R. § 411.16(d), stating "(d) Care provider facilities also must perform a background investigation before enlisting the services of any contractor or volunteer who may have contact with UCs."

19. Although the guardian ad litem is not a volunteer working directly for the shelter, it would be consistent for ORR or the shelter to perform a background check prior to releasing a minor to the individual who is not an attorney of record, for purposes of transporting the minor to a medical appointment.

20. J.D. may exit federal custody by seeking voluntary departure of the United States, or if a sponsor is located who could take custody of her.

21. J.D. identified two potential sponsors to ORR. ORR/shelter staff promptly contacted those potential sponsors. For reasons involved in ORR's standard process to review the suitability of potential sponsors, ORR determined that they were not willing to act as sponsors or

were not suitable candidates to sponsor J.D. ORR, J.D., and her family have not further identified additional potential sponsors.

I declare under penalty of perjury that the foregoing is true and correct. Executed on October 17, 2017.

_____
Jonathan White, *ORR Deputy Director for Children's Programs*