# In the United States District Court
## for the District of Columbia

| | | |
|---|---|---|
| Rochelle Garza, as guardian ad litem to unaccompanied minor J.D., on behalf of J.D. and others similarly situated, | § § § § § | |
| | § | |
| *Plaintiff,* | § | |
| | § | Case No. 1:17-cv-02122-TSC |
| v. | § | |
| | § | |
| Eric Hargan, Acting Secretary of Health and Human Services, et al., | § § § | |
| | § | |
| *Defendants.* | § | |

---

# BRIEF OF THE STATES OF TEXAS, ARKANSAS, LOUISIANA, MICHIGAN, NEBRASKA, OHIO, OKLAHOMA, AND SOUTH CAROLINA AS *AMICI CURIAE* IN SUPPORT OF DEFENDANTS

---

# TABLE OF CONTENTS

Page

Table of Contents ..................................................................................i

Index of Authorities ..............................................................................ii

Interest of *Amici Curiae* .......................................................................1

Introduction ..........................................................................................2

Argument...............................................................................................3

    I.      Unlawfully-Present Aliens with No Ties to the United States
           Have No Constitutional Right to an Abortion on Demand.....................3

    II.     Granting a TRO or Preliminary Injunction Will Harm the
           Public Interest. ...................................................................... 11

Conclusion............................................................................................ 12

Certificate of Service............................................................................ 14

# Index of Authorities

Page(s)

**Cases:**

*Am. Civil Liberties Union of Northern California v. Burwell*,
  No. 3:16-cv-03539-LB (N.D. Cal.) ............................................................. 8, 9, 10

*Arbelaez v. Newcomb*,
  1 F. App'x 1 (D.C. Cir. 2001) ..................................................................... 5

*Arizona v. United States*,
  567 U.S. 387 (2012) ................................................................................. 1, 11

*Bellotti v. Baird*,
  443 U.S. 622 (1979) ................................................................................. 7, 8

*Causeway Med. Suite v. Ieyoub*,
  109 F.3d 1096 (1997) ............................................................................... 8

*In re Doe*,
  501 S.W.3d 313 (Tex. App.—Houston [14th Dist.] 2016) ................................... 8

*Gonzales v. Carhart*,
  550 U.S. 124 (2007) ................................................................................. 1

*Ibrahim v. Dep't of Homeland Sec.*,
  669 F.3d 983 (9th Cir. 2012) ...................................................................... 4, 5

*Landon v. Plasencia*,
  459 U.S. 21 (1982) ................................................................................... 5–6

*McDonald v. City of Chicago*,
  561 U.S. 742 (2010) ................................................................................. 10

*Meachum v. Fano*,
  427 U.S. 215 (1976) ................................................................................. 3

*Planned Parenthood of Central Missouri v. Danforth*,
  428 U.S. 52 (1976) ................................................................................... 7

*Planned Parenthood of Se. Pa. v. Casey*,
　505 U.S. 833 (1992)...................................................................................7

*Plyler v. Doe*,
　457 U.S. 202 (1982) .................................................................................4

*Sherley v. Sebelius*,
　644 F.3d 388 (D.C. Cir. 2011) .................................................................3

*Texas v. United States*,
　106 F.3d 661 (5th Cir. 1997) .................................................................. 11

*Trump v. Int'l Refugee Assistance Project*,
　137 S. Ct. 2080 (2017) (per curiam) .....................................................5

*United States v. Carpio–Leon*,
　701 F.3d 974 (4th Cir. 2012)..................................................................10

*United States v. Flores*,
　663 F.3d 1022 (8th Cir. 2011) (per curiam) ..................................10–11

*United States v. Meza-Rodriguez*,
　798 F.3d 664 (7th Cir. 2015), *cert. denied*, 136 S. Ct. 1655 (2016) .................. 4, 11

*United States v. Portillo–Munoz*,
　643 F.3d 437 (5th Cir. 2011) .................................................................10

*United States v. Verdugo-Urquidez*,
　494 U.S. 259 (1990) ......................................................................... 1, 4, 5

*Whole Woman's Health v. Hellerstedt*,
　136 S. Ct. 2292 (2016)..............................................................................7

*Zadvydas v. Davis*,
　533 U.S. 678 (2001).............................................................................4, 5

## Constitutional Provisions and Rules

U.S. Const. amend. V .....................................................................................3

45 C.F.R. § 411.92(a) ......................................................................................8

## Interest of *Amici Curiae*

*Amici* are the States of Texas, Arkansas, Louisiana, Michigan, Nebraska, Ohio, Oklahoma, and South Carolina. The States have "a legitimate and substantial interest in preserving and promoting fetal life," as well as an "interest in promoting respect for human life at all stages in the pregnancy." *Gonzales v. Carhart*, 550 U.S. 124, 145, 163 (2007). The States further have an interest in cooperating with the federal government to establish a consistent and correct understanding of the rights of aliens unlawfully present in the United States, as the States "bear[] many of the consequences of unlawful immigration." *Arizona v. United States*, 567 U.S. 387, 397 (2012).

In this case, Plaintiff asks the Court to declare that the U.S. Constitution confers on unlawfully-present aliens the absolute right to an abortion on demand even when they have no ties to this country other than the fact of their arrest while attempting to cross the border unlawfully. As far as *amici* can ascertain, no court has ever issued such a sweeping order—and with good reason. If the Court grants the requested relief, there will be no meaningful limit on the constitutional rights an unlawfully-present alien can invoke simply by attempting to enter this country. Such relief would also contradict longstanding Supreme Court precedent that full Fifth Amendment rights vest only in those aliens who "have come within the territory of the United States *and developed substantial connections with this country*." *United States v. Verdugo-Urquidez*, 494 U.S. 259, 271 (1990) (emphasis added).

Amici thus urge the Court to reject Plaintiff's radical request.[1]

## INTRODUCTION

The TRO and preliminary injunction Plaintiff seeks is unprecedented. No federal court has ever declared that unlawfully-present aliens with no ties to this country have a constitutional right to abortion on demand. The Court should decline to break that new ground. It should deny the motion for a TRO and preliminary injunction because Doe cannot prevail on the merits: The Constitution does not confer on Jane Doe the right to an abortion.

Furthermore, granting a TRO and preliminary injunction would harm the public interest. Plaintiff argues that the public is better off if Doe can get an abortion. The *amici* States strongly disagree. Doe concedes that she has "no legal immigration status." Dkt. 3-2 at 3. Granting Plaintiff's motion for a TRO and preliminary injunction would create a right to abortion for anyone on Earth who entered the United States illegally, no matter how briefly. If Doe has a right to an abortion, it is difficult to imagine what other constitutional protections she would not have by extension. This would flow from that perverse incentive burdens the public at large as well as the governmental entities that will be tasked with honoring these newfound rights.

The Court should deny the motion for a TRO and preliminary injunction.

---

[1] Neither *amici* nor counsel received any monetary contributions intended to fund preparing or submitting this brief. No party's counsel authored this brief in whole or in part.

# ARGUMENT

## I.   Unlawfully-Present Aliens with No Ties to the United States Have No Constitutional Right to an Abortion on Demand.

The Court should deny the motion for a TRO and preliminary injunction because the right Plaintiff asks the Court to enforce does not exist. She therefore cannot show a likelihood of success on the merits, and so the Court should deny her motion for a TRO and a preliminary injunction. *See Sherley v. Sebelius*, 644 F.3d 388, 392–93 (D.C. Cir. 2011) (*Winter* is properly read "at least to suggest if not to hold" that the plaintiff's "likelihood of success is an independent, freestanding requirement for a preliminary injunction," which is not weighed against the other factors) (quotation marks omitted)).

1.  The "initial inquiry" in assessing any due process claim is whether the Constitution protects the right the plaintiff asserts. *See Meachum v. Fano*, 427 U.S. 215, 223–24 (1976). Only after confirming that the right at issue exists should a court move on to whether the government has violated that right. Thus, in this case, the Court should begin with a threshold question: do the Fifth Amendment's substantive due process guarantees apply to unlawfully-present aliens with no connection to this country who were apprehended while attempting to cross the border? The answer is no.[2]

The Constitution provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V.

---

[2] Plaintiff's Memorandum in support of her motion overlooks this threshold question entirely and begins with an undue-burden analysis. Dkt. 3-2 at 9.

While the Supreme Court has held that unlawfully-present aliens are "persons" protected by the Fifth Amendment, *Plyler v. Doe*, 457 U.S. 202, 210 (1982), the full scope of the Fifth Amendment's protections that apply to citizens do not cover everyone who merely attempts to enter this country. As the Supreme Court clarified in *United States v. Verdugo-Urquidez*, 494 U.S. 259, 270 (1990), *Plyler's* Fifth Amendment analysis "establish[es] only that aliens receive constitutional protections when they have come within the territory of the United States *and developed substantial connections with this country.*" *Id.* at 271 (emphasis added).

The Supreme Court reiterated in 2001 that "once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). But *Zadvydas* said nothing to alter or undermine *Verdugo-Urquidez's* pronouncement that to invoke the full scope of Fifth Amendment rights, an unlawfully-present alien must demonstrate "substantial connections." *See Ibrahim v. Dep't of Homeland Sec.*, 669 F.3d 983, 997 (9th Cir. 2012) (applying "significant voluntary connection" test from *Verdugo-Urquidez*); *United States v. Meza-Rodriguez*, 798 F.3d 664, 670 (7th Cir. 2015), *cert. denied*, 136 S. Ct. 1655 (2016) (same). Indeed, *Zadvydas* expressly limited its analysis to "aliens *who were admitted to the United States* but subsequently ordered removed." 533 U.S. at 682 (emphasis added). By contrast,

"[a]liens who have not yet gained initial admission to this country would present a very different question." *Id*.

The D.C. Circuit has recognized and applied this framework. Citing *Verdugo-Urquidez*'s "substantial connection" rule, the D.C. Circuit has held that "foreign nationals without a substantial connection to the United States" lack standing to raise constitutional challenges. *Arbelaez v. Newcomb*, 1 F. App'x 1, 1 (D.C. Cir. 2001) (per curiam) (citing *Verdugo-Urquidez*, 494 U.S. at 271). It has not explained exactly what constitutes a "substantial connection" under *Verdugo-Urquidez*, but one sister circuit has held that studying for four years at Stanford University was sufficient to establish a "'significant voluntary connection' with the United States." *Ibrahim*, 669 F.3d at 997. The Ninth Circuit has left unresolved the question whether certain lawfully admitted aliens—such as "tourists, business visitors, and all student visa holders"—could avail themselves of the Fifth Amendment's protections. *Id*.

Summed up, an unlawfully-present alien must at a minimum demonstrate a "previous significant voluntary connection with the United States" sufficient to prove a "substantial connection with our country" in order to assert the full scope of Fifth Amendment rights. *Verdugo-Urquidez*, 494 U.S. at 271; *Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. 2080, 2087 (2017) (per curiam) (staying injunction of immigration order for aliens "who lack any bona fide relationship with a person or entity in the United States"); *Landon v. Plas-*

*encia*, 459 U.S. 21, 32 (1982) (alien's "constitutional status changes" only after he "gains admission to our country and begins to develop the ties that go with permanent residence").

2.   The Complaint (Dkt. 1) never alleges any facts that would establish that Doe has significant ties to this country. To the contrary, the paragraphs that state facts pertinent to Doe establish no connection to the United States at all:

- Paragraphs 4 and 5 summarize Doe's current situation but offer no allegations establishing a connection to the United States other than her current unlawful presence.

- Paragraph 13 alleges: "J.D. was detained by the federal government and placed in a federally funded shelter in Texas. J.D. is years [*sic*] old, pregnant, and told the staff at the shelter where she is currently housed that she wanted an abortion." This paragraph admits that Doe entered the United States unlawfully but offers no allegations establishing a connection to the United States.

- Paragraphs 14 and 15 discuss Doe's recent efforts to obtain an abortion during her time in custody.

- Paragraphs 33, 34, 35, 36, and 43 allege that the defendants have restricted Doe's ability to receive an abortion in the United States.

In short, there are 69 paragraphs in the Complaint, and not one of them attempts to meet the Plaintiff's burden under *Verdugo-Urquidez*.

6

Moreover, the declaration that Doe submitted in support of her motion for a temporary restraining order *confirms* that she has no substantial ties to this country because Doe explicitly admits that she was "detained upon arrival." Dkt. 3-3 ¶ 4. Doe repeats that she "came to the United States from [her] home country without [her] parents," and that she is 17 years old. *Id.* ¶¶ 2, 3. But she never offers any fact establishing a connection to this country. *See id.* ¶¶ 5-18.

3. Not only are Plaintiff's factual assertions inadequate, but she further offers no case or authority establishing the right she asks this Court to recognize.

Plaintiff relies on *Roe*, *Casey*, and *Whole Woman's Health v. Hellerstedt* for the proposition that "the government may not prohibit any woman from making the ultimate decision to terminate her pregnancy before viability." Dkt. 3-2 at 9 (citing *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 871 (1992) (plurality op.); *Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292 (2016)). But those cases never say or even imply that the substantive due process right to an abortion recognized by the Supreme Court extends to unlawfully-present aliens—especially not those who, like Doe, have no ties to this country and were merely apprehended at the border.

Plaintiff relies further on *Planned Parenthood of Central Missouri v. Danforth*, 428 U.S. 52, 74 (1976), and *Bellotti v. Baird*, 443 U.S. 622, 633 n.12 (1979), for the proposition that the principles of *Roe* and *Casey* extend to minors. Dkt. 3-2 at 10-11. Those cases, too, did not involve unlawfully-present

aliens. Plus, those cases simply confer on minors the right to bypass parental-consent requirements by initiating a judicial proceeding to establish that an abortion is in their best interests. *See Bellotti*, 443 U.S. at 651. As Plaintiff admits, "if *Bellotti* means anything, 'it surely means that States seeking to regulate minors' access to abortion must offer a credible bypass procedure, independent of parents or legal guardians." Dkt. 3-2 at 11 (quoting *Causeway Med. Suite v. Ieyoub*, 109 F.3d 1096, 1112 (1997)). But Doe concedes that she already has received a judicial bypass in Texas state court. *See* Dkt. 3-3 ¶ 6. That ends the relevance of *Bellotti* and *Planned Parenthood of Central Missouri*.[3]

Lacking case support, Plaintiff turns to 45 C.F.R. § 411.92(a) for the proposition that unlawfully-present, unaccompanied minors such as Doe are entitled to reproductive care. Dkt. 1 ¶ 29. But she mischaracterizes § 411.92(a), which merely requires certain medical services, including emergency contraception, to minors who are "victims of sexual abuse." Doe has not alleged that she is the victim of sexual abuse. *See* Dkt 3-3.

4. Plaintiff is also wrong to cite the recent order in *American Civil Liberties Union of Northern California v. Burwell*, No. 3:16-cv-03539-LB, (N.D. Cal.) (Dkt. 102)—a case involving this same Jane Doe—to support her motion for a TRO. That court held that the preexisting plaintiff in that case could not

---

[3] A judicial bypass order does not confer on a minor the right to obtain an abortion. *See In re Doe*, 501 S.W.3d 313, 315-16 (Tex. App.—Houston [14th Dist.] 2016). It simply relieves Doe's abortion provider of any duty to consult her parents.

permissibly amend its complaint to add Doe and her claims to that lawsuit, an Establishment Clause case that had been pending for over a year. However, that court went on to note that Doe would be entitled to a TRO if she had brought her claims in a different lawsuit in a proper venue. *Id*. at 2. This Court should disregard that *dicta* because it is incorrect.

The Northern District of California never even asked—much less analyzed—the threshold question this case presents of whether unlawfully-present aliens with no ties to this country have a Fifth Amendment right to an abortion on demand while unlawfully present in the United States. Instead, the court put the cart before the horse and stated that the federal government has "no justification" for refusing to allow Doe to receive an abortion. *Id*. But the question of the government's justification matters only if the right Doe presses exists—and in this case, it does not, as set out above. Had the Northern District of California properly begun with that threshold analysis, instead of assuming without discussion that Doe has a right to an abortion, it would have been forced to reach the opposite conclusion.

At any rate, even on its own terms, the Northern District of California's analysis is incorrect. That court accused the federal government of "actively preventing a woman from getting an abortion." *Id*. Plaintiff echoes that point, arguing that the government is "prohibit[ing] her from exercising her rights at all." Dkt. 3-2 at 2. But both the Plaintiff and the Northern District of California mischaracterize this case. Doe concedes that her presence in this country is unlawful. Dkt. 3-2 at 3 (Doe has "no legal immigration status"). The

government has explained that Doe is free to voluntarily depart this country. Her "continued custodial status is due mainly to her decision not to file for voluntary departure." *Am. Civil Liberties Union of N. Cal.*, No. 3:16-cv-03539-LB (Dkt. 94 at 6-7). Neither Plaintiff nor the Northern District of California has offered any citation or explanation to support their view that the government blocks access to abortion even when it tells an unlawfully-present alien that she is free to leave.

5. Granting the relief Plaintiff seeks would have far-reaching and dire consequences throughout constitutional law and would undermine settled precedents.

If on the facts of this case Doe has a Fifth Amendment right to an abortion, it is hard to imagine why she could be denied any other constitutional rights— such as the Second Amendment right to keep and bear arms. *See McDonald v. City of Chicago*, 561 U.S. 742, 778 (2010) (the "right to keep and bear arms" lies among the "fundamental rights necessary to our system of ordered liberty"). Yet courts have consistently rejected the notion that unlawfully-present aliens with no substantial connections to this country are protected by the Second Amendment. *See United States v. Portillo–Munoz*, 643 F.3d 437, 442 (5th Cir. 2011) ("the phrase 'the people' in the Second Amendment of the Constitution does not include aliens illegally in the United States"); *United States v. Carpio–Leon*, 701 F.3d 974, 979 (4th Cir. 2012) ("illegal aliens do not belong to the class of law-abiding members of the political community to whom the Second Amendment gives protection"); *United States v. Flores*, 663

10

F.3d 1022, 1023 (8th Cir. 2011) (per curiam) ("the protections of the Second Amendment do not extend to aliens illegally present in this country"); *cf. Meza-Rodriguez*, 798 F.3d at 669-672 (unlawfully-present alien has Second Amendment rights only because he arrived in the U.S. at a young age and lived here for 20 years).

To hold that Doe has a constitutional right to an abortion in this case would undermine these and others cases holding that individuals in Doe's circumstances possess only narrow constitutional protections. The Court should decline to take that dramatic step.

## II.   Granting a TRO or Preliminary Injunction Will Harm the Public Interest.

Plaintiff's motion for a TRO and preliminary injunction should be denied because granting it will harm the public interest. As the Supreme Court has recognized, the States already "bear[] many of the consequences of unlawful immigration." *Arizona*, 567 U.S. at 397. *See Texas v. United States*, 106 F.3d 661, 664 (5th Cir. 1997) (Texas' "educational, medical, and criminal justice expenditures on undocumented aliens" are over a billion dollars annually).

If the Court grants this TRO and preliminary injunction, it will effectively announce that anyone on Earth has any number of constitutional rights simply by being apprehended while trying to cross the United States border. That dramatic expansion of rights available to unlawfully-present aliens with no substantial connection to this country will incentivize even more unlawful entries and further consume public resources at the State and local level.

## CONCLUSION

For the foregoing reasons, *amici* urge the Court to deny Plaintiff's motion for a temporary restraining order or preliminary injunction.

Respectfully submitted.

LESLIE RUTLEDGE
Attorney General of Arkansas
323 Center Street, Suite 200
Little Rock, Arkansas 72201

JEFF LANDRY
Attorney General of Louisiana
P.O. Box 94005
Baton Rouge, LA 70804

BILL SCHUETTE
Attorney General of Michigan
P.O. Box 30212
525 West Ottowa Street
Lansing, MI 48909-0212

DOUG PETERSON
Attorney General of Nebraska
2115 State Capitol
Lincoln, NE 68509

MIKE DEWINE
Attorney General of Ohio
30 E. Broad St., 26th Floor
Columbus, OH 43215

KEN PAXTON
Attorney General of Texas

JEFFERY C. MATEER
First Assistant Attorney General

BRANTLEY D. STARR
Deputy First Assistant Attorney General

/s/ *Scott A. Keller*
SCOTT A. KELLER
Solicitor General
Bar No. TX0120
scott.keller@oag.texas.gov

Kyle Hawkins
Assistant Solicitor General

JAMES E. DAVIS
Deputy Attorney General for Civil Litigation

DAVID J. HACKER
Special Counsel for Civil Litigation

OFFICE OF THE TEXAS ATTORNEY GENERAL
P.O. Box 12548, Mail Code 009
Austin, Texas 78711-2548
(512) 936-1700

*Attorneys for Amici Curiae*

MIKE HUNTER
Attorney General of Oklahoma
313 NE 21st Street
Oklahoma City, OK 73105

ALAN WILSON
Attorney General of South
Carolina
P.O. Box 11549
Columbia, S.C. 29211

## Certificate of Service

I hereby certify that on October 17, 2017 the foregoing document was served via electronic filing on all counsel of record in this case.

/s/ Scott A. Keller
Scott A. Keller
Solicitor General