**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| ROCHELLE GARZA, as guardian ad litem to unaccompanied minor J.D.,on behalf of herself and others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | No. 17-cv-02122-TSC |
| v. | ) ) | |
| ERIC D. HARGAN, *et al.*, | ) ) | |
| Defendants. | ) ) ) | |

**PLAINITFF'S MOTION FOR CLASS CERTIFICATION**[1]

**SUMMARY OF ARGUMENT AND CLASS DEFINITION**

Plaintiff hereby moves for class certification pursuant to Fed. R. Civ. P. 23(c)(1) and

Local Rule 23.1(b). Plaintiff J.D. brings this action on behalf of herself and others similarly

situated to prevent Defendants—the Office of Refugee Resettlement (ORR) and the Department

of Health and Human Services (DHHS), by and through their employees ("Defendants")—from

obstructing, hindering, blocking or otherwise interfering with unaccompanied immigrant minors'

(UCs') access to abortion. Plaintiff respectfully moves this Court to certify a class so that J.D.

and others similarly situated may be allowed to exercise their constitutional rights and receive

the pregnancy-related care they need without unconstitutional obstructions, interference or

barriers. Specifically, Plaintiff seeks to certify a class of all pregnant UCs who are or will be in

the legal custody of the federal government ("Proposed Class").[2]

---

[1] Pursuant to Local Rule 7(m), Plaintiff's counsel emailed Defendants' counsel on October 16, 2017, providing notice of Plaintiff's intent to file the present motion and inquiring as to whether Defendants would consent to the relief requested in this motion. Two days have now elapsed and Defendants still have not responded to Plaintiff's email. Having satisfied the Rule's requirements to undertake a "good-faith effort to determine whether there is any opposition to the relief sought" before filing, Plaintiff hereby files this motion.

[2] All references to Plaintiff's "motion to certify a class" throughout this brief and in any accompanying materials filed in connection with this brief include Plaintiff's request, in the alternative, that the Court provisionally certify the Proposed Class for purposes of preliminary injunctive relief should the Court believe that provisional class certification is more appropriate

The Proposed Class satisfies the requirements of Fed. R. Civ. P. 23(a) because a class of all pregnant UCs who are or will be in the legal custody of the federal government is a class that is so numerous that joinder is impracticable. The actions of Defendants have led to the denial of pregnancy related care to UCs and raise questions of fact and law common to the class. J.D.'s constitutional claims are typical of those claims held by members of the Proposed Class, and J.D., as well as her attorneys in this case, will adequately and fairly represent the interests of the class. Finally, the Proposed Class satisfies the requirements of Rule 23(b)(2) because the Defendants are acting in a manner generally applicable to the class, thereby making appropriate final injunctive relief with respect to the class as a whole.

## BACKGROUND

Plaintiff incorporates by reference the facts submitted in support of her Application for a TRO and Motion for a Preliminary Injunction (ECF Doc. Nos. 3, 5).

## ARGUMENT

Federal Rule of Civil Procedure 23 governs class actions in federal court, and a plaintiff whose suit meets that Rule's requirements has a "categorical" right "to pursue his claim as a class action." *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010). The "suit must satisfy the criteria set forth in subdivision (a) (*i.e.*, numerosity, commonality, typicality, and adequacy of representation), and it also must fit into one of the three categories described in subdivision (b)." *Id.* (citing Fed. R. Civ. P. 23(b)). As set forth below, all four of the Rule 23(a) requirements are satisfied here, and the action also satisfies Rule

---

at that stage. *See, e.g.*, *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 179-80 (D.D.C. 2015) ("In granting such provisional certification, the Court must still satisfy itself that the requirements of Rule 23 have been met. Its analysis is tempered, however, by the understanding that such certifications may be altered or amended before the decision on the merits.) (internal citations and quotations omitted). *See also Kifafi v. Hilton Hotels Ret. Plan*, 189 F.R.D. 174, 178 (D.D.C. 1999) (relying on Fed. R. Civ. P. 23(c)(1) to grant provisional class certification subject to later possible amendment).

23(b) because "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

## I.   THIS ACTION SATISFIES THE CLASS CERTIFICATION REQUIREMENTS OF FED. R. CIV. P. 23(a).

### A.   The Proposed Class Members Are So Numerous That Joinder Is Impracticable.

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Demonstrating impracticability of joinder does not mandate that joinder of all parties be impossible—only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate." *DL v. D.C.*, 302 F.R.D. 1, 11 (D.D.C. 2013), *aff'd*, 860 F.3d 713 (D.C. Cir. 2017) (citation omitted). "There is no specific threshold that must be surpassed in order to satisfy the numerosity requirement; rather, the determination requires examination of the specific facts of each case and imposes no absolute limitations." *Taylor v. D.C. Water & Sewer Auth.*, 241 F.R.D. 33, 37 (D.D.C. 2007) (citation omitted); *see also Thorpe v. D.C.*, 303 F.R.D. 120, 144 (D.D.C. 2014) ("There is no specified or minimum number of plaintiffs needed to maintain a class action.") (citation omitted).  Moreover, a "plaintiff need not provide the exact number of potential class members to satisfy the requirement, so long as there is a reasonable basis for the estimate provided." *Lightfoot v. D.C.*, 246 F.R.D. 326, 335 (D.D.C. 2007).

The Proposed Class is sufficiently numerous. Plaintiff seeks relief on behalf of all pregnant UCs who are or will be in the legal custody of the federal government. All pregnant UCs are affected by Defendants' revised policy that grants ORR a veto power over a minor's abortion decision, erects numerous hurdles to a minor's ability to obtain unbiased counseling about pregnancy options and prompt pregnancy dating, regardless of whether they will ultimately decide to terminate or carry to term their pregnancy, and imposes significant hurdles

for minors who decide to have an abortion. Government documents suggest there are hundreds of pregnant UCs in federal government custody each year. According to documents received through discovery in another case, between August 2015 and March 2017, there were over a thousand UCs in ORR custody who were pregnant. Ex. 1, Decl. of Brigitte Amiri in Supp. of Pl's. Mot. for Class Certification ("Amiri Dec.") ¶ 5, Ex. C. On March 6, 2017 alone, there were 38 pregnant young people in 18 programs across ORR's national network of shelter facilities. *Id.* ¶ 6, Ex. D.

Joinder is also inherently impractical because of the unnamed, unknown future class members who will be pregnant while in the legal custody and care of ORR. *DL*, 302 F.R.D. at 11 ("[F]uture members make joinder inherently impracticable because there is no way to know who they will be and the inherently transitory nature of the class members makes their joinder in a single, non-class suit impossible, since only a portion of the class will have standing to bring their claims at any one time.") (internal citation omitted); *see also Ali v. Ashcroft*, 213 F.R.D. 390, 408-09 (W.D. Wash. 2003), *aff'd,* 346 F.3d 873, 886 (9th Cir. 2003), *vacated on other grounds*, 421 F.3d 795 (9th Cir. 2005) ("where the class includes unnamed, unknown future members, joinder of such unknown individuals is impracticable and the numerosity requirement is therefore met, regardless of class size"). While this precise number is unknowable, general knowledge and common sense indicate that it is large. In 2014, there were approximately 726 pregnant UCs in ORR custody; in 2015, there were 450; and in 2016, 682. Amiri Dec. ¶ 4, Ex. B; ¶ 5, Ex. C. The Court can reasonably assume that this number will continue to be substantial. Moreover, both the inherently temporal nature of pregnancy and transitory nature of the UC population adds to the impracticability of joining future class members. *See J.D. v. Nagin*, 255 F.R.D. 406, 414 (E.D. La. 2009) ("The mere fact that the population of the [juvenile detention

facility] is constantly revolving during the pendency of litigation renders any joinder impractical.").

Additional factors commonly considered by courts when evaluating numerosity compel the conclusion that class treatment is appropriate. These factors include: "(1) "judicial economy arising from avoidance of a multiplicity of actions"; (2) "geographic dispersion of class members"; (3) "size of individual claims"; (4) "financial resources of class members"; and (5) "the ability of claimants to institute individual suits." *Coleman through Bunn v. D.C.*, 306 F.R.D. 68, 80 (D.D.C. 2015) (citation omitted). While each of these factors weighs sharply in favor of class certification, factors (2), (4), and (5) are particularly pertinent here. Proposed Class members are scattered across the entire nation. Plaintiff seeks relief on behalf of a Proposed Class of pregnant young people who, being completely new to this country and entirely dependent upon the federal government and its network of grantees, largely lack the knowledge, skills and resources needed to understand—let alone assert—their statutory and constitutional rights on their own. *DL*, 302 F.R.D. at 11 (certifying class of a school district's "youngest and most vulnerable pupils, many of whom are indigent and unable to obtain legal services"); *see also Coleman*, 306 F.R.D. at 80 (certifying a class of individuals who had lost their residential property in foreclosure proceedings prompted by imposition of property tax liens and tax sales, noting that the members were "by definition, uniquely vulnerable"); *Leyva v. Buley*, 125 F.R.D. 512, 515 (E.D. Wash. 1989) (certifying class of migrant workers and citing class members' lack of sophistication, limited knowledge of the legal system, limited or non-existent English skills, and fear of retaliation). Moreover, ORR's willingness to transfer UCs to different sites complicates Proposed Class members' ability to identify and secure legal representation and obstructs their ability to understand their legal rights and proceed individually. As a result, any

doubt as to whether Rule 23(a)(1) is met should be resolved in favor of class treatment. *Coleman*, 306 F.R.D. at 80 (finding numerosity satisfied, in part, because "the vulnerability of many members of the class renders their claims uniquely unsuited for individual prosecution.").

### B.  The Class Presents Common Questions of Law and Fact.

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). At bottom, "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). "What matters to class certification ... is not the raising of common 'questions'— even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.* at 2551–2556. "[P]laintiffs must bridge the gap between individual claims of harm and the existence of a class of persons who have suffered the same injury as that individual." *Id.* at 2553 (citation omitted). "[W]here plaintiffs allege widespread wrongdoing by a defendant ... a uniform policy or practice that affects all class members' bridges the gap." *DL*, 302 F.R.D. at 12 (quoting *DL v. District of Columbia*, 713 F.3d 120, 128 (D.C. Cir. 2013)); *see also Thorpe*, 303 F.R.D. at 145–46. "As the D.C. Circuit recently explained, commonality is satisfied where there is a uniform policy or practice that affects all class members." *R.I.L-R*, 80 F. Supp. 3d at 181; *see also DL*, 713 F.3d at 128. Such suits "by their very nature often present common questions satisfying Rule 23(a)(2)." 7A Wright, Miller & Kane, Federal Practice & Procedure § 1763 (3d ed. 2005).

Proposed Class members here suffer the same injury as a result of Defendants' new policies—the deprivation of their legally protected right to aspects of pregnancy-related care, including abortion, without interference by Defendants. The claims brought by Plaintiff J.D. on behalf of the Proposed Class raise common questions of both law and fact, including:

- Whether ORR has policies and practices that interfere, obstruct or prevent pregnant UCs from accessing certain pregnancy-related care, including preventing access to the abortion itself, preventing access to unbiased counseling, preventing access to certain medical examinations, and forcing minors to obtain "counseling" from anti-abortion crisis pregnancy centers, which forces them to discuss their most intimate decisions.

- Whether ORR can constitutionally force UCs to tell their parents or sponsors, or tell UCs' parents and sponsors themselves, about the minors' pregnancy and/or abortion decision, against the minors' express wishes—even where they have sought and/or obtained a judicial bypass to ensure that their parents and/or sponsors do not learn of their decision.

- Whether these policies violate the UCs' Fifth Amendment due process rights.

- Whether these policies violate the UCs' First Amendment rights.

Any one of these common issues, standing alone, is enough to satisfy Rule 23(a)(2)'s permissive standard. "[F]actual variations among the class members will not defeat the commonality requirement, so long as a single aspect or feature of the claim is common to all proposed class members." *Bynum v. D.C.*, 214 F.R.D. 27, 33 (D.D.C. 2003). "Even a single common question will do" to support a commonality finding. *Wal-Mart Stores*, 131 S. Ct. at 2556; *see also Vista Healthplan, Inc. v. Warner Holdings Co. III*, 246 F.R.D. 349, 357 (D.D.C. 2007) ("The commonality test is met when there is at least one issue, the resolution of which will affect all or a significant number of the putative class members.").

### C. The Claims of the Named Plaintiff Are Typical of the Claims of the Members of the Proposed Class.

Rule 23(a)(3) requires that the claims or defenses of the class representatives be typical of the claims or defenses of the class members. "The typicality requirement is concerned with whether the named plaintiffs are appropriate representatives of the class whose claims they wish

to litigate." *Wal-Mart Stores*, 131 S. Ct. at 2550. "A class representative satisfies the typicality requirement if the representative's claims are based on the same legal theory as the claims of the other class members and her injuries arise from the same course of conduct that gives rise to the other class members' claims." *Coleman*, 306 F.R.D. at 83 (internal citation omitted). Under the rule's permissive standards, "[f]actual variations between the claims of class representatives and the claims of other class members claims do not negate typicality." *Bynum*, 214 F.R.D. at 34 "Rather, if the named plaintiffs' claims are based on the same legal theory as the claims of the other class members, it will suffice to show that the named plaintiffs' injuries arise from the same course of conduct that gives rise to the other class members' claims." *Id*. at 35.

Here, Plaintiff J.D.'s legal claims are typical of the Proposed Class. Like other members of the Proposed Class, J.D.'s right to access comprehensive and unbiased pregnancy care in a timely fashion is at stake. She, like other members of the Proposed Class, is pregnant and needs prompt medical care that includes full, prompt, and unbiased options counseling. J.D., like other Proposed Class members who have decided to have an abortion or are considering abortion, or want to learn about the option of abortion from a neutral health care provider, suffer the same injury of constitutional deprivation of rights and harmful delay in accessing medical care as a result of the government's revised policy. Additionally, J.D., like other Proposed Class members, has privacy rights that are implicated. For example, the Defendants informed J.D.'s mother of her pregnancy despite J.D.'s decision to not inform her mother and despite a court order granting J.D. a judicial bypass. She, like other Proposed Class members, is subject to an unconstitutional veto power over her decision, was denied prompt unbiased options counseling, has been forced to divulge extremely intimate personal information against her will to her to anti-abortion crisis pregnancy center staff, is subject to enormous practical barriers to accessing the care she needs,

and she may even be forced to carry her pregnancy to term against her will. J.D., like the

members of the Proposed Class, has suffered violations of her rights to privacy and free speech

as a result of Defendants' policies, and the relief J.D. seeks is relief that could remedy each class

members' injury. J.D. and the Proposed Class are united in their interest and injury, and raise

common legal claims. Thus, the typicality requirement is easily met.

### D.  The Named Plaintiff Will Adequately Protect the Interests of the Proposed Class and Counsel are Qualified to Litigate this Action.

#### 1.  Named Plaintiff

The named Plaintiff will fairly and adequately protect the interests of the Proposed Class

because she seeks relief on behalf of the class as a whole and has no interest antagonistic to other

members of the class. Their mutual goal is to seek a declaration that Defendants' challenged

policies and practices of denying unaccompanied minors access to pregnancy-related care

(including full options counseling and termination) and erecting substantial, common barriers to

abortion access are unconstitutional, and to enjoin further constitutional violations. The interest

of the class representative is not antagonistic to those of the Proposed Class members, but in fact

coincides perfectly with them. *See* Amiri Dec. ¶ 2, Ex. A.

#### 2.  Counsel

Plaintiff's counsel is also adequate for the purposes of Rule 23. Rule 23(a)(4) requires

that the "representative parties will fairly and adequately protect the interests of the class." Fed.

R. Civ. P. 23(a)(4). "Two criteria for determining the adequacy of representation are generally

recognized: 1) the named representative must not have antagonistic or conflicting interests with

the unnamed members of the class, and 2) the representative must appear able to vigorously

prosecute the interests of the class through qualified counsel." *Nat'l Veterans Legal Servs.*

*Program v. United States*, 235 F. Supp. 3d 32, 41 (D.D.C. 2017) (*quoting Twelve John Does v.*

*Dist. of Columbia*, 117 F.3d 571, 575–76 (D.C. Cir. 1997)). Both requirements are plainly

satisfied here. There are no conflicts of interest between Proposed Class members or counsel.

Moreover, the interests of the Proposed Class have been vigorously represented in similar

litigation in the Northern District of California. Plaintiff is represented by counsel from the American Civil Liberties Union ("ACLU") Foundation, the ACLU Foundation of the District of Columbia, the ACLU Foundation of Northern California, and the ACLU Foundation of Southern California. These organizations and the individual attorneys on this case have expertise in class actions and constitutional impact litigation. They have participated in numerous cases in federal court defending reproductive freedom and challenging policies and practices within the federal immigration system. There can be no doubt that Plaintiff's counsel are competent and will adequately represent the class with zeal.

## II.   THIS ACTION SATISFIES THE REQUIREMENT OF RULE 23(b)(2) OF THE FEDERAL RULES OF CIVIL PROCEDURE.

In addition to satisfying the four requirements of Rule 23(a), Plaintiff also must meet one of the requirements of Rule 23(b) for a class action to be certified. Courts in this District have interpreted Rule 23(b)(2) to impose two requirements: "(1) that defendant's actions or refusal to act are 'generally applicable to the class' and (2) that plaintiffs seek final injunctive relief or corresponding declaratory relief on behalf of the class." *Bynum*, 214 F.R.D. at 37; *Disability Rights Water Council of Greater Washington v. Washington Metropolitan Area Transit Auth.*, 239 F.R.D. 9, 28 (D.D.C. 2006). To satisfy Rule 23(b)(2), "it is enough to show that a defendant has acted in a consistent manner toward members of the class so that his actions may be viewed as part of a pattern of activity." *Bynum*, 214 F.R.D. at 37 (internal citation omitted). "Rule 23(b)(2) was intended for civil rights cases." *In re D.C.*, 792 F.3d 96, 102 (D.C. Cir. 2015).

Certification of a class under Rule 23(b)(2) does not require every single class member to have been injured or aggrieved in the same way by a defendant's conduct. Rather, a class may properly be certified under Rule 23(b)(2) if the opposing party's "[a]ction or inaction is directed to a class … even if it has taken effect or is threatened only as to one or a few members of the class, provided it is based on grounds which have general application to the class." Fed. R. Civ. P. 23(b)(2) Advisory Committee's Note (1966). Thus, it is sufficient if the defendant has adopted or engaged in a pattern of activity that is central to the claims of all class members irrespective of

their individual circumstances and the disparate effects of the conduct. *Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 57 (3d Cir. 1994).

Civil rights class actions such as this one are the paradigmatic Rule 23(b)(2) suits, "for they seek classwide structural relief that would clearly redound equally to the benefit of each class member." *Marcera v. Chinlund*, 595 F.2d 1231, 1240 (2d Cir. 1979)*, vacated on other grounds sub nom. Lombard v. Marcera*, 442 U.S. 915 (1979); *see also Johnson v. Gen. Motors Corp.*, 598 F.2d 432, 435 (5th Cir. 1979); *Elliot v. Weinberger*, 564 F.2d 1219, 1229 (9th Cir. 1977) (action to enjoin allegedly unconstitutional government conduct is "the classic type of action envisioned by the drafters of Rule 23 to be brought under subdivision (b)(2)"), *aff'd in pertinent part sub nom. Califano v. Yamasaki*, 442 U.S. 682, 701 (1979).

### A. Defendants Have Acted or Refused to Act on Grounds That Apply Generally to the Class.

Certification of the Proposed Class under Rule 23(b)(2) is appropriate in this case because the Defendants' policy and practices impact all Proposed Class members. Defendants have adopted a policy that restricts or delays pregnant immigrant minors' access to fully informed and unbiased options counseling, grants Defendants a veto power over the minors' decisions about abortion, and erects a substantial barrier to access to abortion. *See* Pls.' Mot. for TRO/Preliminary Injunction (ECF Doc. No. 3).

The Proposed Class requests uniform relief in the form of an injunction prohibiting Defendants from denying unaccompanied minors access to constitutionally protected reproductive health care services. Because a single injunction would afford this relief to all members of the Proposed Class, certification under Rule 23(b)(2) is appropriate. *See Taylor*, 241 F.R.D. at 47 (finding declaratory and injunctive relief proper as to class where defendant "is alleged to have acted or refused to act on grounds generally applicable to all class members and that injunctive relief would be applicable to the entire class.")

**B.  Judicial Economy and the Transitory Nature of the Class Support Class Certification.**

Further, certification of the Proposed Class is appropriate because the injunctive and declaratory relief it seeks is necessary to avoid mootness and facilitate enforcement of judgments. *See* WILLIAM B. RUBENSTEIN, 1 NEWBERG ON CLASS ACTIONS § 2:13 (5th Ed. 2013). Given the temporary nature of pregnancy and the transitory nature of the UC population, absent certification of the Proposed Class, enforcing any judgment entered by the Court will be difficult. Moreover, other unaccompanied minors who meet the class definition or who may do so in the future are certainly entitled to the same rights as J.D. under federal law. Class-wide final injunctive and declaratory relief is therefore appropriate to avoid mootness and to facilitate enforcement of any judgment this Court may enter. *See Roe v. Wade,* 410 U.S. 113, 125 (1973) (recognizing the short temporal nature of pregnancy naturally causes mootness problems and is a quintessential situation capable of repetition but evading review).

Judicial economy also favors certification. Indeed, even assuming *arguendo* that all of the putative class members could either be joined to this action or litigate each of their cases as individuals, doing so would constitute a tremendous waste of judicial resources. *Matyasovszky v. Hous. Auth. of the City of Bridgeport,* 226 F.R.D. 35, 40 (D. Conn. 2005) ("when making a determination of joinder impracticability, relevant considerations include judicial economy arising from the avoidance of a multiplicity of actions, geographic dispersions of class members, financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief which would involve future class members") (citing *Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993)).

Accordingly, all the requirements of Rule 23 are met, and the Court should therefore certify the Proposed Class so that all similarly situated unaccompanied minors may benefit from the injunctive relief sought.

## CONCLUSION

Plaintiff respectfully requests that the Court grant this motion and enter the attached order

defining and certifying the class as set forth above so that Plaintiff J.D. and others similarly situated may receive constitutionally protected access to pregnancy care services.

October 18, 2017

Respectfully submitted,

/s Arthur B. Spitzer

Arthur B. Spitzer (D.C. Bar No. 235960)
Scott Michelman (D.C. Bar No. 1006945)
American Civil Liberties Union Foundation
of the District of Columbia
4301 Connecticut Avenue NW, Suite 434
Washington, D.C. 20008
Tel. 202-457-0800
Fax 202-457-0805
aspitzer@acludc.org
smichelman@acludc.org

Brigitte Amiri*
Meagan Burrows*
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Tel. (212) 549-2633
Fax (212) 549-2652
bamiri@aclu.org
mburrows@aclu.org

Daniel Mach (D.C. Bar No. 461652)
American Civil Liberties Union Foundation
915 15th Street NW
Washington, DC 20005
Tel. (202) 675-2330
dmach@aclu.org

Jennifer L. Chou
Mishan R. Wroe
American Civil Liberties Union Foundation of
Northern California, Inc.
39 Drumm Street
San Francisco, CA 94111
Tel. (415) 621-2493
Fax (415) 255-8437
jchou@aclunc.org
mwroe@aclunc.org

Melissa Goodman
American Civil Liberties Union Foundation of

Southern California
1313 West 8th Street
Los Angeles, California 90017
Tel. (213) 977-9500
Fax (213) 977-5299
*mgoodman@aclusocal.org*

*\*Admission for pro hac vice forthcoming*

*Attorneys for Plaintiff*