UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ROCHELLE GARZA, as guardian ad litem to unaccompanied minor J.D., on behalf of J.D. and others similarly situated,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>ERIC D. HARGAN, *et al.*,<br><br>　　　　　　Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 17-cv-02122 (TSC) |

**DEFENDANTS' MOTION FOR RECONSIDERATION OF
THE COURT'S OCTOBER 30, 2017 ORDER EXTENDING THE AMENDED
TEMPORARY RESTRAINING ORDER**

On October 30, 2017, the Court granted Plaintiff's Cross-Motion for Extension of the Amended Temporary Restraining Order (Amended TRO), which sought to extend paragraphs 3 and 4 of the Amended TRO, entered on October 24, 2017. *See* Order, ECF No. 29, October 24, 2017; Cross-Motion, ECF No. 38; Order, ECF No. 39, October 30, 2017. Paragraphs 3 and 4 of the Amended TRO restrain Defendants and "anyone acting in concert with them" from, respectively, "further forcing J.D. to reveal her abortion decision to anyone, or revealing it to anyone themselves," and from "retaliating against J.D based on her decision to have an abortion." Order, ECF No. 29, ¶¶ 3, 4, October 24, 2017. This Court extended those paragraphs of the Amended TRO "until further order of the court." Order, ECF No. 39, Oct. 30, 2017.

Defendants respectfully submit that the Court's extension of the Amended TRO was improvident. Plaintiff never informed Defendants that she planned to seek such relief and Defendants therefore had no opportunity to respond before the Court ruled, including addressing

significant legal issues such as how the equities supporting such relief have changed in light of Plaintiff's counsel's representation that J.D. has had an abortion. Accordingly, Defendants move for reconsideration of the Court's October 30, 2017 Order extending the Amended TRO and, for the reasons set forth below, respectfully request this Court deny plaintiff's request to extend paragraph 3 of the Amended TRO. In the alternative, the Court should not enter any provision that goes any further than restraining Defendants from "revealing J.D.'s abortion decision, in connection with her name or other information that would reveal her identity, except insofar as necessary to perform their custodial obligations such as providing medical care, emergency care, or identifying and evaluating potential sponsors." Defendants have reached out to Plaintiff regarding the relief requested in this motion on November 6, 2017, and Plaintiff opposes the motion.

Defendants do not seek reconsideration of the Order insofar as it extends paragraph 4 of the Amended TRO governing non-retaliation or extends Defendants' time to respond to Plaintiff's Motion for Class Certification through November 20, 2017.

## ARGUMENT

**<u>The Court should not enjoin Defendants from revealing J.D.'s abortion in exercise of their significant and legitimate interest in sharing that information with her medical providers and potential sponsors, and such limited disclosures pose no risk of irreparable injury to J.D.</u>**

This Court entered the Amended TRO on October 24, 2017, reasoning that "if Defendants are not immediately restrained from preventing her transportation to an abortion facility or otherwise interfering with or obstructing her access to an abortion—*including by further forcing her to disclose her abortion decision against her will or disclosing her decision themselves* . . .—Plaintiff J.D. will suffer irreparable injury in the form of, at a minimum, increased risk to her health, and perhaps the permanent inability to obtain a desired abortion to

which she is legally entitled." Order, ECF No. 29 (emphasis added). The Court further concluded that "Defendants will not be harmed if such an order is issued." *Id.*

The equities supporting this Court's Amended TRO are no longer the same now that plaintiff's counsel has represented that J.D. has already had an abortion. The irreparable injuries cited by the Court—increased risk to her health and the potential inability to obtain an abortion—are no longer at issue. And to the extent J.D. and her counsel have publicly announced the fact that she has had an abortion, they have waived any privacy interest in that fact that might support the requested relief. *See, e.g.,* Antonia Hylton, *Jane Doe Speaks*, HBO Vice News, October 25, 2017, at https://news.vice.com/story/exclusive-jane-doe-talks-about-her-abortion-battle-with-trumps-doj. Moreover, as explained below and in the attached declaration, extension of paragraph 3's broad prohibition on Defendants' ability to reveal the fact of J.D.'s abortion will significantly impair Defendants' ability to perform its custodial obligations with respect to J.D., including providing her with necessary and appropriate medical care and continuing their process of identifying and approving potential sponsors.

First, extension of paragraph 3 in the Amended TRO would significantly affect Defendants' ability to provide J.D. with appropriate medical care while she remains in the care and custody of the Office of Refugee Resettlement ("ORR"). As currently worded, paragraph 3 prevents Defendants from sharing her abortion medical records with her existing primary care physician or her obstetrician-gynecologist, provided to her through ORR. *See* Declaration of Jonathan White ("White Decl.") ¶ 7-8. For example, J.D.'s doctors placed her on a pregnancy regimen before her abortion, and paragraph 3 prevents Defendants from informing her doctors that she is no longer pregnant in order to enable them to prescribe a new regimen and follow-up treatment suitable for her. *See* White Decl. ¶ 8. Further, paragraph 3 prevents Defendants from

sharing J.D.'s abortion medical records with other medical care providers, White Decl. ¶ 6, including even emergency care providers, significantly restricting Defendants' ability to provide J.D. with appropriate medical care while she remains under their watch. White Decl. ¶¶ 6-8.

Second, extension of paragraph 3 significantly impairs Defendants' ability to vet potential sponsors for J.D. and provide her with a safe home for placement. Given the strong sentiments evoked by the issue of abortion, Defendants might need to inquire as to a potential sponsor's views on the issue so as to make sure that a potential sponsor would not retaliate against her, otherwise punish her, or fail to provide a safe environment. *See* White Decl. ¶¶ 9, 10. The extension of paragraph 3 undercuts Defendants ability to make such inquiries, if deemed necessary or appropriate. White Decl. ¶¶, 9, 10. Allowing Defendants to disclose this information, if determined to be necessary or appropriate, would enable them to better gauge whether a potential sponsor would be a proper custodian for J.D. Because J.D. and her attorneys have already publicly disclosed the fact that she had an abortion through numerous media sources, and given the high-profile nature of this case, it is likely any potential sponsor would eventually find out she had an abortion. White Decl. ¶¶ 9, 10. Indeed, the publicity generated by plaintiffs relating to this case could itself complicate the sponsorship search and make discussions relating to the abortion decision and that publicity essential to adequately vetting the sponsor. Extension of paragraph 3 of the Amended TRO, therefore, significantly undercuts ORR's ability and mission to keep J.D. safe from future harm. *See* White Decl. ¶¶ 9, 10.

Accordingly, because paragraph 3 of the Amended TRO is no longer justified by the balancing of the equities, Defendants respectfully request that this Court reconsider its Order extending paragraph 3 indefinitely. In the alternative, the Court should not enter an extended provision that goes any further than restraining Defendants from "revealing J.D.'s abortion

4

decision, in connection with her name or other information that would reveal her identity, except insofar as necessary to perform their custodial obligations such as providing medical care, emergency care, or identifying and evaluating potential sponsors."

## **CONCLUSION**

Defendants respectfully request that the Court reconsider its October 30, 2017 Order, and deny extension of paragraph 3 the Amended TRO.  In the alternative, the Court should not enter an extended provision that goes any further than restraining Defendants from "revealing J.D.'s abortion decision, in connection with her name or other information that would reveal her identity, except insofar as necessary to perform their custodial obligations such as providing medical care, emergency care, or identifying and evaluating potential sponsors."  Defendants further request that the Court not disturb its October 30, 2017 Order granting an extension of time through November 20, 2017 to file their Response to Plaintiff's Motion for Class Certification.

Dated:  November 6, 2017                                       Respectfully submitted,

                        CHAD A. READLER
                        Acting Assistant Attorney General
                        Civil Division

                        ERNESTO H. MOLINA
                        Deputy Director
                        Office of Immigration Litigation

                        PAPU SANDHU
                        Assistant Director
                        Office of Immigration Litigation

                 BY:  /s/ *W. Daniel Shieh*
                        W. DANIEL SHIEH
                        Trial Attorney
                        Office of Immigration Litigation
                        Civil Division, U.S. Department of Justice
                        P.O. Box 878, Ben Franklin Station
                        Washington, D.C.  20044
                        Phone: (202) 305-9802
                        Fax: (202) 305-1890
                        Daniel.Shieh@usdoj.gov

                        Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ROCHELLE GARZA, et al.        )
                              )
       Plaintiff,             )
                              )
v.                            )    Civil Action No. 1:17-cv-2122
                              )
ERIC HARGAN, et al.           )
                              )
       Defendants.            )
_____)

**DECLARATION OF JONATHAN WHITE, DEPUTY DIRECTOR FOR CHILDREN'S PROGRAMS, OFFICE OF REFUGEE RESETTLEMENT, ADMINISTRATION FOR CHILDREN AND FAMILIES, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES**

I, Jonathan White, for my declaration pursuant to 28 U.S.C. § 1746, hereby state and depose as follows, based on my personal knowledge and information provided to me in the course of my official duties:

1. I am the Deputy Director for Children's Programs of the Office of Refugee Resettlement ("ORR"), an Office within the Administration for Children and Families ("ACF"), Department of Health and Human Services ("HHS").

2. I am familiar with ORR policies and procedures concerning the care of unaccompanied alien children ("UACs") in ORR care and custody, including the medical care and the process of considering prospective sponsors for the UACs.

3. I am also familiar with the policies, procedures, decisions, case details, and care concerning the minor identified in the complaint as J.D.

4. My understanding is that the Court has extended its order that HHS and the shelter are "restrained from further forcing J.D. to reveal her abortion decision to anyone, or revealing it to anyone themselves."

5. The Court's restriction, as I understand it, presents several problems for HHS and the shelter to engage in the proper care and placement of J.D.

6. J.D. has recently requested mental health treatment. The Court's restriction, as we understand it, prohibits HHS or the shelter from informing prospective mental health providers of J.D.'s abortion or sharing her medical records concerning that abortion. This information would normally be shared with such health care providers; reporting recent medical and surgical procedures is a standard intake question for mental health treatment.

7. According to standard program procedures, J.D. has a primary care physician. The Court's restriction, as I understand it, prohibits HHS or the shelter from informing J.D.'s primary care physician of her abortion or sharing her medical records concerning that abortion. The primary care physician would normally require full access to the UAC's medical history, including information about a pregnancy termination procedure, in order to provide for the UAC's ongoing care.

8. According to standard program procedures for UACs who are pregnant, the UAC has an Ob/Gyn. The Court's restriction, as I understand it, prohibits HHS or the shelter from informing J.D.'s Ob/Gyn of her abortion or sharing her medical records concerning that abortion. The Ob/Gyn would normally have this information in order to provide for a UAC's ongoing

Ob/Gyn care. J.D.'s Ob/Gyn had set forth a care plan for J.D. based on her pregnancy, and it is not clear how the shelter can seek any necessary adjustments to that care plan under the Court's order, nor how the Ob/Gyn would provide routine follow-up care.

9. ORR's policies concerning review of potential sponsors of UACs are described at https://www.acf.hhs.gov/orr/resource/children-entering-the-united-states-unaccompanied-section-2 . These policies and procedures exist to promote public safety and ensure that sponsors are able to provide for the physical and mental well-being of children. The law requires ORR to protect children from smugglers, traffickers, or others who might seek to victimize or otherwise engage the child in criminal, harmful or exploitative activity. The process for the safe and timely release of a UAC from ORR custody involves many steps and screening methods. These methods are to ensure that a potential sponsor does not pose a risk to the unaccompanied alien child, to other children in the care provider facility or to care provider staff. These safe screening methods include using appropriate interpreters, obtaining the identity of the sponsor, verifying family relationships, coordinating with the UAC's parents, legal guardians, or closest relatives prior to contacting non-relative adult potential sponsors, screening for exploitation, abuse, trafficking, or other safety concerns, and engaging the child to communicate openly with care provider staff about his or her own sense of safety. Assessment criteria for sponsors include, among other things, considering the sponsor's strengths, resources, and mitigating factors in relation to any risks or special concerns of the child or sponsor, and the UAC's current functioning and strengths in relation to any risk factors or special concerns, including physical or mental health issues.

10. ORR and the shelter are looking into possible sponsorship of J.D. according to their standard procedures. Those procedures include screening prospective sponsors and sponsorship situations into which J.D. might be placed to ensure they do not pose a risk to J.D. That screening should include ensuring that J.D. faces no risk based on the fact that she was pregnant and had an abortion. Such screening would involve such processes as asking J.D.'s parents whether the prospective sponsor or sponsorship situation might pose a risk to J.D. if they find out she was pregnant and had an abortion, or encouraging J.D. to discuss the issue with a prospective sponsor. The fact that J.D. and her attorneys have conducted a video interview of her with a major television network, which was broadcast online, included her voice and showed all but her face, increases the likelihood that in J.D.'s sponsorship situation the sponsor or any others living with her will find out that she was pregnant and had an abortion. The Court's restriction, as I understand it, would prevent ORR from screening the prospective sponsorship situation regarding whether J.D. would face any risk in that situation based on the fact of her pregnancy and abortion.

I declare under penalty of perjury that the foregoing is true and correct. Executed on November 3, 2017.

*[signature]*

Jonathan White, *ORR Deputy Director for Children's Programs*

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ROCHELLE GARZA, as guardian ad Litem to unaccompanied minor J.D., on behalf of J.D. and others similarly situated, </br></br>             Plaintiff, </br></br>   v. </br></br> ERIC D. HARGAN, *et al.*, </br></br>             Defendants. | )</br>)</br>)</br>)</br>)</br>)</br>) Civil Action No. 17-cv-02122 (TSC)</br>)</br>)</br>)</br>)</br>)</br>)</br>) |

### DEFENDANTS' PROPOSED ORDER FOR RECONSIDERATION OF THE COURT'S OCTOBER 30, 2017 ORDER

THIS CAUSE comes before the Court upon Plaintiff's Cross-Motion for Extension of the Court's October 24, 2017 Amended Temporary Restraining Order.

UPON RECONSIDERATION of the Cross-Motion, the Court hereby ORDERS:

The extension of ¶ 3 of the Amended Temporary Restraining Order, which restrains Defendants from "further forcing J.D. to reveal her abortion decision to anyone, or revealing it to anyone themselves," is DENIED;

In the alternative, the Court AMENDS ¶ 3 to only enjoin Defendants from "revealing J.D.'s abortion decision, in connection with her name or other information that would reveal her identity, except insofar as necessary to perform their custodial obligations such as providing medical care, emergency care, or identifying and evaluating potential sponsors."

The extension of time through November 20, 2017 for Defendants' to file their Response to Plaintiff's Motion for Class Certification remains in effect.

Dated: November __, 2017

_____
TANYA S. CHUTKAN
United States District Judge