**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

ROCHELLE GARZA, as guardian ad litem to unaccompanied minor J.D., on behalf of herself and others similarly situated,

Plaintiff,

v.

ERIC D. HARGAN, *et al.*,

Defendants.

No. 17-cv-02122-TSC

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION OF THE COURT'S ORDER EXTENDING THE AMENDED TEMPORARY RESTRAINING ORDER**

Plaintiff opposes Defendants' motion asking this Court to allow them to violate J.D.'s Fifth Amendment right to privacy. *See* Defs.' Mot. Recons., ECF No. 45, ("Mot. Recons."). The crux of Defendants' argument is that in order to "perform their custodial obligations with respect to J.D." they must be able disclose J.D.'s private abortion decision—over her objection and without her consent—to third parties, including to her medical providers and prospective sponsors. *Id.* at 34. But this argument completely ignores that J.D. secured a judicial bypass, entitling her to obtain an abortion *without* the knowledge of her parents or guardians. As such, if J.D. were in the custody of a parent right now, she alone would decide whether and to whom to reveal her abortion decision. Defendants cannot claim that they have such significant "custodial" interests in disclosing J.D.'s private information without her consent where J.D.'s own parents have none. Indeed, the "custodial" interests that Defendants assert as their own are actually *J.D.'s interests* in obtaining medical care and an appropriate sponsor. This Court should not permit Defendants to misappropriate J.D.'s welfare as a guise through which to violate her constitutional rights. Accordingly, and for the reasons set forth below, Plaintiff respectfully

requests that this Court deny Defendants' motion.[1]

### I. Plaintiff Is Likely to Succeed on the Merits of Her Claim that Defendants' Conduct Violates J.D.'s Fifth Amendment Rights.

As this Court has already found, Plaintiff is "likely to succeed on the merits of her action." Am. TRO 1, ECF No. 29. Defendants' disclosure of J.D.'s abortion decision to third parties, over her objection and without her consent, would not only contravene the protections afforded by the judicial bypass that J.D. obtained, *see* Pl.'s Mem. Supp. App. TRO & Prelim. Inj. 11–12, ECF No. 3-2, it would also violate her right to privacy "in avoiding disclosure of personal matters." *Whalen v. Roe*, 429 U.S. 589, 599 (1977). This privacy interest is only heightened here, where the "personal matter" at issue—J.D.'s abortion decision—is one that is highly sensitive, intimate and emotionally charged. *See, e.g.*, *Thornburgh v. Am. Coll. of Obstetricians & Gynecologists*, 476 U.S. 747, 766 (1986) ("The decision to terminate a pregnancy is an intensely private one that must be protected in a way that assures anonymity."), *overruled on other grounds by Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 882 (1992); *Planned Parenthood of S. Arizona v. Lawall*, 307 F.3d 783, 790 (9th Cir. 2002) (citing *Eisenstadt v. Baird*, 405 U.S. 438, 453 (1972) for the proposition that that the abortion related information that courts obtain in a judicial bypass proceeding is "sensitive private information . . . worthy of constitutional protection."). Accordingly, Plaintiff is likely to succeed on the merits of her claim that the Constitution prohibits Defendants from revealing her abortion decision.[2]

---

[1] Defendants do not contest this Court's general ability to extend the terms of the Amended Temporary Restraining Order ("Amended TRO") as to J.D. Nor do they seek reconsideration of the extension of paragraph 4 of the Amended TRO governing non-retaliation. Mot. Recons. 2. They focus only on the extension of paragraph 3 of the Amended TRO, which restrains them from revealing J.D.'s abortion decision to others without her consent. *See id.* at 2, 4–6.

[2] Contrary to Defendants' assertion, Mot. Recons. 3, J.D.'s *own decision* to be interviewed by Vice News *anonymously* (with her face and identity not being revealed for her protection) does

## II. J.D. Will Suffer Irreparable Harm If Defendants Are Permitted to Disclose Her Abortion Decision to Third Parties Without Her Consent.

Permitting Defendants to violate J.D.'s right to privacy by disclosing her abortion decision to others will irreparably harm J.D.[3] Numerous courts have found that disclosure of the fact that a woman is seeking or has obtained an abortion risks exposing her to serious harm, including harassment, ostracism, rejection and even abuse or violence. *See Bellotti v. Baird*, 443 U.S. 622, 645 (1979); *Thornburgh*, 476 U.S. at 767 & n.12; *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 897–98 (1992); *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 758–59 (1994); *Margaret S. v Edwards*, 488 F. Supp. 181, 216 (E.D. La. 1980) (threat to privacy of abortion patient is of "impressive dimensions"); *Planned Parenthood of Ind. & Ky., Inc. v. Comm'r, Ind. State Dep't of Health*, No. 1:17-cv-01636-SEB-DML, 2017 WL 2797757, at *13 (S.D. Ind. June 28, 2017) (discussing numerous reasons why a minors may not want legal guardians to be notified of their abortion decisions, including fear of "abuse at the hands of one or more of their parents"); *Lawall*, 307 F.3d at 790 (maintaining that "disclosure of [abortion related] information would cause significant harm.").

As Plaintiff has already explained, this risk of harm is particularly salient for J.D., who

---

not constitute blanket waiver of her privacy rights. Indeed, J.D. and her attorneys have taken significant precautions to protect J.D.'s privacy during the litigation of this case, including by filing an unopposed motion for J.D. to proceed under a pseudonym. Nor does the "high-profile nature of this case" justify Defendants' violation of J.D.'s privacy rights. *Id.* at 4. Given the sheer number of minors in the custody of the Office of Refugee Resettlement ("ORR") at any one time, and that J.D. and her attorneys have been careful to protect her identifying information, it strains credulity to believe that any third party, including prospective sponsors, would be able to identify J.D. based solely on the knowledge that a "Jane Doe" minor has obtained an abortion and a recording of J.D.'s voice from the Vice News interview.

[3] Plaintiff has never limited the irreparable harm claim as to J.D. to an "increased risk to [J.D.'s] health and the potential inability to obtain an abortion." Mot. Recons. 3. To the contrary, Plaintiff has maintained from the start that J.D. will also be irreparably harmed if her abortion decision is disclosed to others without her consent. *See* Pl.'s Mem. Supp. App. TRO & Prelim. Inj. 15.

has suffered abuse at the hands of her parents in the past and who has expressed fear of retaliation because of her abortion decision. *See* Pl.'s Mem. Supp. App. TRO & Prelim. Inj. 15, ECF No. 3-2; Decl. of Marie Christine Cortez ¶¶ 8–11, ECF No. 41-1 (documenting the abuse J.D. has suffered at the hands of her parents); Decl. of J.D. ¶ 17, ECF No. 3-3 (explaining that she fears retaliation because of her abortion decision and that she does not want her family to know that she is seeking an abortion). Indeed, J.D. is proceeding under a pseudonym in this litigation because she fears that she will suffer humiliation and retaliation if relatives or members of the public are able to connect her name or identity with her abortion decision. *See* Decl. of J.D. ¶ 17, ECF No. 3-3; Pl.'s Mot. Leave J.D. to Proceed Under Pseudonym ¶ 5, ECF No. 33.

## III. Defendants' Interest In Fulfilling Their Custodial Obligations Will Not Be Harmed By Preserving the Injunction.

Conversely, the extended injunction imposes no harm on Defendants. As explained *supra*, Defendants have no legal right to notify third parties of J.D.'s abortion decision because J.D. obtained a judicial bypass providing her with the ability to consent to the abortion on her own, *without* notification to her parents or legal guardians. *See* Pl.'s Mem. Supp. App. TRO & Prelim. Inj. 11–12, 16, ECF No. 3-2. That J.D. has now obtained her abortion changes nothing – Defendants have the same interest in notifying third parties today as they did before the abortion procedure, "namely, none." *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F. Supp. 2d 1012, 1019–20 (D. Idaho 2005) (preliminarily enjoining law that allowed for notice to a parent *after* a minor obtained an emergency abortion). In fact, ORR policies regarding the disclosure of similarly sensitive information about minors who are over the age of 14 require that the minor's consent be obtained prior to any disclosure.[4]

[4] *See, e.g.*, ORR Policies and Procedures, Section 8.101 Information Sharing: Requests for UC Case File Information (2013), *available at* https://www.acf.hhs.gov/orr/resource/requests-for-

Nevertheless, Defendants once again attempt an end run around the judicial bypass by asserting that in order to effectuate their ability to "perform their custodial obligations with respect to J.D.," they must be permitted to disclose her abortion decision to her medical providers and prospective sponsors, over her objection and without her consent. Mot. Recons. 2. In other words, Defendants claim that they must be permitted to cause harm to J.D. now, so that they can "keep J.D. safe from future harm." *Id.* at 4. This is not persuasive.

First, Defendants fail to explain how their "custodial" interests will be harmed if they are prevented from informing J.D.'s primary care physician, mental health care provider, or obstetrician-gynecologist of the fact that she received an uncomplicated abortion. Mot. Recons. 3; Decl. of Jonathan White ("White Decl.") ¶¶ 6–8. In the unlikely event this information is relevant and/or requested by a health care provider, J.D.—who is 17 years old—is more than

uac-case-file-information ("In addition to a written request, [outside entities, attorneys, or other individuals seeking copies of UC case files, specific information contained in a UC case file, or other confidential information pertaining to a UC] . . . must complete . . . an Authorization for Release of Records . . . [that] must be signed by the UC if the UC is 14 years of age or older."); ORR Policy Guide, Section 4.10.4 Notification and Access to Attorneys/Legal Representatives, Families, Child Advocates and Sponsors (2015), *available at* https://www.acf.hhs.gov/orr/resource/children-entering-the-united-states-unaccompanied-section-4#4.10.4 (instructing the care provider to notify the attorney of record of a minor who is over 14 years old of any allegations of sexual abuse or harassment *only if* that minor authorizes the disclosure); *see also* Section 3.4.7 Maintaining Health Care Records and Confidentiality, *available at* https://www.acf.hhs.gov/orr/resource/children-entering-the-united-states-unaccompanied-section-3 ("The care provider must have written policies, procedures, and practices that protect the confidentiality of [unaccompanied alien children's] medical information."). *See also* Tex. Dep't of Family & Protective Servs., Minimum Standards for Gen. Residential Operations, Subchapter H, Child Rights, § 748.1101 (January 2017), *available at* https://www.dfps.state.tx.us/Child_Care/documents/Standards_and_Regulations/748_GRO.pdf (where the Texas Department of Family and Protective Services, the state agency responsible for licensing all shelters providing residential care to unaccompanied minors in Texas, instructs that all licensees "must adhere to" minors' "right to confidential care and treatment, including keeping medical records and operation records private.").

capable of providing this information to her health care provider herself.[5] Indeed, this is exactly what would be expected of a teenager who was not in federal custody, and who secured a judicial bypass permitting her to make her own abortion decision; it would be incumbent on her—not her parent or legal guardian—to provide her confidential medical history to her doctors, within the confines of the protected patient-physician relationship. Defendants do not—and cannot—claim to have greater interests than the parents of minors who have obtained judicial bypasses.

Nor have Defendants identified any way in which they will be harmed if they are prohibited from disclosing J.D.'s abortion decision to prospective sponsors. Defendants simply assert that they must be able to "inquire as to a potential sponsor's views on [abortion] so as to make sure that a potential sponsor would not retaliate against [J.D.], otherwise punish her, or fail to provide a safe environment." *See* Mot. Recons. 4; White Decl. ¶¶ 9–10. But both common sense and jurisprudence dictate that if Defendants truly desire to prevent J.D. from being retaliated against for her abortion decision by her immigration sponsor, there is a simple solution – they should not divulge J.D.'s abortion decision to her immigration sponsor. *See, e.g., Casey*, 505 U.S. at 897–98 (striking down spousal notification requirement because some women fear the consequences of notifying their husbands about their abortion decision).

---

[5] In an effort to assuage Defendants' alleged concerns regarding emergency care, Mot. Recons. 4, Plaintiff would be amenable to further amending the TRO to include a limited exception permitting Defendants to reveal certain information regarding J.D.'s abortion (1) in the event of a medical emergency in which (2) J.D. is, by virtue of an emergency medically condition, rendered unable to communicate this information to the medical provider herself, and only so long as (3) the relevant medical provider to whom the information is to be disclosed certifies in advance of the disclosure that this information is medically necessary to in order to provide adequate care, (4) only such information as is medically necessary to the provision of adequate care is revealed, and (5) this information is revealed only to the requesting medical provider and those working with the requesting medical provider who have a need to know this information in order to provide J.D. with adequate medical care.

**CONCLUSION**

In sum, because J.D. is likely to succeed on her claims, will suffer irreparable harm absent continued relief, and, conversely, such relief would inflict no measurable harm on Defendants' interest in effectuating their "custodial obligations," the balance of equities continues to strongly favor Plaintiff, and supports maintaining the Amended TRO as extended by this Court's October 30, 2017 Order. Defendants' motion should therefore be denied.

Date: November 20, 2017

Respectfully submitted,

/s/ *Arthur B. Spitzer*
Arthur B. Spitzer (D.C. Bar No. 235960)
Scott Michelman (D.C. Bar No. 1006945)
American Civil Liberties Union Foundation
of the District of Columbia
4301 Connecticut Avenue NW, Suite 434
Washington, D.C. 20008
Tel. 202-457-0800
Fax 202-457-0805
*aspitzer@acludc.org*
*smichelman@acludc.org*

Brigitte Amiri*
Meagan Burrows
Jennifer Dalven
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Tel. (212) 549-2633
Fax (212) 549-2652
*bamiri@aclu.org*
*mburrows@aclu.org*
*jdalven@aclu.org*

Daniel Mach (D.C. Bar No. 461652)
American Civil Liberties Union Foundation
915 15th Street NW
Washington, DC 20005
Telephone: (202) 675-2330
*dmach@aclu.org*

Jennifer L. Chou
Mishan R. Wroe

American Civil Liberties Union Foundation of
Northern California, Inc.
39 Drumm Street
San Francisco, CA 94111
Tel. (415) 621-2493
Fax (415) 255-8437
*jchou@aclunc.org*
*mwroe@aclunc.org*

Melissa Goodman
American Civil Liberties Union Foundation of
Southern California
1313 West 8th Street
Los Angeles, California 90017
Tel. (213) 977-9500
Fax (213) 977-5299
*mgoodman@aclusocal.org*

**Admitted pro hac vice*

*Attorneys for Plaintiff*