## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ROCHELLE GARZA, as guardian ad litem to unaccompanied minor J.D., on behalf of herself and others similarly situated**,** | ) ) ) ) | |
| Plaintiff, | ) ) | No. 17-cv-02122-TSC |
| v. | ) ) | |
| ERIC D. HARGAN, *et al.,* | ) ) | |
| Defendants. | ) ) ) ) | |

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION[1]

This Court should deny Plaintiff's Motion for Class Certification because Plaintiff fails to satisfy several elements of Rule 23 of the Federal Rules of Civil Procedure, which sets forth the standards for certification of a class. Foremost, Plaintiff's only class representative, Ms. Jane Doe, has had an abortion and is not pregnant. Yet Plaintiff still asks this Court to certify a class action on behalf of "all pregnant unaccompanied immigrant minors ['UCs'] who are or will be in the legal custody of the federal government," and prevent Defendants "from obstructing, hindering, blocking or otherwise interfering with [UC's] access to abortion." ECF No. 18 at 1. Plaintiff cannot meet the adequacy of representation, commonality, numerosity, and typicality

---

[1] The Defendants have requested that this Court stay proceedings pending Supreme Court review, consider the motion for class certification prior to addressing class relief, or as an alternative authorize the Defendants to file a response to the motion for a preliminary injunction to address the class-wide relief sought by Plaintiffs. The Court has not acted on that request, which we here reiterate. We also note that Defendants' response to the complaint or a dispositive motion to dismiss is due December 12, 2017 under the Federal Rules of Civil Procedure.

requirements of Rule 23(a).  Additionally, Plaintiff has failed to establish that at least one of the requirements of Rule 23(b) is met.  Consequently, Rule 23 precludes certification.

Ms. Doe is not an adequate representative under Rule 23(a)(4) because: (1) she cannot vigorously prosecute the interests of the proposed class, and (2) her interests are not aligned with other individuals in the class.  As an initial matter, Ms. Doe is no longer a member of the class she seeks to represent; her claim against the United States became moot when she obtained an abortion.  Following that abortion, she no longer maintains a legally cognizable interest in challenging the alleged Office of Refugee Resettlement ("ORR")  "policy" regarding the unrestricted ability of an unaccompanied minor in ORR custody to obtain an abortion, and thus, she cannot be a vigorous advocate for the class she now seeks to represent.  Nor are her interests typical of the class;  the overwhelming majority of pregnant UCs that have been in the custody of ORR in fiscal year ("FY") 2017 have sought to carry their pregnancies to full term, and used the counseling and medical services provided by ORR.  Indeed, there are currently no pregnant UCs in ORR's care who seek to terminate their pregnancies.  Plaintiff's suggestion that future UCs will be different is pure speculation.  Consequently, Ms. Doe is not an adequate class representative, and this Court should deny Plaintiff's Motion on that ground alone.

Even if Ms. Doe were an adequate representative under Rule 23(a)(4), her other arguments for class certification are similarly fraught with problems.  Ms. Doe has failed to establish commonality and typicality under Federal Rules 23(a)(2) and (a)(3) because she has not articulated a question of law or fact capable of generating a common answer for the putative class *as a whole* under *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).  Rather, she gloms together ORR "policies and practices" that allegedly "interfere, obstruct or prevent pregnant UCs from accessing" abortions and related services, and argues that the lawfulness of those "policies

and practices" is a question that will yield answers common to the class as a whole.  ECF. No. 18 at 7.  Yet there are no pregnant minors in ORR's care who seek to terminate their pregnancies and the vast majority of the putative class members are not even seeking access to abortions and related services.  And even assuming that some future putative class members might seek such access, they would invariably diverge in age and have different medical and psychological histories and presentations, familial situations, abilities and desire to voluntarily depart the United States and opportunities for expeditious release to sponsors.  Moreover, they would be physically present in different states with different abortion laws, and may be in different phases of judicial proceedings to bypass parental notification or consent requirements.  Facts like these are different for different potential class members and are relevant to applying the undue burden analysis, as the D.C. Circuit majority acknowledged.  *See Garza v. Hargan*, No. 17-5236 (D.C. Cir. Oct. 24, 2017) (en banc order) at 3-5.  Because no putative class member is affected by the same combination of ORR policies and practices in the same way, Plaintiff's far-ranging, systemic inquiry cannot "resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart*, 564 U.S. at 350.  Plaintiff's abortion-based claims cannot be typical of putative class members who have no interest in those procedures or services.

Plaintiff's decision to draw her proposed class so broadly as to incur fatal commonality and typicality problems is strategic: if her putative class were limited to UCs in ORR custody currently seeking access to an abortion, she could not demonstrate numerosity under Federal Rule 23(a)(1).  Ms. Doe had an abortion on October 25, 2017.  In the wake of her abortion, there are no other UCs in ORR custody who are seeking access to abortion.  A case with (at most) one plaintiff is an individual action – and here, a moot one – not a class action under Federal Rule 23(a)(1).

Finally, Plaintiff has not met the requirements for a class action under Rule 23(b)(2) for the same  basic reason that she failed to establish commonality or typicality.   Rule 23(b)(2) requires that Defendants act in a manner which impacts all members of the putative class so that this Court can grant relief respecting the class as a whole.   Plaintiff has provided no basis in fact and no reason to believe that all pregnant UCs will elect to have an abortion, will choose not to voluntarily depart the United States, will not have an appropriate sponsor available, will satisfy state laws relating to abortion, will be at a point in the pregnancy where an abortion is permissible, will have completed any judicial bypass of parental notification and consent, will have access to funds to pay for the abortion, and *then* will be denied based on the alleged "policy" at issue in Plaintiff's case.

## BACKGROUND

This case arises from the efforts of Ms. Doe, a formerly pregnant minor alien in ORR custody, and a putative class of pregnant minor aliens in federal custody, to compel the government-official defendants to facilitate their potential decisions to obtain elective abortions. Defendants incorporate by reference the factual and procedural background, including cited supporting documents and evidence, included in Defendants' Memorandum of Law in Opposition to Plaintiff's Application for a Temporary Restraining Order and Motion for a Preliminary Injunction.  ECF No. 10 at 3-7.  As particularly relevant here, Ms. Doe is a 17-year-old alien minor who attempted to enter the country illegally, was apprehended, and is currently in the care and custody of the ORR in Texas. ECF No. 10 at 3.  While in the care and custody of ORR, Ms. Doe requested an elective abortion. *Id.*  She obtained a judicial bypass of Texas' parental notification and consent requirement from a Texas state court.  *Id.*  HHS policy requires that ORR approve all major surgical interventions for minors in its custody.  *Id.* at 4.  ORR,

acting in this custodial capacity, denied Ms. Doe's request to obtain an abortion and to be

transported from her shelter so that she could attend the abortion and associated appointments.

*Id.* at 5.

On October 13, 2017, Ms. Doe and her guardian filed this suit as a putative class action

on behalf of herself and "all other pregnant unaccompanied immigrant minors ['UCs'] in ORR

custody nationwide, including those who will become pregnant." [2]  ECF No. 1 ¶47.  Plaintiff also

filed a request for a temporary restraining order and preliminary injunction, releasing Ms. Doe to

obtain abortion counseling and an abortion if she so elected. ECF Nos. 3, 5.  On October 18,

2017, Plaintiff filed her Motion to Certify a Class, ECF No. 18, requesting the Court to certify a

class of "of all pregnant UCs who are or will be in the legal custody of the federal government."

*Id.* at 1.  Plaintiff asserts that there are "hundreds" of such alien minors in federal custody each

year.  *Id.* at 4.  Plaintiff maintains that "[i]n 2014, there were approximately 726 pregnant UCs in

ORR custody; in 2015, there were 450; and in 2016, 682."  *Id.*   However, a recent statistical

analysis reveals that, during fiscal year 2017 (running October 1, 2016, through September 30,

2017) ("FY2017"), ORR had 420 pregnant UACs referred to its custody.  Attachment,

Declaration of Jonathan White, Dated Nov. 20, 2017, ("White Nov. 20 Decl.") at ¶ 4.   Of those

---

[2] Notably, Plaintiff's Complaint filed with this Court suggests a class "of all other pregnant unaccompanied immigrant minors in ORR custody nationwide, including those who will become pregnant during the pendency of this lawsuit." ECF No. 1 ¶ 47.  However, in her motion, Plaintiff sets forth a putative class of "all pregnant unaccompanied immigrant minors ['UCs'] who are or will be in the legal custody of the federal government."  ECF No. 18 at 1-2. The court may wish to order Plaintiff to clarify which definition they wish to advance and/or file an amended complaint using the definition given in their class certification motion. *See, e.g.*, *Costelo v. Chertoff*, 258 F.R.D. 600, 604–05 (C. D. Cal. 2009) ("The Court is bound to class definitions provided in the complaint and, absent an amended complaint, will not consider certification beyond it.").  As is, the disparate definitions threaten to make the proposed class *not* "sufficiently definite that it is administratively feasible for the court to determine whether a particular individual is a member." *Bynum v. D.C.*, 214 F.R.D. 27, 31 (D.D.C. 2003).

420, only 18 requested abortion services. *Id.* at ¶ 5. In response to the 18 requests, 11 of the

UACs received abortion services; 5 rescinded their requests; and 2 were released to sponsors. *Id.*

On October 18, 2017, the Court granted Plaintiff's request for a Temporary Restraining

Order ("TRO") as to Ms. Doe. ECF No. 20. Defendants appealed and initially obtained a stay of

the TRO from a panel of the U.S. Court of Appeals for the D.C. Circuit. However, subsequently,

the D.C. Circuit, en banc, dissolved the stay, *Garza v. Hargan*, No. 17-5236 (D.C. Cir. Oct. 24,

2017) (recalling mandate), and sent the case back to this Court. Following and in compliance

with the Court's Order of October 24, 2017, ECF No. 29, Defendants released Ms. Doe to the

care of her guardian ad litem for transportation to an abortion provider. *See* Jackie Wang,

"Unauthorized immigrant minor 'Jane Doe' has abortion after back-and-forth court battle,"

Dallas Morning News, https://www.dallasnews.com/business/health-

care/2017/10/25/undocumented-teen-texas-abortion (last updated Oct. 25, 2017). On October

25, 2017, Ms. Doe underwent an abortion, terminating her pregnancy. *Id.*

On November 3, 2017, Defendants filed a petition for *certiorari*, asking that the Supreme

Court vacate the judgment of the court of appeals, with a remand to instruct this court to dismiss

all claims for prospective relief as moot. Defendants also suggested that the Supreme Court may

wish to issue an order to show cause as to why disciplinary action should not be taken against

Plaintiff's counsel for what appear to be material misrepresentations and omissions to

government counsel in the hours leading up to the abortion designed to thwart Supreme Court

review of the TRO.

## LEGAL STANDARD FOR CLASS CERTIFICATION

"The class action is 'an exception to the usual rule that litigation is conducted by and on

behalf of the individual named parties only.'" *Comcast Corp. v. Behrend*, 569 U.S. 27, 33

(2013) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)).  To fall within the exception, Plaintiff "must affirmatively demonstrate [her] compliance" with Rule 23 of the Federal Rules of Civil Procedure.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  A party seeking certification of a proposed class bears the burden of demonstrating that the required elements set forth in Rule 23(a) exist, including: (1) "that the class [be] so numerous that joinder of all members is impractical" ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the named plaintiffs are typical of claims or defenses of the class ("typicality"); and (4) the named plaintiffs will fairly and adequately protect the interests of the class ("adequacy of representation").  *See* Fed. R. Civ. P. 23(a).  In addition to meeting the requirements set forth in Rule 23(a), the proposed class must also qualify under Rule 23(b)(1), (2), or (3).  *See Hartman v. Duffey*, 19 F.3d 1459, 1468 (D.C. Cir. 1994); *Franklin v. Barry*, 909 F. Supp. 21, 30 (D.D.C. 1995); *see also Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).

The proponents of a class action have the burden of proof as to each of Rule 23's requirements.  *See McCarthy v. Kleindienst*, 741 F.2d 1406, 1414 n. 9 (D.C. Cir. 1984).  The Supreme Court has held that "actual, not presumed, conformance with Rule 23(a) [is] indispensable."  *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 160 (1982).  If a court is not fully satisfied, the class cannot be certified.  *Id.*  "While the trial court has broad discretion to certify a class, its discretion must be exercised within the framework of Rule 23."  *Zinser*, 253 F.3d at 1186.  When reviewing a motion for class certification, it "'may be necessary for the court to probe behind the pleadings before coming to rest on the certification question,' and that certification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'"  *See Gen. Tel. Co.*, 457 U.S. at 160 ("[A]ctual,

not presumed, conformance with Rule 23(a) remains . . . indispensable").  The failure by a

plaintiff to prove that each one of Rule 23(a)'s requirement is met, precludes certification.  *Wal-*

*Mart Stores, Inc.*, 564 U.S. at 349.

## ARGUMENT

**I.      Ms. Doe is not an adequate representative because her claim for prospective relief became moot when she obtained an abortion.** [3]

The adequacy requirement serves to protect the due process rights of absent class

members who will be bound by the judgment.  *In re Veneman*, 309 F.3d 789, 792 (D.C. Cir.

2002).  A determination of legal adequacy is based on two inquiries: (1) "the representative must

appear able to vigorously prosecute the interests of the class through qualified counsel," [4] and (2)

"the named representative must not have antagonistic or conflicting interests with the unnamed

members of the class."  *Twelve John Does v. District of Columbia*, 117 F.3d 571, 575, 326 U.S.

App. D.C. 17 (D.C. Cir. 1997) (*quoting National Association of Regional Medical Programs,*

---

[3] Because this opposition responds only to the Plaintiff's request for equitable relief, and because government officials may not be sued in an individual capacity for equitable relief relating to their performance of official duties, this brief is filed on behalf of the Defendants solely in their official, not individual, capacities.  *See, e.g., Auleta v. United States Dep't of Justice*, No. CV 11-2131 (RWR), 2015 WL 738040, at *4 (D.D.C. Feb. 20, 2015).

[4] Defendants do not concede that Plaintiff's counsel are qualified.  We note that Defendants' petition for *certiorari* requested that the Supreme Court "may wish to issue an order to show cause why disciplinary action should not be taken against respondent's counsel-either directly by this Court or through referral to the state bars to which counsel belong-for what appear to be material misrepresentations and omissions to government counsel designed to thwart this Court's review."  Cert. Petition at 26.  Those potential proceedings could complicate opposing counsel's role in representing a class in this action and are a further reason to deny Plaintiff's Motion.  Defendants reserve the right to revisit this issue depending on the outcome of those proceedings.

*Inc. v. Mathews*, 551 F.2d 340, 345 (D.C. Cir. 1976)).  Plaintiff is not an adequate representative

under Rule 23(a)(4) because she cannot satisfy the first inquiry.

Ms. Doe's request to serve as a class representative should be rejected because she cannot

vigorously prosecute the interests of the proposed class now that her interests are moot and she

no longer has any rights to vindicate before the court.  Consideration of mootness acts to ensure

that "vigorous advocacy can be expected to continue" throughout the litigation. *U.S. Parole*

*Comm'n v. Geraghty*, 445 U.S. 388, 492 (1980).  The Supreme Court has held that "[i]n the

absence of any claimant's opting in, [a putative class representative's] suit became moot when

her individual claim became moot, because she lacked any personal interest in representing

others in this action."  *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 73 (2016).

Here, Plaintiff's claim is that ORR's policy puts an obstacle in the path of

unaccompanied minors who seek an elective abortion.  Ms. Doe's claim on that score became

moot when she obtained an abortion on October 25, 2017.  *See* Jackie Wang, "Unauthorized

immigrant minor 'Jane Doe' has abortion after back-and-forth court battle," Dallas Morning

News, https://www.dallasnews.com/business/health-care/2017/10/25/undocumented-teen-texas-

abortion (last updated Oct. 25, 2017).  Thus, she cannot be a vigorous advocate for the class she

now seeks to represent.

This is not a case where the "challenged conduct and the claims raised are so inherently

transitory that the trial court will not have even enough time to rule on a motion for class

certification before the proposed representative's individual interest expires."  *Genesis*

*Healthcare Corp. v. Symczyk*, 569 U.S. at 76 (*quoting County of Riverside v. McLaughlin*, 500

U.S. 44, 52 (1991)).  That is especially true given the facts here, where Ms. Doe obtained an

abortion only twelve days after filing suit—just one week after moving for class certification—

and where the timing appears to have been based in part on a desire to avoid further judicial review.  Moreover, a substantial amount of time passed between when Ms. Doe learned of her pregnancy and when this suit was filed.  Specifically, she was informed in early September that she was pregnant; she obtained a judicial bypass by September 25, 2017; her request for transport or release was denied on September 28 or 29, 2017; however, the suit did not commence until October 13, 2017 – more than a month after she was told of her pregnancy, nearly three weeks after obtaining a judicial bypass, and two weeks after being denied transportation or release.  Indeed, it took her longer to go to court than to get a resolution from the court.  In a promptly filed suit by a pregnant minor, the government submits that the expeditious process already demonstrated by this Court would be able to address class certification before a claim for pre-abortion injunctive relief would become moot, even if a court believed preliminary relief were warranted.  Given the adequate time for class certification to be addressed, it would not be appropriate to certify a class action here under the reasoning of *Genesis Healthcare*.

While there is no set time before the "inherently transitory" doctrine can be invoked, by definition, it excludes a period in which the trial court could likely have ruled on certification had the claim not been mooted.  Given that the circumstances of each class member will vary broadly, in most cases, there will be ample time for the court to rule on a UC's motion for class certification early during a pregnancy.  In fact, Plaintiff claims that the potential number of UCs is "substantial" and alleges a "large" number of UCs but can point to not one, other than Ms. Doe, who seeks an abortion.  ECF No. 18 at 4.  There is no reason that Ms. Doe must serve as the class representative in this case rather than another pregnant minor in custody, unless she is in actuality only one of a handful who wants to have an abortion.  Indeed, given that as many as

26 states permit elective abortion until the 20th week, the 24th week, or third trimester of the pregnancy, *see* https://www.guttmacher.org/state-policy/explore/overview-abortion-laws, there is little reason to believe that the category is so inherently transitory that the exception must be invoked.  Thus, there is nothing to suggest that ORR's "policy" would be "effectively unreviewable, because no plaintiff possessed a personal stake in the suit long enough for litigation to run its course."  *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. at 76. Accordingly, this Court should decline to allow Ms. Doe to invoke the "inherently transitory" doctrine in order to serve as a representative for a class with whom she does not share an interest.

As Ms. Doe cannot vigorously prosecute the interests of the proposed class because her claim for prospective relief became moot when she obtained an abortion, she is not an adequate representative under Rule 23(a)(4), and this Court should deny Plaintiff's Motion for Class Certification on this ground alone.  *See* Fed. R. Civ. P. 23(a); *Hartman v. Duffey*, 19 F.3d at 1468.

## II.    There are no common questions of law or fact, or legal interests typical of all putative class members, and joinder is practical.

Despite Plaintiff's attempt to identify common questions of law and fact with regard to their proposed class, those questions cannot be answered on a class-wide basis.  Plaintiff does not establish commonality and typicality in the proposed class definitions, where the putative class is broadly drawn, bringing within its ambit differing factual circumstances and differing legal claims.  Fed. R. Civ. P. 23(a)(2), (3).  "Rule 23 does not set forth a mere pleading standard."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. at 350.   A common question of law and fact is a question "of such a nature that it is capable of class wide resolution -- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id*. at 350.  "Dissimilarities within the proposed class are what have

the potential to impede the generation of common answers." *Id.* (citation omitted).  "What matters to class certification is not the raising of common 'questions' - even in droves - but, rather the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation."  *Wal-Mart Stores, Inc.,* 564 U.S. at 350 (citation omitted).

The typicality requirement of Rule 23(a)(3) ensures that the interests of the named representative align with the interests of the class.  As long as the claims "resemble or exhibit the essential characteristics of those of the representatives," Rule 23(a)(3) will be satisfied.  *Kas v. Financial General Bankshares, Inc*., 105 F.R.D. 453, 461 (D.D.C. 1984).  The typicality requirement is not met, however, if the proposed class representatives are subject to unique defenses.  *Id.*  At bottom, the typicality requirement is used to ascertain "whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of the absent class members so as to assure that the absentees' interests will be fairly represented."  *In re Lorazepam & Clorazepate Antitrust Litig*., 202 F.R.D. 12, 27 (D.D.C. 2001) (citations omitted).

Rule 23(a)'s commonality and typicality requirements occasionally merge: "[b]oth serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  *Wal-Mart Stores, Inc.,* 564 U.S. at 2551 n.5 (quoting *Falcon*, 457 U.S. at 157-58, n. 13); *see also Little v. Washington Metro. Area Transit Auth*., No. CV 14-1289 (RMC), 2017 WL 1403122, at *17 (D.D.C. Apr. 18, 2017).

**A.    Plaintiff cannot establish commonality or typicality because her proposed class encompasses a broad range of minors with numerous differing factual and legal bases for individual claims and defenses**.

Plaintiff's class definition of "all pregnant UCs who are or will be in the legal custody of the federal government" and her allegation that Defendants must be prevented "from obstructing, hindering, blocking or otherwise interfering with unaccompanied immigrant minors' access to abortion" are not sufficient to establish commonality.  ECF No. 18 at 1.  Plaintiff cannot establish that Ms. Doe's allegations share a common question of fact or law with other proposed class members because the definition of the class fails to take into consideration the circumstances of each potential class member with regard to pregnancy-related issues as an individual well as issues relating to reunification and sponsorship that would impact the undue burden analysis.  In fact, this is Plaintiff's critical misstep before this Court -- that is, Plaintiff seeks to project the specific facts surrounding Ms. Doe onto all members of the proposed class of pregnant UCs in the custody of the federal government.  However, as further discussed *infra*, Ms. Doe's select set of facts are distinct, and so, too, are those of each class member, which serve to impede this Court's ability to address "common answers" and "drive the resolution of the litigation."  *Wal-Mart Stores, Inc.,* 564 U.S. at 350 (citation omitted).  Plaintiff attempts to clarify the proposed class in terms of "pregnancy-related care[,]" and "unconstitutional obstructions" thereto; but at bottom, her claim rests entirely on access to abortion.  *Id.*  In particular, the circumstances of each class member will vary broadly, including, but not limited to, whether they desire an abortion, whether such procedure would be elective or necessary to avoid serious harm to the mother, whether the minor can be reunified with a parent, and the role the parent should play in the timing of the abortion decision, the availability of and timing for sponsorship, what the particular legal requirements and restrictions on abortions are in the state

where the minor resides, and the circumstances surrounding the minor's pregnancy. There are

other conspicuous, significant flaws in the class definition. While the phrase uses the word

"immigrant," it makes no distinction regarding the child's status. For example, lawful

immigrants would not be in ORR custody. Further, it makes no distinction regarding how the

child came into federal custody, nor does it make any distinction as to the federal agency acting

as custodian. Each of those variations presents significant variations making this case

inappropriate for class action litigation.

Moreover, Ms. Doe's interests remain "antithetical to the interests of [other putative]

class members." *Mayfield v. Dalton*, 109 F.3d 1423, 1427 (9th Cir. 1997). In *Mayfield*,

members of the United States Marine Corps sought certification of a class which included all

members of the U.S. Armed Forces to contest the Department of Defense DNA collection policy.

*Id.* at 1423-24. The Ninth Circuit denied class certification on grounds of typicality because

there were "undoubtedly" people in the class who would not oppose the DNA collection policy

and who, in fact, sought to have the requirement enforced. *Id.* 1427. Here, as discussed *infra*,

there are "undoubtedly" UCs in the putative class who do not object to Defendants' "policy" and,

moreover, each class member's situation will be the result of issues specific to that applicant.

Indeed, Plaintiff's argument reinforces the diverse circumstances actually presented by the class

members. ECF No. 18 at 4. Specifically, in support of class certification, Plaintiff maintains

that there are "hundreds" of such alien minors in federal custody each year. *Id.* at 4. Plaintiff

asserts that "[i]n 2014, there were approximately 726 pregnant UCs in ORR custody; in 2015,

there were 450; and in 2016, 682." *Id.* But Plaintiff's assertion suffers from a fatal flaw because

it does not establish that there are any pregnant unaccompanied minors currently in ORR custody

who seek pregnancy termination, who will be immediately affected, in any way, by Defendants'

purported "policy," or were in custody for a period that made necessary addressing hard questions about the role of ORR, the state, the minor, the minor's parents, and potential sponsors for the minor.  In fact, a recent statistical analysis reveals that, during FY 2017 ORR had 420 pregnant UACs referred to its custody.  White Nov. 20 Decl. at ¶ 4.   Of those 420, only 18 requested abortion services, a significantly small number of proposed class members and in marked contrast to "hundreds" posited by Plaintiff.  *Id.* at ¶ 5.

Plaintiff relies heavily on the specific facts surrounding the circumstances of Ms. Doe and the "obstacles" encountered in her pursuit to terminate her pregnancy.  ECF No. 18 at 8 (setting forth facts specific to named J.D.).  However, as discussed above, there is nothing to suggest that proposed class members have faced, or will face, the same purported "obstacles," and whether a class member encounters such obstacles remains entirely dependent on the facts and particular details of the situation.  Here, Ms. Doe fled her country of nativity and citizenship and alleges that, following her apprehension, she learned she was pregnant and requested an elective abortion.  ECF No. 10 at 3.  She further claimed that she was "forced . . . to visit" a pregnancy center and view a "sonogram."  *Id.* at 3.  She did not seek return to her home country nor was a suitable sponsor located.  *Id.*  She sought, and was granted, a judicial bypass in Texas state court.  *Id.*  Notably, Plaintiff has offered no evidence of proposed class members, other than that of Ms. Doe, who sought pregnancy termination and were refused services or where ORR exercised its purported "veto power over . . . abortion."  ECF No. 18 at 6, 8.

Plaintiff's complaint incorrectly assumes that all proposed class members would object to informing potential sponsors and/or family members regarding the status of her pregnancy, the potential termination thereof, and would refuse counseling at pregnancy centers.  In reality, many minors would likely seek guidance from family when facing this difficult situation.

Additionally, Plaintiff's proposed class includes those who might seek voluntary departure or are provided a suitable sponsor in whose custody she could be released.  Office of Refugee Resettlement, *ORR Guide: Children Entering the United States Unaccompanied* § 2.2 (Sept. 8, 2017), *available at* http://www.acf.hhs.gov/orr/resource/childrenentering-the-united-states-unaccompanied (ORR makes an ongoing assessment to determine whether there is a suitable sponsor for all children in its care); 6 U.S.C. § 279(a), (b); 8 U.S.C. § 1232(c)(3)(A).  That is, whether Defendants' "policy" would be applicable is a fact-intensive inquiry taking into account the situation of each minor.  Specifically, a UC may elect not to seek an abortion, may choose to voluntarily depart the United States, may have a sponsor, including a parent, who is available for reunification, may be unable to satisfy state laws relating to abortion, may not have the funds for the procedure, or be at a point in the pregnancy where an abortion is impermissible.

For example, Judge Millett, for the en banc court, recognized that the ability to find a sponsor in a timely manner played an important role in determining whether there was a right to relief, along with numerous other fact-bound circumstances that potential class members will not share.  *See Garza v. Hargan*, No. 17-5236 (D.C. Cir. Oct. 24, 2017) (en banc order) at 3-5 ("centerpiece of the panel order" is the expeditious search for a sponsor and accepting that it is possible some "type[s] of short-term burden . . . could plausibly pass muster under Supreme Court precedent"); *see id.* (identifying five factual issues relating to promptly finding a sponsor that may be relevant to the right to court-ordered relief); *id*. at 1 (finding it relevant that case involved a "child who is alone in a foreign land"); *id*. (Doe "made a considered decision" to terminate the pregnancy); *id*. ("Texas court" approved her "capacity to make the decision . . . consistent with state law"); *id*. (minor must act "in compliance with state law requirements"); *id*. at 4 (relevant that sponsorship search lasted "almost seven weeks" but that "[n]one

materialized"); *id*. at 6 (accepting that "sponsorship . . . might be more optimal in the policy

sense" for a child to make the difficult decision regarding abortion); *id*. at 8 (voluntary departure

"not a constitutionally adequate choice either given both the life-threatening abuse that J.D.

claims a . . . and her potential claims of legal entitlement to remain in the United States"); *id*. at 9

(observing relevance to facilitation argument of whether the guardian ad litem will pay for the

abortion or transport the minor); *id*. at 9-10 (an "individualized 'best interests' judgment" may be

relevant to obligation of the government); *id*. at 10 (relevant to granting injunctive relief that

"J.D. is already into the second trimester of her pregnancy" and delay would "materially"

increase health risks); *id*. at 11 (relevant to granting injunctive relief that 'return to her country at

this time would expose her to . . .physical abuse"); *id.* at 11 ("increasing practical barriers to

obtaining an abortion in Texas" is relevant to need for relief including fact that Doe is "on the

cusp of having to travel hundreds of miles to obtain an abortion"); *id*. at 12 (showing of "severe

child abuse" in home country relevant to granting relief).  Thus, to suggest that class members

share "common issues" or that their claims or defenses are "typical" misses the mark.  ECF No.

18 at 7, 8; *see Dakalea v. Washington Humane Soc.*, 275 F.R.D. 346, 358 (D.D.C. 2011)

(commonality and typicality requirements of Rule 23(a) tend to merge "particularly" where class

is broad and class members have suffered "wide range of deprivations . . . and . . . distinct

injuries); *see also Baby Neal ex rel. Kanter v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994) ("The

typicality criterion is intended to preclude certification of those cases where the legal theories of

the named plaintiffs potentially conflict with those of the absentees by requiring that the common

claims are comparably central to the claims of the named plaintiffs as to the claims of the

absentees.").

To the extent that Plaintiff relies on this Court's decisions in *DL v. D.C.*, 302 F.R.D. 1 (D.D.C. 2013), *aff'd* 860 F.3d 713 (D.C. Cir. 2017), and *Thorpe v. District of Columbia*, 303 F.R.D. 120 (D.D.C. 2014), in support of class certification, her argument fails.  ECF No. 18 at 6-7.  Both *DL* and *Thorpe* stood for the proposition that when assessing the commonality requirement under Rule 23(a)(2), plaintiff must establish that "class members must have suffered the *same injury for the same reason*, such as a uniform policy or practice that is illegal."  *DL v. D.C.*, 302 F.R.D. at 12 (emphasis added); *see Thorpe,* 303 F.R.D. at 145-46 (commonality under Rule 23(a)(2) requires plaintiff to establish "uniform policy or practice that affects all class members").  Although Plaintiff here contends that proposed class members will "suffer the same injury as a result of Defendant's new policies[,]" in particular access to "pregnancy-related care[,]" she can point to no policy or practice that affects *all proposed class* members.  In contrast, as a result of the wide disparity of issues impacting each class member discussed above, the unique facts and circumstances of each case will be affected in different ways by any purported "policy."  As a result, any risk of "injury" widely varies among individual members of the proposed class.  *See DL*, 302 F.R.D. at 12.

### B. Ms. Doe cannot establish commonality or typicality because her interests do not align with the proposed class.

Further, Ms. Doe's interests do not align with other prospective class members. "Representatives must be part of the class and possess the same interest and suffer the same injury as the class members."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).  Ms. Doe seeks to represent a class of individuals who have wide and divergent interests, and thus, cannot establish commonality and typicality.

Ms. Doe seeks to serve as a representative for a class of pregnant minors, which would include minors who both do and do not want an abortion.  The interests of these groups do not

align.  Pregnant minors who have no desire for an abortion will have little interest in challenging

the purportedly "significant hurdles" erected by ORR in obtaining one.  ECF No. 18 at 3.

Without a percentage breakdown of which women do and do not want an abortion, this Court

risks certifying a class comprised primarily of pregnant minors who do not want an abortion, or

who are struggling with the difficult decision whether to have an abortion, represented by an

individual who had an abortion, and thus, whose interests do not align with those of the class.

Indeed, now that Doe has sought media attention and become an advocate for her position, *see*,

*e.g.*, Antonia Hylton, *Jane Doe Speaks*, HBO Vice News, October 25, 2017, at

https://news.vice.com/story/exclusive-jane-doe-talks-about-herabortion-battle-with-trumps-doj,

she may seek relief or requirements that are at odds with the wishes of other minors in ORR

custody, or may work to steer minors towards abortion services in a manner that undermines the

critical custodial role of ORR and various care providers.  This is of special concern given the

vulnerability of the children who are in ORR custody away from family and face this difficult

situation.

Notably, in *Amchem*, the Supreme Court found that "named parties with diverse medical

conditions" failed to adequately represent the interests of "a single giant class[.]"  *Amchem*

*Prods., Inc. v. Windsor*, 521 U.S. at 595.  "[T]he interests of those within the single class are not

aligned[,]" the Court added, where currently injured named plaintiffs sought immediate payment

while the class members sought a future payout.  *Id.*  Similarly, Ms. Doe cannot adequately

represent minors in states with different abortion laws, minors at different stages of pregnancy,

minors unable to obtain a judicial bypass or subject to differing state law processes for

addressing parental consent, minors without resources to obtain abortions, minors for whom

ORR is able to readily secure a sponsor or who might avoid sponsorship or parental reunification

due to the abortion issue, or where a minor's pregnancy is beyond the pre-viability stage.  This "disparity" between Ms. Doe and members of the putative class indicate that their claims are simply "not aligned."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. at 595.

This is particularly true here, where Ms. Doe has brought a cause of action against Defendants in their personal capacities under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), seeking monetary damages.  Indeed, in light of the fact that she has successfully obtained an abortion, her only continuing interest in the case is the recovery of those monetary damages, which presents interests that may conflict with the interests of the class.  In *Ziglar v. Abbasi*, the Supreme Court observed that "a *Bivens* action is not a proper vehicle for altering an entity's policy[,]" and is "brought against the individual officer for his or her own acts, not the acts of others."  137 S. Ct. 1843, 1860 (2017) (internal quotations omitted).  But this rule is in tension with Ms. Doe's core class claims here, which seek to establish a so-called ORR "policy," as well as commonality and typicality among the class.  Because her only interest now would be in pursuing her monetary claims, which diverge from the class interests in prospective relief, she is an inappropriate class representative given the divergent and contrary interests.  *Amchem Prods.*, 521 U.S. at 595.

Because there is no common issue, the resolution of which will satisfy the claims of all proposed class members, Plaintiff cannot satisfy Rule 23(a) commonality and typicality requirements.  "[C]ommonality is established by a common issue the resolution of which will advance the litigation, but is lacking where the case will turn on a series of individualized inquiries."  *Disability Rights Council of Greater Washington v. WMATA,* 239 F.R.D. 9 (D.D.C. 2006) (quoting *Love v. Johanns,* 439 F.3d 723, 730 (D.C. Cir. 2006) (internal quotations and citations omitted); *Wal-Mart Stores, Inc.,* 564 U.S. at 2551 (Rule 23(a)'s commonality and

typicality requirements occasionally merge). Therefore, this Court should deny certification of the class.

### C.  Plaintiff cannot establish numerosity because there is either one proposed class member, or the class size is exceedingly small.

Rule 23(a)(1) provides that a class action may be maintained only if "the class is so numerous that joinder of all members is impracticable." *Bynum*, 214 F.R.D. at 33. "The numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co. of the Northwest, Inc. v. EEOC*, 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980); *see also Civic Ass'n of Deaf of New York City v. Giuliani*, 915 F. Supp. 622, 632 (S.D.N.Y.1996) (explaining that a "precise quantification of the class members is not necessary because the court may make 'common sense assumptions' to support a finding of numerosity") (citation omitted). As this Court recognized, "[g]enerally speaking, . . . a proposed class consisting of at least forty members will satisfy the impracticability requirement." *Bynum*, 214 F.R.D. at 32. "The general rule is that a plaintiff need not provide the exact number of potential class members in order to satisfy this requirement." *Id.* at 33; *see, e.g., Kifafi v. Hilton Hotels Retirement Plan*, 189 F.R.D. 174, 176 (D.D.C. 1999) ("So long as there is a reasonable basis for the estimate provided, the numerosity requirement can be satisfied without precise numbers."); *Pigford v. Glickman*, 182 F.R.D. 341, 347 (D.D.C. 1998) ("Mere conjecture, without more, is insufficient to establish numerosity, but plaintiffs do not have to provide an exact number of putative class members in order to satisfy the numerosity requirement."). *Vargas v. Meese*, 119 F.R.D. 291, 293 (D.D.C. 1987).

Plaintiff contends that while the precise number of its proposed class is "unknowable, general knowledge and common sense indicate that it is large." ECF No. 18 at 4. Again, Plaintiff relies almost exclusively that "[i]n 2014, there were approximately 726 pregnant UCs in

ORR custody; in 2015, there were 450; and in 2016, 682." ECF No. 18.  However, she has

offered nothing demonstrating that UCs in custody seek pregnancy termination or have been

impacted, in any way, by Defendants' purported "policy."  For the reasons set forth above, Ms.

Doe remains the only identifiable class member "injured" by the purported "policy" of

Defendants.  ECF No. 18 at 4.  So she cannot possibly satisfy numerosity.

   It is true that Plaintiff need not "provide an exact number" of proposed class members.

But "conjecture, without more, is insufficient to establish numerosity."  *Pigford v. Glickman*, 182

F.R.D. 341, 346 (D.D.C. 1998).  She cannot assume that "all pregnant UCs who are or will be in

legal custody of the federal government" will seek an elective abortion; not be released to a

sponsor, be reunited with a parent, voluntarily depart, or be removed pursuant to expedited

process; be in a State where the abortion laws accommodate the minor; be at a point in the

pregnancy where an elective abortion is permissible; have completed judicial bypass of parental

notification and consent and obtained bypass; have funds to pay for the abortion; and be denied

on the grounds asserted in Ms. Doe's case.  The current, identified number of such individuals is

one:  Ms. Doe, whose claim is now moot.  Ms. Doe is a very rare case.

   Also, Plaintiff contends incorrectly that "[i]n 2014, there were approximately 726

pregnant UCs in ORR custody; in 2015, there were 450; and in 2016, 682."  ECF 18 at 4.   In FY

2017 ORR had 420 pregnant UACs referred to its custody.  White Nov. 20 Decl. at ¶ 4.   Only 18

of the 420 requested abortion services.  *Id.* at ¶ 5.  In response to the 18 requests, 11 of the UACs

received abortion services; 5 rescinded their requests; and 2 were released to sponsors.  *Id.*  With

those numbers, joinder is practical and Plaintiff cannot establish numerosity.  *Cox v. Am. Cast*

*Iron Pipe Co.,* 784 F.2d 1546, 1553 (11th Cir.), *cert. denied*, 479 U.S. 883 (1986) (explaining

that "while there is no fixed numerosity rule, generally less than twenty-one is inadequate, more

than forty adequate, with numbers between varying according to other factors") (internal

punctuation omitted).

### III.   Plaintiff cannot satisfy Rule 23(b)(2) because Defendants' "policies" do not apply to the putative class as a whole, making class-wide relief improper.

Plaintiff asks the Court to certify a class under Rule 23(b)(2).  ECF No. 18 at 10.  To

prevail, plaintiffs must demonstrate that the defendant "has acted or refused to act on grounds

that apply generally to the class, so that final injunctive relief or corresponding declaratory relief

is appropriate respecting the class as a whole." *Wal-Mart Stores, Inc*., 564 U.S. at 360 (quoting

Fed. R. Civ. P. 23(b)(2)).  This standard imposes two separate requirements: "(1) that

defendant's actions or refusal to act are 'generally applicable to the class' and (2) that plaintiffs

seek final injunctive relief or corresponding declaratory relief on behalf of the class." *Bynum*,

214 F.R.D. at 37.  Plaintiff fails both prongs.

First, Plaintiff cannot demonstrate that Defendants' actions are "generally applicable to

the class." *Id.*  "The key to the [Rule 23](b)(2) class is the indivisible nature of the injunctive or

declaratory remedy warranted the notion that the conduct is such that it can be enjoined or

declared unlawful only as to all of the class members or as to none of them." *Wal-Mart Stores*,

564 U.S. at 360.  As explained above, the circumstances of all class members will vary broadly,

and any agency action will depend on considerations such as whether a UC elects to seek an

abortion; whether the UC chooses to voluntarily depart the United States; whether the UC is at a

point in the pregnancy where an abortion is lawful; whether the procedures poses a substantial

risk to the health of the UC; whether the UC has adequate funds for the procedure; whether the

UC has the means of getting to a treatment facility; and whether a treatment facility is located

within reasonable proximity to the ORR shelter.  A UC could be denied on any of those grounds

which are not presented in Ms. Doe's case, never implicating any so-called policy regarding the

facilitation of abortion.  Ultimately, only when a mother has found herself in Ms. Doe's very

narrow circumstances would the ORR policy specifically raised by Ms. Doe present a potential

injury to a class member.  Accordingly, the reasoning and result of Defendants' application of

ORR's policy may vary dramatically from class member to class member and is not likely to be

"based on grounds which have general application to the class."  Fed. R. Civ. P. 23(b)(2)

Advisory Comm. Note (1966).

Importantly, the particular injunctive relief called for in each minor's situation—

assuming *arguendo* this Court determines that there is a violation of a right to obtain an

abortion—will vary from person to person.  "Rule 23(b)(2) applies only when a single injunction

or declaratory judgment would provide relief to each member of the class.  It does not authorize

class certification when each individual class member would be entitled to a different injunction

or declaratory judgment against the defendant."  *Wal-Mart Stores*, 564 U.S. at 360 (emphasis in

original).  Here, each class member may require an individualized injunction as the specific

abortion procedures vary from State to State, as do the individuals' circumstances with respect to

custody, care, sponsorship, removal, reunification, and timing:  Has she a consenting parent or

sponsor whom she could be released to in time to receive the necessary services? Will she

require greater facilitation or transport?  Must Defendants be ordered to make her available for

State required pre-abortion counseling services first?  Minors in different circumstances would

likely require injunctions specifically tailored to the particular custodial actions the Court

determines Defendants would have to take to arrive at the abortion result.

Finally, to satisfy Rule 23(b)(2), Plaintiff must at least show that Defendants "'ha[ve]

acted in a consistent manner toward members of the class so that [their] actions may be viewed

as part of a pattern of activity.'"  *Bynum*, 214 F.R.D. at 37 (quoting 7A Charles Alan Wright,

Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1775 (2d ed.1986)).

However, Plaintiffs do not allege any other case in which Defendants have refused to release a

minor in ORR care to obtain an abortion.  Plaintiff only asserts that Defendants' "policy" of

doing so would apply equally to members of the class. ECF No. 18 at 11. However, there is no

such policy.  The only relevant "policy" is the HHS policy requiring ORR approval for all major

surgical procedures.  ECF No. 10-1 ¶¶ 6, 8-12.  This policy, which addresses all major surgical

procedures generally (and not abortions specifically), will necessarily require a different analysis

in different minors' circumstances, with the most salient example being where the abortion is

elective versus recommended to prevent a risk of death or serious injury to the mother.  *See* 6

U.S.C. 279(b)(1)(B) (noting HHS's duties in caring for the well-being of alien minors); ECF No.

No. 10-1 ¶¶ 6, 8-12.  These considerations will include, *inter alia*, issues of the minor's age, the

minor's health, the temporal status of the pregnancy, the availability of a sponsor/guardian,

whether the minor has parental consent or has obtained a judicial bypass, and the availability of

funds for the procedure.  Again, these factual considerations complicate the picture, and Plaintiff

has not shown that the Defendants act in the same way toward all class members.  Accordingly,

Plaintiff's claim fails to pass muster under Rule 23(b)(2).

　　Plaintiff tries to fix this problem by arguing that judicial economy favors class

certification. ECF No. 18 at 12.  But Plaintiff is wrong: any class action would likely degenerate

into individual evidentiary hearings and litigation over particularized relief orders given the

differences in the individual potential class members' circumstances, the particular rules

regarding abortion of the State where they are housed, the many nuanced issues relating to the

custodial role of ORR, and the likely need to fashion individual relief to address these variations.

Judicial economy accordingly favors individual and not class-wide litigation. *See, e.g., Nelson v.*

*U.S. Steel Corp.*, 709 F.2d 675, 679 (11th Cir. 1983) (rejecting that judicial economy weighed in favor in class certification where claims were insufficiently overlapping such that mass action had the chance of "degenerating into a series of mini-trials").

Plaintiff also asserts that class-wide relief is "necessary to avoid mootness and facilitate enforcement of judgments" given the temporally limited nature of pregnancy.  ECF No. 18 at 12.  Yet that assertion cannot be reconciled with federal practice.  A court may enter a TRO very promptly, and may then expedite a hearing on a preliminary injunction.  *See* Fed. R. Civ. P. 65(b).  The denial of preliminary injunctive relief is immediately appealable under 28 U.S.C. § 1292(a)(1).  The right to immediate appeal encompasses a TRO that would "'effectively foreclose' [the litigant] 'from pursuing further interlocutory relief in the form of a preliminary injunction . . . .'"  *Belbacha v. Bush*, 520 F.3d 452, 455 (D.C. Cir. 2008) (quoting *Levesque v. Maine*, 587 F.2d 78, 80 (1st Cir. 1978)).  Thus, even pregnant litigants denied a TRO very late in their terms would have access to immediate injunctive relief and appeal rights in individual litigation.  *See id.*  This litigation bears that point out:  the Court entered preliminary relief in Ms. Doe's favor, with a final, affirmed order going into effect within 11 days of filing the complaint and TRO request, well before the end of the period in which a minor normally could legally obtain an elective abortion.

## CONCLUSION

This Court should deny Plaintiff's Motion for Class Certification because Plaintiff has not satisfied Rule 23(a).  Ms. Doe is not an adequate representative because she had an abortion and her interests conflict with the overwhelming majority of putative class members who have no interest in abortions.  There are no common questions of law or fact, nor are there any legal interests typical of all putative class members.  Plaintiff also cannot establish numerosity.

Even if Plaintiff can satisfy Rule 23(a), the proposed class does not satisfy Rule 23(b)(2) because Defendants' "policies" are not generally applicable to the class, and awarding any final injunctive or declaratory relief to the class as a whole would be inappropriate.

Respectfully submitted,

CHAD A. READLER
Principal Deputy Assistant Attorney General
Civil Division

August E. Flentje
Special Counsel
Civil Division

ERNESTO H. MOLINA
Deputy Director
Office of Immigration Litigation

PAPU SANDHU
Assistant Director
Office of Immigration Litigation

BY: /s/ Sabatino F. Leo
SABATINO F. LEO
W. DANIEL SHIEH
JOSEPH DARROW
Trial Attorneys
Office of Immigration Litigation
Civil Division, U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, D.C.  20044
Phone: (202) 514-8599
Fax: (202) 616-4975
sabatino.f.leo@usdoj.gov
daniel.shieh@usdoj.gov
joseph.a.darrow@usdoj.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ROCHELLE GARZA, as guardian ad Litem to unaccompanied minor J.D., on behalf of J.D. and others similarly situated, | ) ) ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 17-cv-02122 (TSC) |
| v. | ) ) | |
| ERIC D. HARGAN, *et al.*, | ) ) | |
| Defendants. | ) ) | |

**PROPOSED ORDER FOR CONSIDERATION OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

THIS CAUSE comes before the Court upon Plaintiff's Motion for Class Certification (ECF No. 18).

UPON CONSIDERATION of the Motion, the Court hereby ORDERS:

For the reasons set forth in Defendants' Opposition, Plaintiff's Motion for Class Certification is hereby DENIED;

It is SO ORDERED.

Signed this __day of _____, 2017

_____
TANYA S. CHUTKAN
United States District Judge