**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ROCHELLE GARZA, as guardian ad litem to unaccompanied minor J.D., on behalf of herself and others similarly situated, *et al.*, | ) ) ) ) |
| Plaintiffs, | ) |
| v. | )  No. 17-cv-02122-TSC ) |
| ERIC D. HARGAN, *et al.*, | ) ) |
| Defendants. | ) |

**PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITIONS
TO MOTION FOR A TEMPORARY RESTRAINING ORDER**

In their Opposition to Plaintiffs' Motion for a Temporary Restraining Order, Defendants do not take serious issue with the fact that barring unaccompanied immigrant minors from obtaining abortions violates the Constitution. Instead, they argue that there are reasons unique to Ms. Roe's and Ms. Poe's situations that allow the government to continue to prevent each of these young women from getting an abortion. None of these arguments has any merit.

First, Defendants argue that preventing Ms. Roe from obtaining an abortion is not an undue burden because ORR may, at some point, approve a sponsor for her. This argument fails on multiple levels. As an initial matter, every day that a woman is forced to remain pregnant against her will inflicts physical, psychological, and constitutional harm upon her. Here, even according to Defendants, the government would be forcing her to remain pregnant for at least two additional weeks. The government made precisely the same argument with respect to Jane Doe, *see* Appellants' Resp. to Appellee's Pet. for Reh'g *En Banc* 1, *Garza v. Hargan*, No. 17-5236, Doc. No. 1700788, Oct. 23, 2017 (arguing to *en banc* Court that stay of 11 days to reunite Ms. Doe with a sponsor was appropriate), and yet the *en banc* Court denied the stay, *Garza v.*

*Hargan*, 874 F.3d 735, 736 (D.C. Cir. 2017).  Finally, as developments regarding Jane Doe have

shown, Defendants' predictions on this score are notably unreliable.  Although the government

asserted on October 23 that it believed that Jane Doe could be reunified with a sponsor by

October 31, *see* Declaration of Jonathan White ¶ 16 (ECF No. 40), it is now December 18 and

Ms. Doe continues to reside in the shelter.  And, as even Defendants' evidence makes plain, the

two-week estimate that Defendants discuss in their brief is a rosy, best-case scenario.  In fact,

what their own declaration reveals is that "additional documents, fingerprint results, and a home

study are required," before a sponsor can be approved.  White Decl. ¶ 4 (ECF No. 66-1).  And it

is only "*if* the potential sponsor promptly gets us the additional documents [the government]

need[s], and *if* the background check and home visits return favorable results, [the government]

*estimate[s]* the process of reunification would be completed within two weeks." *Id.* (emphases

added).[1]  Notably, all of those contingencies are entirely outside Ms. Roe's control.  For all of

these reasons, Defendants' reprise of their argument that they should be allowed to force a young

woman to remain pregnant unless and until ORR approves a sponsor should again be rejected.

Second, Defendants make a somewhat convoluted argument that because Ms. Roe and

Ms. Poe live in states that do not require a judge to determine whether they are mature enough to

make the abortion decision, ORR somehow has the right to outright block them from having an

---

[1] Indeed, as Plaintiffs explained in their Petition for Rehearing *En Banc*, it is wishful thinking to suggest that the government will be able to sufficiently vet and approve a sponsor in such a short time frame. Pls.' Pet. for Reh'g En Banc 8-9, *Garza v. Hargan*, No. 17-5236, Doc. No. 1700730 (D.C. Cir. Oct. 22, 2017).  Indeed, as described in the Declaration of former Director of ORR Robert Carey that Plaintiffs submitted in support of their Petition, the process of vetting and approving a sponsor is necessarily extensive and takes significant time, at minimum several weeks or months, not days. *See* Carey Decl. ¶ 28 (ECF No. 23-1).

abortion.  Defs.' Opp. to Pls.' Mot. for TRO ("Defs.' Br.") at 8-9 (ECF No. 66).  But the states in

which the Plaintiffs live have determined as a matter of their public policy that neither parental

consent nor a judicial bypass is required before a minor can have an abortion.  Rather, minors in

those states are legally entitled to consent on their own for an abortion, if, as is true for all

women, the health care professional determines that they are capable of providing informed

consent to the procedure.  ORR cannot rely on its interest in "protecting the interests of the

child," Defs.' Br. at 8, to give it *greater* rights to interfere with a minor's abortion decision than

the minor's own *parents* in the same state would have.  Such an assertion turns notions of

federalism on their head, giving the federal government more control over minors' healthcare

decisions in states that have chosen to place fewer restrictions on those decisions.  Moreover, any

requirement of parental (or ORR) consent in the absence of an effective, expeditious, and

confidential bypass mechanism would be unconstitutional.  *See Bellotti v. Baird*, 443 U.S. 622,

644 (1979).

Third, Defendants make somewhat contradictory arguments about the significance of the

viability line.  On the one hand, Defendants argue that they can delay Ms. Roe's abortion while

they search for a sponsor because she "has several weeks remaining pre-viability in which an

abortion would be legally permissible."  Defs.' Br. at 2.  At the same time, Defendants have not

granted the shelter permission to transport Ms. Poe for an abortion because "she is now

approaching the point of viability, if she is not already there."  Defs.' Br. at 7.  In any event, the

fact that a woman may be approaching a point at which abortion is no longer legal does not

entitle the government to prevent her from being seen by a physician who can accurately date the

pregnancy and, if legal, provide the abortion.  Quite the contrary: That Ms. Poe may be

approaching that line is exactly why the TRO must be granted immediately, and why the government's request for a stay of any length must be denied.

Fourth, Plaintiffs are once again not requesting that the government provide funds for Ms. Roe's and Ms. Poe's abortions—as Plaintiffs stated in their Memorandum in Support of their Application for a TRO, "[p]rivate funds will be used to pay for both Ms. Roe's and Ms. Poe's procedures." Mem. in Supp. of TRO 7 (ECF No. 63-1).

Finally, Defendants have filed a brief in their personal capacities making a legal argument that they have deliberately not made in their official capacities. But they cannot properly oppose the pending motion for a temporary restraining order in their personal capacities, because the only relief sought by that motion is injunctive, and therefore would run against them only in their official capacities—*i.e.,* against the government.

There are many important differences between official-capacity and personal-capacity claims. Federal defendants cannot be sued for injunctive relief in their personal capacity, because in that capacity they have no power to take official governmental action or to give orders to government employees. Defendants concede as much. *See* Defs' Br. at 1 n.1 ("government officials may not be sued in an individual capacity for equitable relief relating to their performance of official duties"), citing *Auleta v. United States Dep't of Justice*, No. 11-cv- 2131 (RWR), 2015 WL 738040, at *4 (D.D.C. Feb. 20, 2015)); *accord Davidson v. United States Dep't of State*, 113 F. Supp. 3d 183, 194 (D.D.C. 2015) (Contreras, J.) ("It is well established that there is no basis for suing a government official for declaratory and injunctive relief in his or her individual or personal capacity.") (internal quotation marks and citation omitted). Injunctive relief can run against them only in their official capacities. *See, e.g., Hatfill v. Gonzales*, 519 F. Supp. 2d 13, 26 (D.D.C. 2007) (Walton, J.) ("[T]he relief Dr. Hatfill seeks can only be provided

by the government through government employees acting in their official capacities because deprivation of a constitutional right can only be remedied by the government."). By contrast, Defendants cannot be sued for damages in their official capacities because sovereign immunity bars such relief, *see Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388 (1971), but they can be (as they have been) sued for damages in their personal capacities, *see id*. In short, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, (1989) (citation omitted).

It is precisely for reasons like these that the Defendants here are represented in their personal capacities by separate, private counsel. They are entitled to defend themselves, through their private counsel, against the claims made against them in their personal capacities. But they are not entitled to defend themselves through their *private* counsel against the claims made against them in their *official* capacities because their private counsel simply does not represent them with respect to such claims and such relief. Rather, the United States Department of Justice represents them on those claims, and a party cannot be represented in a single case by multiple counsel taking inconsistent positions on the same claims. (Imagine a criminal defendant pleading guilty and not guilty as to the same charge through separate counsel.)

The brief filed by the Defendants in their personal capacities should accordingly be disregarded.

Date: December 18, 2017                    Respectfully submitted,

                                          Arthur B. Spitzer (D.C. Bar No. 235960)
                                          Scott Michelman (D.C. Bar No. 1006945)
                                          American Civil Liberties Union Foundation
                                          of the District of Columbia

4301 Connecticut Avenue NW, Suite 434
Washington, D.C. 20008
Tel. 202-457-0800
Fax 202-457-0805
*aspitzer@acludc.org*
*smichelman@acludc.org*

*/s/ Brigitte Amiri*
Brigitte Amiri (admitted *pro hac vice*)
Meagan Burrows
Jennifer Dalven
Lindsey Kaley
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Tel. (212) 549-2633
Fax (212) 549-2652
*bamiri@aclu.org*
*mburrows@aclu.org*
*jdalven@aclu.org*
*lkaley@aclu.org*

Daniel Mach (D.C. Bar No. 461652)
American Civil Liberties Union Foundation
915 15th Street NW
Washington, DC 20005
Telephone: (202) 675-2330
*dmach@aclu.org*

Mishan R. Wroe
American Civil Liberties Union Foundation of
Northern California, Inc.
39 Drumm Street
San Francisco, CA 94111
Tel. (415) 621-2493
Fax (415) 255-8437
*mwroe@aclunc.org*

Melissa Goodman
American Civil Liberties Union Foundation of
Southern California
1313 West 8th Street
Los Angeles, California 90017
Tel. (213) 977-9500
Fax (213) 977-5299
*mgoodman@aclusocal.org*

*Attorneys for Plaintiffs*