## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ROCHELLE GARZA, as guardian ad litem to unaccompanied minor J.D., on behalf of herself and others similarly situated; JANE ROE and JANE MOE on behalf of themselves and others similarly situated; and JANE POE; | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. 17-cv-02122-TSC |
| v. | ) ) | |
| ERIC D. HARGAN, *et al.,* | ) ) | |
| Defendants. | ) ) ) ) | |
| _____ | ) | |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER

## <u>INTRODUCTION</u>

This Court should decline Plaintiff Jane Moe's request for an order directing the government to affirmatively facilitate her in obtaining an elective abortion.

First, the government respectfully but firmly disagrees with the *en banc* decision of the D.C. Circuit that the government imposes an undue burden on the ability to obtain an abortion when it declines to facilitate access to abortion services, because a minor alien in HHS custody has the option of seeking sponsorship or voluntary departure from the United States to her country of nationality. The government does not burden an alien's ability to obtain an abortion in any way when it declines to facilitate elective abortion services for an illegal alien who has been captured while crossing the border in violation of U.S. law. While we understand this Court is bound by the *en banc* ruling, we preserve the issue here for purposes of further review.

Second, Ms. Moe has not demonstrated a likelihood of success on her claims for injunctive relief even under the erroneous *Garza* ruling.  She contends that as in the case of the other named Plaintiffs, the government "continue[s] to violate binding Supreme Court precedent here by . . . exercising their veto power over Ms. Moe's constitutionally protected abortion decision by denying her the ability to access abortion."  ECF No. 105-1 at 5 (Plaintiffs' Memorandum in Support of Application for TRO ("Plaintiffs' Memorandum")).  But the *en banc* D.C. Circuit never held that declining to facilitate an abortion for *any* period during which the Department of Health and Human Services ("HHS") can seek sponsorship is *per se* unconstitutional.  As Judge Millett wrote for the *en banc* court, the issue in Ms. Doe's case was whether the 7-week delay there was "the type of short-term burden that could plausibly pass muster under Supreme Court precedent to bar an abortion."  *Garza v. Hargan*, 874 F.3d 735, 739 (D.C. Cir. October 24, 2017) (*en banc*).  The implication is that a short delay in certain circumstances would *not* impose such a burden.  This is such a case: the 7 weeks at issue in Ms. Doe's case stand in stark contrast with the short 2-week delay experienced in Ms. Moe's case, particularly where Ms. Moe's sponsorship process and reunification are almost complete, as the attached declaration of Jonathan White explains.

Moreover, unlike in Ms. Doe's case—where the plaintiff obtained a judicial bypass from a Texas state court—there has been no judicial determination that Ms. Moe is sufficiently mature to make her abortion decision.  And unlike Ms. Doe, Ms. Moe does not have a guardian ad litem to assure the Court that her interests are being pursued in this litigation.  The facts presented here therefore are distinguishable and do not similarly establish a likelihood of success on the merits.

Third, Ms. Moe cannot establish irreparable injury.  Ms. Moe's sponsorship process is near completion, as a potential sponsor has been identified, all the required documentation has been submitted, and all that remains is fingerprinting and a favorable background check.  *See*

Attachment A at ¶ 4 (Declaration of Jonathan White ("White Decl.")).  Fingerprinting is scheduled for today, and ORR estimates that if the "sponsor attends the scheduled fingerprint appointment, and if the background checks return favorable results, the process of reunification would be completed *within one week of the fingerprinting*."  *Id.*  Said differently, ORR estimates that Ms. Moe will likely be placed with a sponsor by January 19, 2017, one week from today.

Further, Ms. Moe has provided no evidence that action must be taken in less than one week so as to establish irreparable harm.  Her declaration only states that she requested an abortion 2 weeks ago.  ECF No. 105-2 (Declaration of Jane Moe ("Jane Moe Decl.")).  Her attorneys represent that she "is already in her second trimester," Plaintiffs' Memorandum at 3, but they give no indication of where she is in her second trimester, and Ms. Moe's declaration sheds no light on the matter.  ORR records, however, indicate that Ms. Moe is approximately 17 weeks into her pregnancy, White Decl. ¶ 6, meaning that there is sufficient time for ORR to finalize its sponsorship consideration.  It is therefore unnecessary for her to obtain emergency judicial relief this week that would require ORR to facilitate the abortion that she seeks.  Given these facts, coupled with Ms. Moe's ability to seek voluntary departure or a qualified sponsor, the government is not forcing her to carry her pregnancy to term against her will.  Rather, granting immediate relief would disrupt the status quo and would irreversibly harm the government's interest in not facilitating abortion without an opportunity for a full adjudication on the merits.

Finally, the balance of hardships and public interest weigh strongly against the relief that Ms. Moe has requested.  The government has strong and constitutionally legitimate interests in promoting its interest in protecting fetal life, in declining to facilitate abortion, and in not providing incentives for pregnant minors to illegally cross the border to obtain elective abortions while in

federal custody.  Those interests would be irreparably undercut if Ms. Moe were granted the relief she seeks.

However this Court rules on the motion, it should do so in a way that preserves the right— of both sides—to seek appellate review.  In particular, given the magnitude of the interests in play—including the irreversible nature of abortion—any ruling by this Court on the motion should be stayed pending appeal.  Because Ms. Moe is very likely to have a sponsor in the next week, the Court should grant a stay of 10 days (to January 22, 2018).  At a minimum, the Court should grant a stay for 1 full business day, to allow the government an opportunity to seek emergency relief from the D.C. Circuit and the Supreme Court.  In response to the Court's minute order, we advise that the Office of Refugee Resettlement ("ORR") has not issued a decision document regarding Ms. Moe's abortion request at this time.

## BACKGROUND

Ms. Moe is a 17-year-old unaccompanied minor who arrived in the custody of ORR on December 22, 2017, White Decl. ¶ 4, and who alleges that she requested an abortion approximately 2 weeks ago.  Jane Moe Decl. ¶ 6.  Ms. Moe does not provide a precise gestational period in her declaration.  Her attorneys only note in the TRO motion that Ms. Moe is "already in her second trimester of pregnancy."  Plaintiffs' Memorandum at 3.  ORR records indicate that Ms. Moe is approximately 17 weeks into her pregnancy, leaving her several weeks pre-viability in which an abortion is legally permissible.  White Decl. ¶ 6.  Ms. Moe's "pregnancy was the result of a consensual relationship with her boyfriend, who is 17 years of age[,]" and ORR is "aware of no medical records for J.M. that show a medical indication for her to have an abortion."  White Decl. ¶¶ 7-8.

Shortly upon her arrival into ORR custody, Ms. Moe "identified a potential sponsor," and "[t]he prospects for possibly placing her with that sponsor are favorable." White Decl. ¶ 5. Ms. Moe's "sponsor has completed all required documentation except submission of fingerprints[,]" which "has been scheduled…on January 12, 2018." *Id.* A home study is not required "for this prospective sponsor[,]" and if the sponsor is fingerprinted and "the background checks return favorable results," then "the process of reunification would be completed within one week of the fingerprinting." *Id.*

## ARGUMENT

The Court should deny Ms. Moe's request for a TRO. To obtain a TRO, Ms. Moe must establish that: (1) she is "likely to succeed on the merits"; (2) she is "likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in [her] favor"; and (4) "an injunction is in the public interest." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008); *In re Navy Chaplaincy*, 697 F.3d 1171 (D.C. Cir. 2012). Ms. Moe cannot satisfy any of those requirements, and thus, her request for a TRO should be denied.

**I.    Ms. Moe's Request for a TRO Should be Denied Because She Cannot Show a Likelihood of Success on the Merits.**

Ms. Moe's request for relief fails at the first step because she is unlikely to succeed on the merits of her claims.

**A. Ms. Moe Has Failed to Demonstrate a Likelihood of Success on the Merits of Her Fifth Amendment Undue-Burden Claim.**

Under the framework of *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833 (1992), the government may pursue its interest in protecting life before fetal viability, provided it does not do so in a manner that imposes an undue burden on the mother. After viability, the government may regulate or even proscribe abortion. *Id*. at 879. The government does not

violate the rights outlined in *Casey* by declining to facilitate an abortion in circumstances like those Ms. Moe presents.   Importantly, Ms. Moe's claim that ORR's policies violate the Fifth Amendment—and instead that the Constitution in every factual circumstance requires the government to facilitate an elective abortion for all unaccompanied minors that enter the United States—is incorrect.   First, under the D.C. Circuit's *en banc* decision in *Garza*, Ms. Moe's case is distinguishable and no undue burden has been imposed by the Government.   Second, while Defendants understand this Court is bound by *Garza*, we preserve the argument that *Garza* was wrongly decided for purposes of appeal.

          **1.**       **Under *Garza*, Ms. Moe Has Not Shown an Undue Burden**

Applying the *Garza* decision, Ms. Moe has not shown that the government has imposed an undue burden.   Judge Millett, for the *en banc* court, held that the ability to find a sponsor in a timely manner played an important role in determining whether there was a right to court ordered facilitation of the abortion by the government.   *See Garza*, 874 F.3d at 738-39 ("centerpiece of the panel order" is the expeditious search for a sponsor and accepting that it is possible some "type[s] of short-term burden . . . could plausibly pass muster under Supreme Court precedent"); *see id.* at *739* (identifying five factual issues relating to promptly finding a sponsor that may be relevant to the right to court-ordered relief).   In weighing these factors, what most troubled the *en banc* court in Ms. Doe's case was that the government did not allege that "there was any prospect of finding a sponsor at all," or that "a non-family member could be identified, vetted, and take custody of J.D. within [the requested] eleven days."   *Id.*   Adding to that factor was the long period of time—7 weeks—that had passed since Ms. Doe made the decision to obtain an abortion and the length of the sponsorship search.   *See id.* at 739, 741 ("J.D. is already into the second trimester of her pregnancy" and while "sponsorship . . . might be more optimal in the policy sense" for a child to

make a difficult decision, the search for a sponsor had lasted "almost seven weeks" without a sponsor). This combination of factors, the Court held, rendered any further delay an undue burden.

In contrast, according to her complaint, Ms. Moe only requested an abortion 2 weeks ago and filed her legal claim only yesterday. Jane Moe Decl. ¶ 6. This seems to constitute precisely the type of short delay the *en banc* Court in *Garza* deemed did *not* constitute an undue burden. Indeed, the Supreme Court has approved state law regimes that take longer, once a case is filed, to resolve whether a child may consent to abortion. *See Ohio v. Akron Center for Reproductive Health*, 497 U.S. 502, 514 (1990) (acknowledging that bypass "procedure may require up to 22 days in a rare case" and explaining that Court has "upheld a Missouri statute that contained a bypass procedure that could require 17 calendar days plus a sufficient time for deliberation and decisionmaking at both the trial and appellate levels"); *id*. at 532 (Blackmun, J., joined by Brennan and Marshall, JJ., dissenting) ("Ohio's judicial-bypass procedure can consume up to three weeks of a young woman's pregnancy."). *A fortiori*, a short period for ORR to obtain sponsorship rather than a court order for it to facilitate an abortion, is called for here.

Further, Ms. Moe's sponsorship prospects are significantly different from Ms. Doe's case. A sponsor has already been identified, and "[t]he prospects for possibly placing her with that sponsor are favorable." White Decl. ¶ 5. "[T]here is no home study requirement for this prospective sponsor," and at this point, only a fingerprint appointment scheduled for January 12, 2018 and background checks remain for reunification, which "would be completed within one week of the fingerprinting." *Id.* In these circumstances, the government does not impose an undue burden in awaiting the completion of the sponsorship process to avoid the need to facilitate the termination of Ms. Moe's pregnancy.

Moreover, and again in contrast to Ms. Doe's case, no one has determined that Ms. Moe is making a considered and informed decision here.  As the Supreme Court has long recognized, "during the formative years of childhood and adolescence, minors often lack the experience, perspective, and  judgment to recognize and avoid choices that could be detrimental to them." *Bellottti v. Baird*, 443 U.S. 622, 635 (1979).  Unlike Ms. Doe, Ms. Moe does not have a guardian ad litem to assure the Court that her interests are being protected and pursued in this litigation.  *See* Fed. R. Civ. P. 17(b) & (c).  And ORR, her current guardian and the only appropriate entity capable of acting on her behalf, *see* Fed. R. Civ. P. 17(a), has not made a best interest determination given that she only requested an abortion 2 weeks ago, and proceeded to immediately seek judicial relief.

Further, unlike in Ms. Doe's case where she obtained a judicial bypass from a Texas state court, there has been no similar determination that Ms. Moe, as a 17-year-old minor, is sufficiently mature to make her abortion decision.  *See Belloti*, 443 U.S. at 635.  While Ms. Moe is in a state that does not require that determination to be made by a judge, ORR's mission of protecting the interests of the child is required as a matter of federal law, and some determination is needed to address this issue beyond the minor child's own independent decision.  6 U.S.C. § 279(b)(1)(A), (B) (stating that ORR's Director is responsible for "ensuring that the interests of the child are considered in decisions and actions relating to the care and custody of an unaccompanied alien child," and for "implementing policies with respect to the care and placement of unaccompanied alien children.").  The Supreme Court has held that "[t]o promote the State's profound interest in potential life, throughout the pregnancy the State may take measures to ensure that the woman's choice is informed, and measures designed to advance this interest will not be invalidated so long as their purpose is to persuade the woman to choose childbirth over abortion." *Casey*, 505 U.S. at

878.  Given that Ms. Moe has not appeared before a state judge or other impartial body that has ensured her decision is informed, the existence of an informed choice cannot be presumed.

In short, the facts presented here in Ms. Moe's case are distinguishable from the *en banc* Court's decision in *Garza*, and do not similarly establish a likelihood of success on the merits.

>    **2.     The Due Process Clause Does Not Require the Government to Facilitate an Abortion, Given the Government's Legitimate Interest in Protecting Life and the Ability of an Alien to Request Voluntary Departure to Her Country of Nationality**

Defendants again concede that for purposes of this TRO, they are bound by the D.C. Circuit's October 24, 2017 *en banc* decision insofar as the law and the facts contained herein are indistinguishable.  However, to preserve the issue, Defendants again argue that the government's refusal to facilitate an elective abortion does not impose an undue burden in violation of the Fifth Amendment.  Plaintiffs' Memorandum at 4-5.  Under *Casey*, the government is entitled to pursue its legitimate interests, provided that it does not impose an "undue burden" on a woman's choice to terminate her pregnancy before viability.  *Id.* at 870.  Plaintiffs cannot show that an alleged ORR policy of protecting fetal life necessarily imposes such an undue burden in every application, or even a large fraction of applications, for one fundamental reason:  an alien who illegally crosses the border and is detained pending a determination of whether she will be permitted to remain in the United States retains the power to withdraw her application for admission and request voluntary departure from the United States to return to her home country, *cf. Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir. 1999) ("An alien in Parra's position can withdraw his defense of the removal proceeding and return home to his native land, thus ending his detention immediately.  He has the keys in his pocket."), where she would be in the same circumstances she would have been in had she never entered the United States.  Unlike Ms. Doe in *Garza*, Ms. Moe has not put forward any facts relating to her ability to return to her country of nationality or remain in the United States.

*See Garza*, 874 F.3d at 740 (in the case of J.D., voluntary departure is "not a constitutionally adequate choice either given both the life-threatening abuse that J.D. claims a . . . and her potential claims of legal entitlement to remain in the United States").

Given these points, Ms. Moe is incorrect in claiming that the government violated her constitutional rights.

### B.  Ms. Moe Has not Demonstrated a Likelihood of Success on Her Related Claims.

Finally, Ms. Moe has not demonstrated a likelihood of success on her claim that the government has violated her constitutional rights by providing counseling or including her parents in the decision.  Plaintiffs' Memorandum at 5-6.  She asserts that ORR "requires minors to tell parents and/or sponsors about their pregnancies and abortion decisions even if they do not wish to do so—otherwise Defendants will tell those parents and sponsors themselves over the minors' objections—and compels minors to attend 'life-affirming' spiritual counseling."  *Id.* at 5.  This, Ms. Moe claims, violates her free speech rights.

Ms. Moe cannot establish a constitutional speech violation.  The government only *impermissibly compels speech* when it forces a speaker to convey a message and "the complaining speaker's own message was affected by the speech it was forced to accommodate."  *Rumsfeld v. FAIR*, 547 U.S. 47, 63 (2006); *see Nat'l Assoc. of Manufacturers v. NLRB*, 717 F.3d 947, 958 (D.C. Cir. 2013) (a "compelled-speech violation' occur[s] when 'the complaining speaker's own message was affected by the speech it was forced to accommodate'"); *see also Nat'l Assoc. of Manufacturers v. SEC*, 800 F.3d 518, 521-23 (D.C. Cir. 2015) (collecting compelled speech cases).  It is not compelled speech when the individual is not required to say anything.  *Snyder v. Phelps*, 562 U.S. 443, 458 (2011) (The First Amendment contemplates that listeners may be exposed to messages that "in someone's eyes are misguided.").

HHS serves in the role of the child's legal custodian and is directed to place UACs "in the least restrictive setting that is in the best interest of the child," 8 U.S.C. § 1232(c)(2)(A), while in HHS custody—that is, until they are released to a suitable sponsor, obtain lawful status or leave the country and thus are no longer unlawfully present.  *See* 6 U.S.C. § 279(g); 8 U.S.C § 1232(b)(1), (g).  HHS provides an extensive amount of speech to UACs: on-campus schooling, regular psychological counseling as needed, regular case management and social work discussions, as well as information about their medical care.  When caring for a child's medical needs, HHS exercises custodial responsibility, and in these circumstances must consider child welfare.  In addressing the UAC's welfare, and more specifically, the needs of a pregnant minor, ORR provides pregnancy counseling in this custodial capacity.  Ms. Moe is not forced to engage in discourse, or respond to any inquiries, and may remain completely silent during any such counseling.  The Supreme Court and various lower courts thereafter have recognized that the government imposes no undue burden or First Amendment violation when it requires the provision of specific, and often extensive, information prior to an abortion. *See, e.g., Casey*, 505 U.S. at 881–84.  ORR's decision to provide options counseling and information before an abortion, from ORR's grantees' own medical and counseling professionals, is sustainable on the same grounds.

For these reasons, Ms. Moe's compelled-speech claim has no likelihood of success.  *See Johanns v. Livestock Mktg. Ass'n*, 544 U.S. 550, 557 (2005) (stating a compelled speech claim arises when "an individual is obliged personally to express a message he disagrees with, imposed by the government").

* * *

Accordingly, Ms. Moe has failed to demonstrate a likelihood of success on the merits of her claims.

## II.     Ms. Moe Has Not Established that a TRO Is Needed to Prevent Irreparable Harm.

Ms. Moe cannot obtain relief for the independent reason that she has not established irreparable harm.  Ms. Moe contends that, unless this Court grants the TRO, she will face the irreparable injury of being forced to carry the pregnancy to term against their will. Plaintiffs' Memorandum at 6-7.

Ms. Moe's claimed injury provides no basis for the injunctive relief that she seeks.  The issue before this Court is not whether Ms. Moe will have to carry a pregnancy to full term, but rather whether she can obtain a court order requiring ORR to facilitate her abortion as early as this week.  Ms. Moe has provided no evidence of where she is in her pregnancy to establish irreparable harm, only stating that she requested an abortion 2 weeks ago.  Jane Moe Decl. ¶ 6.  Her attorneys only state that she "is already in her second trimester."  Plaintiffs' Memorandum at 3.  ORR records, however, indicate that Ms. Moe is approximately 17 weeks into her pregnancy, White Decl. ¶ 6, and Ms. Moe has failed to demonstrate that the state she is in presents any special reason for expedited action.  Ms. Moe therefore has weeks, not a few days, before viability.

Moreover, a sponsor has already been identified, and as explained above, the prospects for expeditious placement are quite favorable given that: (1) no home study is required; (2) fingerprinting and background checks are scheduled for January 12, 2018; and (3) reunification "would be completed within one week of fingerprinting."  White Decl. ¶ 5.  In these circumstances, there is little harm to Ms. Moe in awaiting the completion of the sponsorship process to avoid the need to facilitate the termination of Ms. Moe's pregnancy, and the *Garza* majority recognized a preference that such decisions be made with a sponsor rather than while in government custody. *Garza*, 874 F.3d at 739.  This is particularly true here, where Ms. Moe has refused to consult with her parents.  She need not compel the government to facilitate her abortion this week to vindicate

the right that she claims.  Because Ms. Moe's pregnancy is still weeks away from viability, she will not be irreparably injured if she does not obtain effectively irreversible relief now, and the Supreme Court has noted evidence that having an abortion during the second trimester is unlikely to increase existing risks.  *See Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2311 (2016); *Gonzales*, 550 U.S. at 164.  Granting immediate relief would disrupt the status quo and irreversibly harm the government's strong interests in not facilitating the termination of fetal life without an opportunity for a full adjudication on the merits.

**III.    The Balance of Hardships and Public Interest Weigh Against Ms. Moe's Request for Relief.**

The balance of the hardships and the public interest weigh against granting Ms. Moe's motion.  The government has a legitimate and significant interest in ensuring that it does not affirmatively facilitate an abortion.  That interest would be completely extinguished if Ms. Moe's motion is granted and the government is required to facilitate an abortion this week or the next. The public interest also weighs against incentivizing illegal immigration by compelling the federal government to facilitate an unaccompanied alien child's request for an elective abortion.  *Cf. Landon v. Plsencia*, 459 U.S. 21, 34 (1982) ("The government's interest in efficient administration of the immigration laws at the border also is weighty.  Further, it must weigh heavily in the balance that control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature.").

**IV.    Any Ruling by this Court Should Allow Time for Appellate Review.**

Defendants request that any disposition by the Court permit the unsuccessful party sufficient time to vindicate its position through emergency appeal.  If the Court issues a TRO, given the magnitude of the interests in play—including the irreversible nature of abortion—any ruling by this Court on the motion should be stayed pending appeal.  Because Ms. Moe is only 17

13

weeks pregnant and is very likely to have a sponsor soon, the Court should grant a stay of 10 days, until January 22, 2018.  At a minimum, the Court should grant a stay for 1 full business day, to allow the government an opportunity to seek emergency relief from the D.C. Circuit and the Supreme Court.  In response to the Court's minute order, we advise that ORR has not issued a decision document regarding Ms. Moe's abortion request at this time.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Ms. Moe's request for a temporary restraining order.

DATED: January 12, 2018                    Respectfully submitted,

                                           CHAD A. READLER
                                           Acting Assistant Attorney General
                                           Civil Division

                                           AUGUST E. FLENTJE
                                           Special Counsel
                                           Office of Immigration Litigation

                                           ERNESTO H. MOLINA
                                           Deputy Director
                                           Office of Immigration Litigation

                                       BY: /s/ *W. Daniel Shieh*
                                           W. DANIEL SHIEH
                                           SABATINO F. LEO
                                           Trial Attorneys
                                           Office of Immigration Litigation
                                           Civil Division, U.S. Department of Justice
                                           P.O. Box 878, Ben Franklin Station
                                           Washington, D.C.  20044
                                           Phone: (202) 305-9802
                                           Fax: (202) 305-1890
                                           daniel.shieh@usdoj.gov
*Attorneys for Defendants*                 sabatino.f.leo@usdoj.gov