## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ROCHELLE GARZA, as guardian ad litem to unaccompanied minor J.D., on behalf of herself and others similarly situated, *et al.*, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 17-cv-02122-TSC |
| ALEX M. AZAR II, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

## PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION AND A PRELIMINARY INJUNCTION BASED ON NEW FACTS DEMONSTRATING CONTINUED NEED FOR URGENT RELIEF

Plaintiffs submit this renewed motion for class certification (ECF No. 18), for provisional class certification and notice (ECF No. 90), and for preliminary injunctive relief (ECF No. 5). Since the filing of those motions, additional facts have come to light that reveal the extreme lengths to which Defendants will go in their attempts to obstruct access to abortion and coerce young girls into carrying their pregnancies to term. These additional facts confirm Plaintiffs' assertion that Defendants have violated, and will continue to violate, the putative class members' constitutional right to access abortion unless and until they are enjoined from doing so by an order of this Court. Indeed, new information shows that there have been multiple minors, not previously known to this Court, who have requested access to abortion while in Defendants' custody. In addition to demonstrating ongoing irreparable harm, these new facts also confirm that Plaintiffs easily satisfy the Rule 23(a) requirements for class certification. Accordingly, based on Plaintiffs' prior briefings and the additional information set forth below, Plaintiffs

respectfully urge this Court to rule quickly on their motions for class certification, or

provisional class certification and notice, and for a preliminary injunction to prevent

Defendants from inflicting irreparable harm on additional pregnant minors in their

custody.  *See* Mot. for Prelim. Inj. (ECF No. 5); Mot. for Class Cert. (ECF No. 18); Mot.

for Prov. Class Cert. & Notice (ECF No. 90).

> **A. New Information Reveals That in the Span of Just a Few Months, Several Additional Minors Were Subjected to Defendants' Unconstitutional Policy, Further Demonstrating the Breadth of the Class and Ongoing Irreparable Harm.**

Plaintiffs have obtained additional facts through discovery in *American Civil*

*Liberties Union of Northern California v. Hargan*, No. 3:16-cv-03539-LB (N.D. Cal.)

showing that minors, in addition to the named Plaintiffs, have suffered harm and that

more are likely suffering harm on a continuing basis due to Defendants' policies of

coercion and obstruction.  These additional facts intensify the urgency for class

certification and injunctive relief.  In addition, they further support Plaintiffs' showing of

numerosity/impracticability of joinder because the number of identifiable members in the

putative class continues to grow and the fact that Plaintiffs' counsel are learning of these

putative class members only through discovery in a separate action (discovery which has

now closed) reflects the difficulty these young women have in obtaining counsel of their

own to assert their rights in court.  *See* Reply in Support of Class Cert. (ECF No. 56), at

18-21 (explaining the relevance of Defendants' obstruction of access of counsel and the

unique vulnerability of putative class members).  Absent action from this Court, there is

no way for Plaintiffs, apart from relying on anonymous tips, to identify other members of

the putative class who have been or are currently being harmed by Defendants'

unconstitutional policy, or will be harmed in coming days, weeks, and months.

The evidence reveals that in the span of just five months – August of 2017 to December of 2017 – *at least* six pregnant minors were considering abortion while in Defendants' custody and were subjected to Defendants' coercion attempts, obstruction and outright prevention.  *See* Decl. of B. Amiri in Supp. of Pls.' Renewed Mot. ("Decl. of B. Amiri") at Exs. A-M.  This includes Jane Doe, Jane Poe and Jane Roe – three of the named plaintiffs in this case – and three additional minors whose cases Plaintiffs' counsel became aware of only after reviewing documents obtained in discovery.

- In August 2017, a minor who was pregnant and had requested an abortion while residing at a shelter in Arizona was taken to a crisis pregnancy center, given spiritual counseling and ended up participating in a "family session" in which her mother was informed of her pregnancy and desire for abortion, in spite of the minor's expressed desire that her family not be informed.  *See id.*, Ex. A, PRICE_PROD_00014828-29.

- Shortly thereafter, in September 2017, Jane Doe, the first named plaintiff in this case, was required to tell, or have ORR tell, her parents about her pregnancy and abortion decision, despite being "strongly opposed to parental notification," and was also required to attend "life-affirming" spiritual counseling at a crisis pregnancy center – all prior to Defendant Lloyd's determination that it would not be in her best interests to obtain an abortion because "the fetus and pregnancy was also a minor in care."  *See id.*, Ex. B, PRICE_PROD_00014889-91; *id.*, Ex. C, PRICE_PROD_00015152-53; *id.*, Ex. D, Dep. Tr. of J. White at 86:19-25; 89:23 – 90:20; 91:7 – 92:15.

- Also around September 2017, yet another minor who was pregnant and contemplating an abortion while residing at an ORR shelter in California was sent for counseling at a Christian crisis pregnancy center, despite having indicated that she did *not* want to receive Christian services, and Director Lloyd further instructed shelter staff to notify her parents of her pregnancy and abortion request, regardless of the fact that she had declined to talk to her family herself and had not consented to having shelter staff tell them. *See* Decl. of B. Amiri, Ex. E, PRICE_PROD_00014814; *id.*, Ex. F, PRICE_PROD_00014822-24.

- Less than a month later, in October 2017, yet another minor who was pregnant and requesting an abortion at a shelter in Texas was coerced into notifying her mother at Defendant Lloyd's direction, and Defendant Lloyd also instructed that she be taken for "options" counseling at a Catholic Charities counseling center. *See id.*, Ex. G, PRICE_PROD_00014815-16; *id.*, Ex. H, PRICE_PROD_00015133-34.

- And then, in December 2017, Defendants imposed their policy on two of the other named plaintiffs in this case. In Ms. Poe's case, Defendants employed a number of tactics aimed at coercing Ms. Poe into carrying her pregnancy to term, despite Defendants' knowledge that she had stated she would prefer to harm herself rather than continue with the pregnancy. *See id.*, Ex. I, PRICE_PROD_00015506. For example, Defendant Lloyd required Ms. Poe to either notify her parents of her pregnancy and abortion decision herself or have them be notified. *See id.*, Ex. I, PRICE_PROD_00015504-11. During the required notification session, Ms. Poe's family threatened to harm her if she had the abortion, causing her to temporarily

withdraw her request to obtain an abortion because – as she later stated when reasserting her request – she felt pressured by her mother and potential sponsor to continue with the pregnancy.  *See id.*, Ex. J, PRICE_PROD_00015514-16.  After this attempt at coercion failed, Defendant Lloyd instructed staff to give Ms. Poe a pamphlet containing information about the risks of abortion and "the ability of unborn babies to feel pain," to read her a detailed description of the abortion procedure from a Supreme Court case, to offer her a graphic image of the procedure, and to make sure she has "a proper understanding of the development of her baby," all in further attempt to pressure her into carrying her pregnancy to term.  *See id.*, Ex. K, PRICE_PROD_00015450-53; *id.*, Ex. L, PRICE_PROD_00015521-22.

- Defendants also required that Ms. Roe's family members be notified of her pregnancy and abortion decision, regardless of whether or not ORR had her consent to inform them.  *See id.*, Ex. M, PRICE_PROD_00015591-94.

Based on Defendants' policy and prior practices, it is virtually certain that there are other similarly situated pregnant minors who are in Defendants' custody *right now* and who have been or are currently being denied information about and/or access to abortion services pursuant to Defendants' unconstitutional policy.  Without access to these putative class members, and absent class certification and a preliminary injunction as to the class, the constitutional rights of these minors will be violated, to the point where they may be forced to carry their pregnancies to term against their will.

**B. New Facts Reinforce That Defendants Have a Uniform Policy of Coercion and Banning Abortion and Thus Plaintiffs Meet the Class Certification Commonality and Typicality Requirements.**

The discovery materials also confirm Plaintiffs' assertion that Defendants have adopted and continue to enforce a *uniform* policy that is aimed at ensuring that *all* pregnant minors in their custody continue their pregnancies, regardless of the minors' wishes.  The consistent manner in which Defendants have acted with respect to a rising number of individual minors' abortion requests confirms that there is "a uniform policy or practice that affects all class members" in this case.  *DL v. District of Columbia*, 713 F.3d 120, 128 (D.C. Cir. 2013); *DL v. District of Columbia*, 302 F.R.D. 1, 12 (D.D.C. 2013), *aff'd on other grounds*, 860 F.3d 713 (D.C. Cir. 2017) (finding commonality "where plaintiffs allege[d] widespread wrongdoing by a defendant because [of] a uniform policy or practice that affects all class members" (internal quotation marks omitted)); *see also* Reply in Support of Class Cert. (ECF No. 56) at 3-9.  The continued application of the policy also demonstrates the dire need for class wide preliminary injunctive relief to prevent ongoing, irreparable harm.  *See* Mem. in Supp. Mot. for TRO & Prelim. Inj. (ECF No. 5-1) at 14-16.

As the discovery materials further show, pursuant to Defendants' policy, once a minor requests information about and/or access to abortion, Defendants require that a number of coercive tactics be employed to break the minor's resolve in her abortion decision.  These tactics include requiring that the minor's parents or family members be notified of her pregnancy and abortion decision, even over the objection of the minor and even in cases where concerns are raised about the danger to the minor's physical well-being of revealing her abortion decision.  *See* Decl. of B. Amiri, Ex. B, PRICE_PROD_00014889 (shelters are "not to take [a minor] to get a termination, or to any appointments to prepare her for a termination, without consent from the Director,

which cannot happen without written and notarized consent of her parents…"); *id.*, Ex.
G, PRICE_PROD_00014816 (when minors receive positive pregnancy tests "the parents
must be notified"); *id.*, Ex. F, PRICE_PROD_00014822 (shelters should "notify [parents]
regardless of UAC's wishes"); *id.*, Ex. D, Dep. Tr. of J. White at 41:1 – 42:2 (explaining
that "[i]n many cases" another step has been notification of the parents in the minors'
home country of the minors' abortion decision, even "over the objection of the minor");
*id.* at 84:9-17 (confirming that one minor's parents were notified of the minor's abortion
decision even where the Young Center – an immigrants services organization that works
one-on-one with unaccompanied immigrant children who come to the U.S. fleeing
violence and abuse – had raised concerns about the ramifications of revealing the minor's
abortion decision); *see also id.*, Ex. N, Dep. Tr. of S. Lloyd at 133:3 – 134:1 (admitting
that he directed parental notification about a minor's abortion decision).  As Jonathan
White, Deputy Director of ORR, explained, this policy of forced notification puts minors
at risk of harm. *See id.*, Ex. D, Dep. Tr. of J. White  at 42:3 – 43:1 (stating that, based on
his social work background and training, he would "not recommend" notifying a minor's
parents of her abortion decision over the minor's objection "[b]ecause of the potential of
additional harm or risk").

Defendants' policy also requires that minors who request access to abortion
receive "life-affirming" counseling from an anti-abortion crisis pregnancy center on the
Defendants' list of "approved providers" – a list that was commissioned by Director
Lloyd and created with the assistance of two national Christian networks of anti-abortion
crisis pregnancy centers.  *See, e.g., id.*, Ex. B, PRICE_PROD_00014891 (when a young
person wants to terminate a pregnancy "the child should seek spiritual counseling,

options counseling"); *id.*, Ex. O, PRICE_PROD_00014997-98 (discussing creation and

origin of approved provider list); *id.*, Ex. D, Dep. Tr. of J. White at 40:10-24 (noting that

one of the steps that a minor must take after notifying ORR that she desires an abortion

has been to visit a crisis pregnancy center).  Indeed, Defendant Lloyd has admitted that

he asked the Center for Faith-Based and Neighborhood Partnerships to create an

"approved provider" list of "life-affirming" pregnancy centers and has required pregnant

minors to visit crisis pregnancy centers from this list for counseling.  *See id.*, Ex. N, Dep.

Tr. of S. Lloyd at 161:6 – 162:10 (requesting that Shannon Royce – the Director of the

Center for Faith-Based and Neighborhood Partnerships – identify "life-affirming" crisis

pregnancy centers to which programs may refer minors if they are pregnant and seeking

information about their options); *id.* at 133:3 – 134:1 (admitting that he required a minor

who had requested an abortion to visit a crisis pregnancy center).  Defendant Lloyd has

also instructed that a minor be read and given a copy of a personalized letter from a

family offering to adopt her baby if she continued her pregnancy.

    The discovery materials further show that, even when a minor manages to

withstand all of Defendants' coercion attempts, Defendants will *still* block the young

woman from accessing abortion – either by outright denying her abortion request or by

withholding the now-requisite "consent from the Director" until it is too late.  Indeed,

Defendant Lloyd has clarified that, under ORR's policy, shelters "are not to take [minors]

to get a termination, or to any appointments to prepare [them] for a termination, without

consent from the Director, which cannot happen without written and notarized consent of

her parents, *and will not necessarily follow*."  Decl. of B. Amiri, Ex. B,

PRICE_PROD_00014889 (emphasis added); *see also id.*, Ex. P,

PRICE_PROD_00014975 (where "pregnancy termination is being sought, [the parents] will need to provide written and notarized consent, although Scott [Lloyd] advises that this *does not constitute a commitment for the Director to approve the request*") (emphasis added); *id.*, Ex. D, Dep. Tr. of J. White at 16:15 – 18:7; 47:22 – 48:8; 56:11-15; 68:4-9 (discussing ORR's policy of requiring Director approval of all abortion requests and its application).  In other words, pursuant to Defendants' policy, *even* where a minor's parents provide consent, Defendant Lloyd *still* retains for himself the power to veto both the minor's *and* her parents' decision and deny the minor's request.  And Defendant Lloyd has admitted that he has not approved any abortion request in his time as ORR Director, even when the young woman was pregnant as a result of a rape, in part because of his belief that abortion is the "destruction of human life," and that it is his prerogative to apply his belief to override a minor's firm decision to have an abortion.  *See id.*, Ex. N, Dep. Tr. of S. Lloyd at 64:19-21; 65:6-22; 114:11-13; 154:8-23.  In other words, when viewed in the context of Defendant Lloyd's personal beliefs about abortion and his failure to approve *a single* abortion request – even where the pregnancy is the result of rape and even where, as in the case of Ms. Poe, the minor has threatened self-harm if she is forced to carry to term – Defendants' policy of conditioning minors' abortion access on Defendant Lloyd's approval is, in effect, an unconstitutional ban on abortion for minors in Defendants' care in all cases, the sole exception being where the pregnancy is an immediate threat to the young woman's life.  Accordingly, the additional evidence regarding the existence and application of this uniform policy further rebuts Defendants' arguments that class treatment is inappropriate because of purported factual differences among the putative class members.  *See* Reply in Support of Class Cert. (ECF No. 56), at

2-6 (explaining how common legal claims challenging a uniform policy applied to class member suffice to establish commonality).

   **C.  The Course of This Litigation Shows How Inherently Transitory Plaintiffs' Claims Are.**

        Finally, although Defendants have argued at length that Jane Doe, Jane Roe and Jane Moe are not adequate class representatives because they have already received abortions and/or are no longer in the custody of ORR, *see* ECF No. 53 at 8-11; ECF No. 98 at 5-6; ECF No. 117 at 1-3, the proceedings to date in this case amply demonstrate that that Plaintiffs' claims are "inherently transitory" in nature, *Cty. of Riverside v. McLaughlin*, 500 U.S. 44, 52 (1991); ECF No. 56 at 11-18; ECF No. 103 at 1; ECF No. 107 at 1-2, and therefore fall within the well-established exception to the mootness doctrine.  Defendants have no real response to this claim:  They have conceded that there is no established length of time that renders a claim "transitory" and that a central consideration is whether a court has time to rule on class certification while the proposed representative retains a live individual claim.  *See* ECF No. 53 at 9-10.  So far in this litigation, four plaintiffs have sought relief:  Jane Doe obtained an abortion with the aid of a court order within 12 days of filing for class certification.  Jane Poe obtained an abortion with the aid of a court order within 5 days of joining the case.  As for Jane Roe and Jane Moe, the government released each of them from its custody within days of filing their claims; Jane Roe was released within 4 days of filing her claim, Jane Moe within 3 days.  Given the frenetic pace of the litigation over these women's motions for emergency relief, the Court has understandably been unable to rule on class certification prior to granting the TROs or the plaintiffs' release.  These spans of 12, 5, 4, and 3 days fall comfortably within this Court's jurisprudence on the "inherently transitory"

exception.  In fact, this Court has applied the "inherently transitory" rule to claims that

would be live for a "length . . . impossible to predict," *Thorpe v. District of Columbia*,

916 F. Supp. 2d 65, 67 (D.D.C. 2013), to claims that would be live for "weeks or

months," *R.I.L-R. v. Johnson*, 80 F. Supp. 3d 164, 183 (D.D.C. 2015), and even to claims

that would be live for two years (while the children at issue were aged three to five), *DL*,

302 F.R.D. at 20.  This case presents four examples of plaintiffs whose claims became

moot far faster, and there is every reason to expect that future plaintiffs in the putative

class will obtain relief with comparable dispatch once they are able to bring their claims

before this Court.

Defendants only response is to cite *Genesis Healthcare Corp. v. Symczyk*, 569

U.S. 66 (2013).  But that case has no bearing here.  First and "fundamentally," as stressed

in *Symczyk* itself, 569 U.S. at 75, and as the D.C. Circuit has emphasized, *Symczyk* was

about conditional certification of a "collective action" under the Fair Labor Standards

Act, *not* about certification of a class under Rule 23.  *Id.*; *DL*, 860 F.3d at 722.  Thus,

because it "hinged on the unique features of the FLSA cause of action" *Symczyk* is

inapplicable in "Rule 23-land."  *Id.* at 722; *accord Gomez v. Campbell-Ewald Co.*, 768

F.3d 871, 875 (9th Cir. 2014) ("[C]ourts have universally concluded that the *Genesis*

discussion does not apply to class actions."), *aff'd on other grounds*, 136 S. Ct. 663

(2016).  Second, the "inherently transitory" exception did not apply to the claim in

*Symczyk* — which was for unpaid wages — because "a claim for damages cannot evade

review; it remains live until it is settled, judicially resolved, or barred by a statute of

limitations."  569 U.S. at 77.  In this regard, the Court explicitly contrasted the damages

claim in *Symczyk* with "claims for injunctive relief challenging ongoing conduct," *id.* —

that is, the type of claim at issue here.  Accordingly, *Symczyk* casts no doubt on Plaintiffs' case for class certification.

*   *   *

In sum, Defendants continue to interfere with and obstruct pregnant minors' access to abortion services.  Indeed, even in the face of the temporary restraining orders issued by this Court thus far, Defendants have doubled down on applying their policy to minors in their care.  Their persistence in this regard reaffirms the urgent need for class certification and preliminary injunctive relief in order to protect the constitutional rights and health of all putative class members who are currently or will be in Defendants' care. For these reasons, Plaintiffs respectfully urge this Court to grant their motion for class certification, or alternatively their motion for provisional class certification and notice, and to issue a preliminary injunction enjoining Defendants (along with their respective successors in office, officers, agents, servants, employees, attorneys and anyone acting in concert with them) from continuing to coerce and compel minors' in their care into carrying their pregnancies to term against their will.

Amended proposed orders on the motions are attached.

March 2, 2018                                   Respectfully submitted,

                                                Arthur B. Spitzer (D.C. Bar No. 235960)
                                                Scott Michelman (D.C. Bar No. 1006945)
                                                Shana Knizhnik (D.C. Bar No. 1020840)
                                                American Civil Liberties Union Foundation
                                                of the District of Columbia
                                                915 15th Street NW, Second Floor
                                                Washington, D.C. 20005
                                                Tel. 202-457-0800
                                                Fax 202-457-0805
                                                *aspitzer@acludc.org*
                                                *smichelman@acludc.org*

*sknizhnik@acludc.org*

/s/*Brigitte Amiri*
Brigitte Amiri*
Meagan Burrows
Jennifer Dalven
Lindsey Kaley
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Tel. (212) 549-2633
Fax (212) 549-2652
*bamiri@aclu.org*
*mburrows@aclu.org*
*jdalven@aclu.org*
*lkaley@aclu.org*

Daniel Mach (D.C. Bar No. 461652)
American Civil Liberties Union
Foundation
915 15th Street NW
Washington, DC 20005
Tel. (202) 675-2330
*dmach@aclu.org*

Elizabeth Gill
American Civil Liberties Union Foundation
of Northern California, Inc.
39 Drumm Street
San Francisco, CA 94111
Tel. (415) 621-2493
Fax (415) 255-8437
*egill@aclunc.org*

Melissa Goodman
American Civil Liberties Union Foundation
of Southern California
1313 West 8th Street
Los Angeles, California 90017
Tel. (213) 977-9500
Fax (213) 977-5299
*mgoodman@aclusocal.org*

Mishan Wroe
Riley Safer Holmes & Cancila LLP
456 Montgomery Street, 16th Floor
San Francisco, CA 94104
Tel. (415) 275-8522
*mwroe@rshc-law.com*

*Admitted pro hac vice*

*Attorneys for Plaintiffs*