## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROCHELLE GARZA, as guardian ad litem to unaccompanied minor J.D., on behalf of herself and others similarly situated, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>ALEX M. AZAR II, *et al.*,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)   No. 17-cv-02122-TSC<br>)<br>)<br>)<br>)<br>) |

## PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR RENEWED MOTION FOR CLASS CERTIFICATION AND A PRELIMINARY INJUNCTION

Defendants repeatedly, and baldy, assert that they have no uniform policy of coercing young women to carry their pregnancies to term and, when that fails, denying them abortion access entirely. But merely repeating an argument does not make it true. Defendants' position is disingenuous and belied by the facts. The record shows that Defendants have a clear, written, consistently enforced policy of denying abortion access by any means necessary and under all circumstances, except when the pregnancy is life-threatening. The record also shows that this policy has been and continues to be applied to all pregnant minors in Defendants' legal custody, in direct violation of decades of well-settled Supreme Court precedent. Accordingly, this Court should quickly certify a class, and grant Plaintiffs' request for a preliminary injunction.

## ARGUMENT

### I.    Defendants Have a Uniform Policy of Coercion and Outright Obstruction of Abortion.

Contrary to Defendants' claims, Plaintiffs have provided abundant evidence demonstrating that Defendants have a uniform policy of attempting to coerce minors to carry

their pregnancies to term and, if those attempts fail, blocking abortion access altogether. *See, e.g.*, Pls.' Reply in Further Supp. of Class Certification ("Pls.' Reply") 4–6, ECF No. 56; Pls.' Renewed Mot. for Class Certification & Prelim. Inj. ("Pls.' Renewed Mot.") 5–9, ECF No. 121. For example, Defendants admit they have a policy of informing parents, or other family members, about minors' abortion requests, even against the minors' will. Defs.' Opp'n to Pls.' Renewed Mot. ("Defs.' Br.") 7, ECF No. 124 ("ORR has reasoned all may benefit from" consultation with a family member).[1] Defendants are fully aware that this policy often results in parents putting pressure on their daughters to carry their pregnancies to term. *See, e.g.*, Amiri Decl. Ex. I at PRICE_PROD_00015508, ECF No. 121-10. Defendants also admit that they have created a formal list of pre-approved centers – all of which are religiously affiliated anti-abortion centers – where a minor who seeks access to abortion must first receive "counseling." Amiri Decl. Ex. D at 92:8 – 94:6, ECF No. 121-5; Amiri Decl. Ex. N at 159:12 – 162:10, ECF No. 121-15. If a young woman withstands these and possibly other coercive tactics and continues to seek access to abortion, Defendants admit they have a policy of requiring that a minor's abortion request receive final "approval from the Director of ORR." Defs.' Br. 10. But far from being considered on a "case-by-case" basis, a minor's request will face a rubberstamp denial. Indeed, Defendant Lloyd has admitted that he has not approved *a single* abortion request – even where the pregnancy was the result of rape – in part because of his belief that abortion is the

---

[1] Under their policy, Defendants require parents to be informed of the minor's abortion decision, even if the minor objects. Although Defendants give the minor the "choice" of whether to inform her parent herself, or whether she wants Defendants to do so, *see* B. Amiri Decl. in Supp. of Pls.' Renewed Mot. ("Amiri Decl.") Ex. M at PRICE_PROD_00015594, ECF No. 121-14, this is obviously no choice at all for a young woman who does not want her parents to be informed. Defendants cannot therefore be taken seriously when they claim that a minor who "agreed" to tell her parents is acting freely. Defs.' Br. 11.

"destruction of human life," and he cannot articulate any circumstances under which he would

do so. *See* Amiri Decl. Ex. N at 64:22 – 69:8; 114:11-13, ECF No. 121-15.

II.      **This Court Should Grant Plaintiffs' Motion for Class Certification.**

A.   **Plaintiffs Have Established Commonality and Typicality.**

Defendants repeat two stale arguments with respect to Plaintiffs' ability to satisfy the

commonality and typicality requirements for class certification, both of which remain unavailing.

Defs.' Br. 9–16. First, Defendants' incredible assertion that no uniform policy even exists, Defs.'

Br. 9, is, as already explained, belied by the evidentiary record, now more than ever. *See supra*

Section I. Second, Defendants' claim that minor factual variations in individual class members'

circumstances defeat commonality and typicality, Defs.' Br. 15–16, is, for reasons already

explained, erroneous. *See* Pls.' Reply 7–9. These differences do not alter how Defendants'

uniform policy of coercion and obstruction is applied; they do not affect the central common

question of whether Defendants' policy is unconstitutional; and they do not affect whether this

Court can grant injunctive and/or declaratory relief that would protect all pregnant minors in

Defendants' custody.[2] *Id.*; *see also Nio v. U.S. Dep't of Homeland Sec.*, No. CV 17-998 (ESH),

2017 WL 4876276, at *3 (D.D.C. Oct. 27, 2017) ("factual variations among the class members

will not defeat the commonality requirement, so long as a single aspect or feature of the claim is

---

[2] Defendants' assertion that Ms. Moe's case counsels otherwise, Defs.' Br. at 15–16, is severely misguided. That the Supreme Court acknowledged that a state's judicial bypass process may take a certain number of days does not give Defendants carte blanche to independently obstruct a minor's access to abortion for the same number of days – and to deny her abortion access entirely – without running afoul of the Constitution. In any event, the Supreme Court has more recently made clear that a government imposed delay of a length similar to the examples Defendants cite is unconstitutional. *See Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2318 (2016) (striking down abortion restriction that resulted in three week wait time for appointments).

common to all proposed class members"); *Little v. Wash. Metro. Area Transit Auth.*, 249 F.

Supp. 3d 394, 420 (D.D.C. 2017) (holding that "[f]actual variations between the claims of class

representatives and the claims of other class members do not negate typicality" and that

"[p]laintiffs' claims are typical if they arise from the same course of events" such as "application

of [a] [p]olicy" and "class members make similar legal arguments") (citing *Wagner v. Taylor*,

836 F.2d 578, 591 (D.C. Cir. 1987)); *Bynum v. District of Columbia*, 214 F.R.D. 27, 33–35

(D.D.C. 2003).

### B.  Plaintiffs Have Established Numerosity.

Defendants also recycle their same arguments with respect to numerosity, once again

attempting to restrictively re-define the class. Defs.' Br. 7–8. But, as Plaintiffs have already

explained, that not all pregnant minors submit a formal request to access abortion is irrelevant.

The evidence shows that *all* pregnant minors – which, Defendants admit, total in the hundreds in

any given year, Defs.' Opp'n to Pls.' Mot. for Class Certification 22, ECF No. 53 – are subject

to, affected by, and injured by Defendants' policy of withholding non-biased information about

abortion, and pressuring minors to refrain from formally requesting abortion in the first place.

*See* Pls.' Reply 18–19. Regardless, even accepting Defendants' unduly restrictive class definition

would not negate the numerosity of the class. The record now reveals that ORR has subjected *at*

*least* 11 young women to its challenged policy in the span of less than a year. This number is

certainly under-inclusive, as it reflects only the minors of whom Plaintiffs' counsel have become

aware through limited discovery in another case, and through anonymous tips. Considering these

facts, in conjunction with the impracticability of joining each class member as an individual

plaintiff, *see* Pls.' Reply 19–20, and that – as Defendants' acknowledge – there is "no fixed

numerosity rule," Defs.' Br. 88 (internal quotation marks omitted), it is clear that the putative

class is adequately numerous.

### C. Plaintiffs Will Adequately Represent the Class In Litigating Inherently Transitory Claims.

Finally, Defendants repeat their assertion that, pursuant to *Genesis Healthcare Corp. v.*

*Symczyk*, 569 U.S. 66 (2013), Ms. Doe, Ms. Roe, and Ms. Moe are inadequate class

representatives because their individual abortion access claims became moot before this Court

was able to certify a class. Defs.' Br. 4. Not so. First, unable to wriggle out from under the fact

that "courts have universally concluded that the *Genesis* discussion does not apply to class

actions," *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 875 (9th Cir. 2014) *aff'd*, 136 S. Ct.

663 (2016), Defendants mischaracterize Plaintiffs' argument with respect to how this Circuit

has interpreted *Genesis*. Plaintiffs are not arguing that *DL v. District of Columbia*, 860 F.3d 713

(D.C. Cir. 2017), "erase[d] the mootness doctrine," Defs.' Br. 4 – only that, as the *DL* court

explained, "[t]he outcome in *Genesis Healthcare* [] hinged on the unique features of *the FLSA*

cause of action," rather than the features of class actions suits, such as the one at issue here,

which are to be governed instead by Rule 23 and *U.S. Parole Commission v. Geraghty*, 445

U.S. 388 (1980). 860 F.3d at 722 (emphasis added). Moreover, that the *DL* court, having

already applied the relation back doctrine, "ha[d] no need to consider whether the [plaintiffs']

claims also f[e]ll under the 'inherently transitory' exception to mootness," *id.*, is irrelevant.

Plaintiffs cite *DL* not for its *application* of the inherently transitory exception, but to show that

this Circuit has adopted the Supreme Court's holding that the "inherently transitory" exception

may be applied to permit class actions to proceed even where the named plaintiff's claims

expire before the court can certify the class. *Id.* at 721.

Since they cannot dispute this crucial fact, Defendants move instead to arguing that the "inherently transitory" exception to mootness is inapplicable here because this Court's expeditious granting of a series of individual emergency requests for temporary injunctive relief shows that there is no need to preserve the merits of the class claims for final judicial resolution. *See* Defs.' Br. 4–7. But in making that argument, Defendants misrepresent the inherently transitory test. Binding precedent makes clear that the relevant question as to the applicability of the "inherently transitory" exception is not – as Defendants suggest – whether a court has the capacity to rule quickly on a succession of near-identical individual emergency requests for relief from the same challenged policy, but is instead whether it is unlikely that the trial court will have "enough time to rule on a motion for *class certification* before the proposed representative's individual interest expires." *Geraghty*, 445 U.S. at 399 (emphasis added). Plaintiffs have already shown that their claims are sufficiently transitory such that this Court has not had enough time to rule on class certification. Pls.' Renewed Mot. 10.[3] Moreover, the fact that all four named plaintiffs sought and obtained relief within extremely short time spans, – as Defendants' acknowledge, Defs.' Br. 5 – before this Court could rule on class certification, buttresses Plaintiffs' assertion that the fluidity of the class makes it impossible to ensure that any named plaintiff will retain a live claim long enough for this court to rule on class certification.[4] *See* Pls.' Reply 13–15. At the same time, because Defendants continue to apply

---

[3] Indeed, Plaintiffs' previous statement that this Court had as few as 12 days to rule on class certification while Ms. Doe's Fifth Amendment claim regarding abortion access remained live, ECF No. 121 at 10, was in fact an *over*-estimation – this court actually had even *less* time, as Ms. Doe obtained her abortion on October 25, 2017, a mere 7 days after she filed her motion for class certification on October 18, 2017.

[4] Defendants' argument that "Ms. Roe's situation is irrelevant to this discussion, since she was never properly a plaintiff here," Defs.' Br. 5, is presumably based on their *disputed* claim that

their uniform policy to all pregnant minors in their care, *supra* Section I; Pls.' Renewed Mot. 5, it is certain that other similarly situated class members will suffer the same alleged harms absent judicial intervention. This exact rationale undergirded the Supreme Court's application of the inherently transitory exception in *Gerstein v. Pugh*, 420 U.S. 103 (1975). *Id.* at 110 n.11 (finding that the inherently transitory exception applied where the length of the alleged harm of pretrial detention "cannot be ascertained at the outset" and "may be ended at any time," making it "by no means certain that any given individual, named as plaintiff, would" suffer the alleged harm long enough for a district court to certify a class, even though "the constant existence of a class of persons suffering the deprivation [was] certain"). Accordingly, it supports doing the same here.

Defendants' argument that individualized, emergency relief will be sufficient to address the harms imposed on other putative class members is defective in other respects too. It ignores both (1) that Plaintiffs' counsel has experienced serious difficulty in locating putative class members, relying primarily on anonymous tips, and thus it is virtually certain that, absent class certification, individual putative class members will slip through the cracks and continue to suffer irreparable harm – which is just what Defendants want; and (2) that the Rule 23 class action was in fact designed to protect against precisely the chaotic, ad-hoc procedure that

---

Ms. Roe is 19 years old. *See, e.g.*, Pls.' Reply in Further Supp. of Mot. for Prov. Class Certification & Notice, 1 n.1, ECF No. 103. But regardless of Ms. Roe's true age, it is undisputed that at the time she filed an application for a TRO in this Court, she was being detained in Defendants' custody as an unaccompanied minor and was being blocked from accessing the abortion she desired. She was therefore properly a plaintiff in this case. Moreover, Defendants should not be permitted to defeat class certification and prevent this Court from reaching the merits of this case by employing a litigation strategy through which they surreptitiously pick off plaintiffs and potential plaintiffs by, among other things, expediting minors' release to sponsors, expediting voluntary departure, raising sudden disputes as to the minors' true age, and even releasing minors onto their own recognizance.

Defendants advocate for here, to save courts from having to expend unnecessary time and energy reviewing near-identical emergency claims for relief over and over again, on a fire-drill basis. *See Chang v. United States*, 217 F.R.D. 262, 268 (D.D.C. 2003) ("'It is, of course, well established that a principal purpose of the class-action mechanism is to advance the efficiency and economy of multi-party litigation.'") (quoting *McCarthy v. Kleindienst,* 741 F.2d 1406, 1410 (D.C. Cir. 1984)).

Rather than seriously contending with these problems, Defendants fall back upon the same unavailing argument they make with respect to commonality and typicality – namely, that proceeding in an inefficient, risky and piece-meal fashion is necessary because ORR uses a "totality of the circumstances case-by-case" test to determine whether to grant each individual minor's allegedly factually distinct request to access abortion. Defs.' Br. 6–7. As already explained, this argument is belied by the evidentiary record, which shows that Defendants have adopted a uniform policy that ensures all pregnant minors continue their pregnancies while in ORR custody, regardless of their age, physical location, length of pregnancy, etc. *See supra* Section I; Pls.' Reply. Moreover, Defendants cite no case holding that the applicability of the inherently transitory exception is dependent upon the challenged policy being enforced in an *identical* manner against factually *indistinguishable* plaintiffs. Contrary to their implication, Defs.' Br. 6, *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991) held no such thing. Indeed, the *McLaughlin* Court determined that the inherently transitory exception applied even though the named plaintiffs' claims had been rendered moot because "they *either* received probable cause determinations *or* were released [from custody]," which indicates that factual variances do not defeat the "inherently transitory" exception. 500 U.S. at 51 (emphasis added).

**III.    This Court Should Preliminarily Enjoin Defendants' Policy.**

8

As already briefed extensively, Plaintiffs also meet all the factors for a preliminary injunction. Plaintiffs' recent supplement, ECF Nos. 121–122-7, intended simply to provide the Court with new information pertinent to both pending motions and to underscore the irreparable harm that Defendants are continuing to inflict on unaccompanied minors. As this Court has already found in granting temporary restraining orders to the named Plaintiffs, Defendants' prohibition on abortion access subjects minors to "irreparable injury in the form of, at a minimum, increased risk to their health, and perhaps the permanent inability to obtain a desired abortion to which they are legally entitled." TRO 4, ECF No. 73.

Defendants wholly ignore the harm caused by their no-abortion policy, and instead only address the revelation of the abortion decision to parents and sponsors. *See* Defs.' Br. 10–14. In doing so, Defendants minimize the harm by claiming that the minors' parents are far away and therefore cannot block the abortion. *Id.* at 12. But the distance of a minor's parent is irrelevant here, just as it would be irrelevant for a minor in a domestic foster care setting, or a minor who did not live with one parent after divorce, because blocking an abortion is not the only harm that a parent can inflict on a child. Numerous courts have found that disclosure of a woman's abortion decision to others exposes a woman to serious risks, including harm, harassment, and abuse. *See* Pls.' Reply in Further Supp. of Emergency Mot. to Extend the TRO for Jane Roe and Jane Poe, 3–4, ECF No. 96 (collecting cases). Indeed, ORR's Deputy Director himself testified that telling a minor's parents over the minor's objection can cause "additional harm or risk." Amiri Decl. Ex. D at 42:3 – 43:1, ECF No. 121-5. The evidence also demonstrates that this is true. *See, e.g.*, Amiri Decl. Ex. J, ECF No. 121-11; Amiri Decl. Ex. D, at 84:9-17, ECF No. 121-5.

Furthermore, this Court has also already found in the context of temporary restraining orders that Plaintiffs are likely to succeed on the merits of their claims. *See, e.g.*, TRO 4, ECF No. 73. In attempting to defend the constitutionality of their policy, Defendants make the stunning claim that ORR is the "ultimate decision-maker" of unaccompanied minors' abortion decisions. Defs.' Br. 13. This statement flies in the face of decades of Supreme Court precedent. As the Court has repeatedly made clear, no parent, guardian, or custodian can be the "ultimate decision-maker" of whether a minor has an abortion. *See, e.g.*, *Bellotti v. Baird*, 443 U.S. 622, 643 (1979) (holding that the "unique nature" of the abortion decision makes it inappropriate to give a third-party an absolute veto over a minor's abortion decision); *see also Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 899 (1992) (reaffirming that a state may not require parental notification absent an adequate judicial bypass option); *Planned Parenthood of Mo. v. Danforth*, 428 U.S. 52, 75 (1976) (holding that no state interest justifies a law giving parents veto power over their daughters' abortion decision). Contrary to Defendants' extraordinary misrepresentation of *Bellotti*, Defs.' Br. 12–13, the Court in that case made clear that "the potentially severe detriment facing a pregnant woman . . . is not mitigated by her minority . . . [and] unwanted motherhood may be exceptionally burdensome for a minor." *Bellotti*, 443 U.S. at 642 (citation omitted).

Moreover, contrary to Defendants' claims, Congress did not grant ORR parental rights, and it certainly did not – and could not – give ORR the right to veto a minor's abortion decision. Rather, Congress gave ORR the responsibility of ensuring that the best interests of the minor are considered in decisions related to their care. 6 U.S.C. § 279(b)(1)(A). Defendants have abused that responsibility. Indeed, rather than acting in the minor's best interests, Defendant Lloyd is supplanting his decision about abortion for the minor's decision and, in so doing, subordinating

the minor's health and welfare to his own personal religious beliefs. Notably, even in situations where a court has determined that a minor may consent to an abortion on her own, either because she is sufficiently mature or because an abortion without parental involvement is in her best interest, Defendants have subjected the minor to their coercive tactics and have vetoed her abortion decision. *See, e.g.*, Decl. of Jane Doe, ECF No. 5-2; Decl. of B. Amiri in Supp. of Pls.' Reply in Further Supp. of Class Cert. Ex. G 2, ECF No. 56-8. The length to which Defendant Lloyd is willing to go is crystalized in his shocking memorandum about Jane Poe: he denied Ms. Poe access to abortion, despite the fact that she had been raped and had expressed an intent to harm herself if she were forced to carry the pregnancy to term, and he based his decision on his personal objection to "participat[ing] in killing a human being in [ORR's] care." Defendant Lloyd's Note to File, Dec. 17, 2017, 8, ECF No. 92-1. In other words, Defendant Lloyd's decision had nothing to do with the objective best interests of Ms. Poe, and everything to do with Defendant Lloyd's anti-abortion ideology.

Finally, Defendants' policy contradicts their claim that, unlike with a parent, there is no "risk of retaliation or maltreatment from ORR, should the minor seek action ORR does not recommend or endorse." Defs.' Br. 13. If a minor requests an abortion – a medical procedure Defendants oppose – the record reveals that she will be subjected to shame, stigma, and humiliation; forced to undergo unnecessary ultrasounds; and pushed further into her pregnancy against her will, increasing the risks associated with the abortion while Defendants ultimately deny her access to abortion. *See, e.g.*, ECF Nos. 5-1–5-13; 56–56-12; 121–122-7. Thus, for all the reasons stated above, and in Plaintiffs' prior briefs, Defendants' arguments in opposition to Plaintiffs' request for a preliminary injunction should be rejected.

## **CONCLUSION**

In sum, for all the forgoing reasons, and the reasons discussed in Plaintiffs' prior briefs, Plaintiffs respectfully request that this Court certify the putative class, and issue a preliminary injunction protecting class members from further irreparable harm.

DATED: March 23, 2018                    Respectfully submitted,

Arthur B. Spitzer (D.C. Bar No. 235960)
Scott Michelman (D.C. Bar No. 1006945)
Shana Knizhnik (D.C. Bar No. 1020840)
American Civil Liberties Union Foundation
of the District of Columbia
915 15th Street NW, Second Floor
Washington, D.C. 20005
Tel. 202-457-0800
Fax 202-457-0805
*aspitzer@acludc.org*
*smichelman@acludc.org*
*sknizhnik@acludc.org*

/s/ Brigitte Amiri
Brigitte Amiri*
Meagan Burrows
Jennifer Dalven
Lindsey Kaley
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Tel. (212) 549-2633
Fax (212) 549-2652
*bamiri@aclu.org*
*mburrows@aclu.org*
*jdalven@aclu.org*
*lkaley@aclu.org*

Daniel Mach (D.C. Bar No. 461652)
American Civil Liberties Union Foundation
915 15th Street NW
Washington, DC 20005
Tel. (202) 675-2330
*dmach@aclu.org*

Elizabeth Gill
American Civil Liberties Union Foundation of
Northern California, Inc.
39 Drumm Street
San Francisco, CA 94111

12

Tel. (415) 621-2493
Fax (415) 255-8437
*egill@aclunc.org*

Melissa Goodman
American Civil Liberties Union Foundation of
Southern California
1313 West 8th Street
Los Angeles, California 90017
Tel. (213) 977-9500
Fax (213) 977-5299
*mgoodman@aclusocal.org*

Mishan Wroe
Riley Safer Holmes & Cancila LLP
456 Montgomery Street, 16th Floor
San Francisco, CA 94104
Tel. (415) 275-8522
Fax (415) 275-8550
*mwroe@rshc-law.com*

*\*Admitted pro hac vice*

*Attorneys for Plaintiffs*