UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROCHELLE GARZA, as guardian ad litem to unaccompanied minor J.D., on behalf of herself and others similarly situated, and JANE POE;<br><br>        Plaintiffs,<br><br>v.<br><br>ERIC D. HARGAN, *et al.,*<br><br>        Defendants.<br>_____ | )<br>)<br>)<br>)<br>)<br>)    No. 17-cv-02122-TSC<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## DEFENDANTS' MOTION FOR A STAY OF THE PRELIMINARY INJUNCTION

The Defendants, Alex M. Azar II, Steven Wagner, and Scott Lloyd, hereby request a stay pending appeal of the Court's March 30, 2018 Order granting Plaintiffs' Motion for a Preliminary Injunction ("PI"). *See* Order, ECF No. 127, at 1-2. The Order certifies a class defined as "all pregnant, unaccompanied immigrant minor children (UCs) who are or will be in the legal custody of the federal government," and provides that Defendants are:

(1) Enjoined from interfering with or obstructing any class member's access to: (1) a judicial bypass, (2) medical appointments related to pregnancy dating, (3) non-directive options counseling, (4) abortion counseling, (5) an abortion, or (6) other pregnancy-related care;
(2) Enjoined from forcing any class member to reveal the fact of their pregnancies and their abortion decisions to anyone, and from revealing those decisions to anyone themselves, either before or after an abortion;
(3) Enjoined from retaliating against any class member based on her decision to have an abortion;
(4) Enjoined from retaliating or threatening to retaliate against contractors that operate the shelters where class members currently reside for any actions that those contractors or shelters have taken or may take in facilitating class members' ability to access pregnancy and abortion-related medical care and/or an abortion.

1

*Id.* Defendants respectfully request that the Court grant a stay pending appeal of paragraphs 1 and 2 because they enjoin the Office of Refugee Resettlement ("ORR") from carrying out its statutory and custodial responsibilities by restricting its ability to involve the minor's parents and notify authorized medical personnel as it deems necessary, and it requires ORR to facilitate abortions of unaccompanied alien children ("UACs") in its care. *Id.*

The Court should grant a stay pending appeal because class certification is unwarranted, and the injunction unduly interferes with ORR's statutory obligations and is overbroad. Because the four named plaintiffs no longer have a live stake in the claims asserted, they cannot adequately represent a putative class of pregnant UACs in ORR custody. And the putative class is also fundamentally flawed given that not all pregnant UACs necessarily agree with the controversial pro-choice claims being asserted on their purported behalf. ORR's interests would be irreparably harmed absent a stay pending appeal because the injunction would significantly restrict its ability to provide appropriate medical attention to UACs in its care, involve the parents as necessary, and properly vet future sponsors, even when such communication is unopposed by the minor. The balance of hardship also tips in ORR's favor because the injunction requiring facilitation of abortions applies even in cases where sponsorship is imminent or voluntary departure would not be to an abusive environment, and therefore would not constitute an undue burden.

Defendants do not seek a stay of the March 30, 2018 Order regarding paragraphs 3 and 4 that govern non-retaliation against purported class members and third-party contractors, notwithstanding the fact that Plaintiffs have made no showing of retaliation against either a putative class member or a cooperative shelter.

We respectfully request a prompt ruling from this Court. Given the immediate irreparable harm caused by the Order's interference with ORR's ability to carry out its statutory and custodial

responsibilities, if a stay has not been granted by Monday, April 9, 2018, we intend to seek a stay from the Court of Appeals.

## ARGUMENT

The Court should grant a stay pending appeal. For a stay pending appeal, the Court weighs the same four factors it considers when determining whether to grant an injunction: "(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay." *Cuomo v. NRC*, 772 F.2d 972, 974 (D.C. Cir. 1985) (*citing WMATA v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C.Cir.1977)).

I. **The Court should stay the PI pending appeal because class certification was unwarranted.**

The Court should grant a stay regarding paragraphs 1 and 2 of the PI because class certification was unsupported. None of the named plaintiffs are members of the class comprised of "all pregnant, unaccompanied immigrant minor children (UCs) who are or will be in the legal custody of the federal government," Order, ECF No. 127, at 1, and so they cannot adequately represent the class. Even if the four named plaintiffs could fall under the "inherently transitory" doctrine to avoid mootness as a matter of law, which they do not, *see* Memorandum ECF No. 126, at 18-19, their lack of a live stake in the case remains highly problematic in satisfying the adequacy requirement and as a matter of due process for the other class members. It is well-settled that "[a] litigant must be a member of the class which he or she seeks to represent at the time the class action is certified by the district court." *Sosna v. Iowa*, 419 U.S. 393, 403 (1975) (noting that the named representative's claim was valid through class certification).

Here, on March 30, 2018 when this Court certified a class comprised of "all pregnant, unaccompanied immigrant minor children (UCs) who are or will be in the legal custody of the federal government," Order, ECF No. 127, at 1, none of the four named plaintiffs were members of their class or otherwise had a live stake in the litigation, having all undergone the abortion procedure they sought, and all identified class representatives were out of ORR custody.  Further, no additional class representatives have opted in or been substituted who continue to have an actual stake in the ongoing litigation when the class was certified.

To the extent this Court certified a class by using Jane Poe to meet the Rule 23 adequacy requirement, Jane Poe never agreed to serve as a class representative, and appears solely in her individual capacity.  *See* Memorandum, ECF No. 126, at 17 (noting "that J.P. still has claims arising out of Defendants' polices or practices that involve forced disclosure of her decision to obtain an abortion, claims shared by all members of the proposed class"); *see also* Plaintiffs' Renewed Motion to for Class Certification, ECF No. 121, at 10 (identifying only JD, JR, and JM as class representatives); Plaintiffs' Third Amended Complaint, ECF No. 118-1, at 1-2 ("Plaintiffs J.D. and Jane Roe, on behalf of themselves and a class of similarly situated pregnant unaccompanied immigrant minors in the legal custody of the federal government, and Plaintiffs Jane Poe and Jane Moe, on behalf of themselves").

The sponsorship placements and abortions obtained by the other named plaintiffs reinforce why they cannot establish class certification.  This Court rejected the government's numerosity objections by considering the class of *all* pregnant UACs in ORR custody (rather than just those seeking abortions), but certifying such a class creates fatal adequacy, typicality, and commonality problems under Rule 23, because the broad class of all pregnant UACs likely holds significantly divergent views on the controversial pro-choice claims being asserted on their purported behalf,

including many who do not want to obtain an abortion at all and who may oppose abortions and support ORR's challenged conduct here. *See* Sualog Decl. ¶ 13 ("Most UACs in ORR care and custody do not request abortions"). As discussed below, the Court's reasoning on the merits concerning parental notification, sponsorship, and voluntary departure do not apply equally to the whole class, which is highly problematic for certification. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (a common question of law and fact is a question "of such a nature that it is capable of class wide resolution -- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.").

Again, even accepting an overly-broad definition of the class to include all pregnant minors, not a single one has stepped forward to serve as a representative for the Court's defined class to substitute in place of the mooted named plaintiffs, which underscores its overbreadth and the lack of a proper class representative. The named plaintiffs' own divergent experiences in the UAC program demand the denial of their motion for class certification. Consequently, Rule 23 precludes class certification, and the injunction as to this putative class should be stayed accordingly.

***

## II. The Court should stay its injunction prohibiting ORR from revealing pregnancy-related information to anyone, including authorized medical personnel.

This Court's Memorandum Opinion and Order does not discuss the legal basis for paragraph 2 of the Court's Order, which enjoins ORR "from forcing any class member to reveal the fact of their pregnancies and their abortion decisions to anyone, and from revealing those decisions to anyone themselves, either before or after an abortion[.]" Order, ECF No. 127, at 2. No such legal basis exists. This Court seemed to suggest that such notification itself violates Plaintiffs' alleged Fifth Amendments rights concerning abortion. But that was not Plaintiffs'

5

claim. Rather, Plaintiffs' claim was that ORR's parental notification policy violates their right against compelled speech and disclosure of private information, and that claim is unfounded. *See* Third Amended Complaint ECF No. 118-1, at 17-18; *but see Nat'l Assoc. of Manufacturers v. NLRB*, 717 F.3d 947, 958 (D.C. Cir. 2013) (a "compelled-speech violation' occur[s] when 'the complaining speaker's own message was affected by the speech it was forced to accommodate'"). ORR does not require pregnant UACs to say anything to anyone, including their parents. So there is no compelled speech. *Snyder v. Phelps*, 562 U.S. 443, 458 (2011) (The First Amendment contemplates that listeners may be exposed to messages that "in someone's eyes are misguided.").

Not only is there no legal basis for enjoining ORR from informing *anyone* about the child's abortion decision,[1] the Court's Order would significantly impair ORR's ability to provide pregnant UACs with appropriate medical care while they remain in ORR custody. Paragraph 2 may prevent Defendants from sharing a minor's abortion medical records with her existing primary care physician or her obstetrician-gynecologist, which are provided to her through ORR. Paragraph 2 prevents Defendants from sharing a minor's pregnancy with emergency care providers even if she were incapacitated, and therefore unable to give consent, further undercutting Defendants' ability to provide appropriate medical attention for pregnant UACs in its care. Indeed, paragraph 2 could even extend beyond medical personnel, and preclude informing a driver who is transporting the minor to an abortion facility.

---

[1] Defendants read the second clause of paragraph 2—enjoining Defendants "from revealing those decisions to anyone themselves"—to only apply to a minor's decision to have an abortion *and* the minor does not consent to revealing that decision, given the impracticality that would arise should the Order require a minor to *personally* inform a medical professional every time the issue may arise even after she has given consent. We also do not read the Court's order to preclude HHS from sharing the fact of a minor's pregnancy in any circumstances. *Id.* (enjoining HHS only from "revealing [abortion] decisions").

Paragraph 2 also undercuts ORR's ability to act in the best interests of the child by enjoining ORR from notifying a minor's parents, regardless of the particular circumstances or the minor's age. *See* 6 U.S.C. § 279(b)(1)(A). This is true even if the minor were as young as twelve or thirteen years of age, when she will most need a parent's guidance and support. Indeed, a broad reading of paragraph 2, as we observe in footnote 2, would enjoin ORR from telling a minor's parents, even if the minor requested ORR to do so. To be sure, ORR and its grantees do not disclose to UAC's parents a UAC's health situation if doing so would be inconsistent with state law, or if doing so would "endanger the UAC's health and well-being." Sualog Decl. ¶ 10. Rather, ORR's parental notification policy exists "to make parents aware of their child's status, to help lead to the best decisions for the child's health, and to advance the child's best interests." Sualog Decl. ¶ 7. This aim is undermined by a blanket restriction on parental notification in every circumstance.

Finally, Paragraph 2 impairs Defendants' ability to vet potential sponsors to place UACs in a safe and stable environment. Given the strong sentiments evoked by the issue of abortion, Defendants might need to inquire as to a potential sponsor's views on the issue to ensure a potential sponsor would not retaliate against the minor. Indeed, "[i]f ORR concludes a UAC's pregnancy or abortion would lead to the UAC's abuse by a UAC's potential sponsor (including a parental sponsor), then ORR does not release the UAC to that sponsor." Sualog Decl. ¶ 10. The same reasoning that led this Court to issue an injunction barring retaliation against the minor calls on it to stay this aspect of the Court's order barring ORR from communicating to protect against retaliation. Allowing Defendants to disclose this information when necessary and appropriate would enable them to better gauge the suitability of potential sponsors for the minor.

For all of these reasons, the Court should stay paragraph 2 of the PI pending appeal.

7

*\*\*\**

### III. The Court should stay its order requiring ORR to provide abortion access because it requires government facilitation of the procedure.

Paragraph 1 of this Court's Order enjoins Defendants from "interfering with or obstructing any class member's access to . . . an abortion[.]" Order, ECF No. 127, at 1. This is overbroad to the extent it requires ORR to facilitate a UAC's ability to obtain an abortion. Under the framework of *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833 (1992), the government may pursue its interest in protecting life before fetal viability, provided it does not do so in a manner that imposes an undue burden on the mother. After viability, the government may regulate or even proscribe abortion. *Id*. at 879. ORR does not impose an undue burden under *Casey* whenever a UAC in ORR custody requests an abortion and ORR declines to facilitate it. Holding that ORR's policies violate the Fifth Amendment—and instead that the Constitution in every factual circumstance requires the government to facilitate an elective abortion for all unaccompanied minors that enter the United States—is incorrect. Memorandum, ECF No. 126, at 22-27.

Indeed, Judge Millett, for the *en banc* court in *Garza*, held that the ability to find a sponsor in a timely manner played an important role in determining whether there was a right to court ordered facilitation of the abortion by the government. *See Garza v. Hargan*, 874 F.3d 735, 738-39 (D.C. Cir. 2017) (en banc) ("centerpiece of the panel order" is the expeditious search for a sponsor and accepting that it is possible some "type[s] of short-term burden . . . could plausibly pass muster under Supreme Court precedent"); *see id.* at 739 (identifying five factual issues relating to promptly finding a sponsor that may be relevant to the right to court-ordered relief). In weighing these factors, what most troubled the *en banc* court in Ms. Doe's case was that the government did not allege that "there was any prospect of finding a sponsor at all," or that "a non-

8

family member could be identified, vetted, and take custody of J.D. within [the requested] eleven days." *Id.*

The *Garza* Court did not hold, however, that ORR's sponsorship process *per se* constitutes an undue burden because it "is typically a lengthy, complex process involving multiple stages, over which the UC has no control[.]" Memorandum, ECF No. 126, at 27. Rather, the *Garza* Court acknowledged that the UAC often "has precious little control over the sponsorship process[,]" while allowing for the possibility that the sponsorship process, if favorable, could resolve the constitutional question. 874 F.3d at 739.

The case of Jane Moe makes this point. Jane Moe arrived in ORR custody on December 22, 2017, and shortly thereafter identified a sponsor. ECF No. 108-1, at 1-2. On Thursday, January 11, 2018, she filed a motion for a TRO, demanding immediate access to abortion services. Motion, ECF No. 105. On Sunday, January 14, 2018, before the Court could even rule on the motion, Jane Moe was released to a sponsor. Notice, ECF No. 114, at 1. This is precisely the "type of short-term burden that could plausibly pass muster under Supreme Court precedent to bar an abortion" found by the *Garza* Court. 874 F.3d at 739.

A similar objection applies to the Court's analysis of the option of voluntary departure. The *Garza* Court suggested that voluntary departure was overly burdensome in the case of Jane Doe "given both the life-threatening abuse that J.D. claims to face upon return, and her potential claims of legal entitlement to remain in the United States." *Id.* at 740. But not all UACs are in those circumstances, and some could voluntarily depart without any burden at all and return to countries where they face neither abuse nor persecution.[2]

---

[2] Defendants again concede that for purposes of this motion for a stay of the PI, they are bound by the D.C. Circuit's October 24, 2017 *en banc* decision insofar as the law and the facts contained herein are indistinguishable. But to preserve the issue, Defendants reiterate their position that the government's refusal to facilitate an elective abortion does not impose an undue burden in

9

\*\*\*

## IV. The balance of the hardships and the public interest weighs in favor a stay pending appeal.

ORR has a legitimate and significant interest in ensuring that it can fulfill its statutory custodial obligations. That interest would be irreparably harmed if ORR is unable to communicate openly with medical personnel and the parents of UACs who come under its care, which would significantly restrict its ability to: (1) provide appropriate medical attention to the minor; (2) involve the minor's parents as it deems necessary; and (3) properly vet potential future sponsors for safe and stable placement. ORR's interest would also be irreparably harmed if it is required to affirmatively facilitate an abortion. Indeed, that interest would be completely extinguished in every instance the government is required to facilitate an abortion.

The public interest also weighs against incentivizing illegal immigration by compelling the federal government to facilitate an unaccompanied alien child's request for an elective abortion. *Cf. Landon v. Plsencia*, 459 U.S. 21, 34 (1982) ("The government's interest in efficient administration of the immigration laws at the border also is weighty. Further, it must weigh heavily in the balance that control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature.").

---

violation of the Fifth Amendment. Under *Planned Parenthood v. Casey*, the government is entitled to pursue its legitimate interests, provided that it does not impose an "undue burden" on a woman's choice to terminate her pregnancy before viability. 505 U.S. 833, 870 (1992). Plaintiffs cannot show that an alleged ORR policy of protecting fetal life necessarily imposes such an undue burden in every application, or even a large fraction of applications. At a minimum, an alien who illegally crosses the border and is detained retains the power to withdraw her application for admission and request voluntary departure to return to her home country, *cf. Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir. 1999) ("An alien in Parra's position can withdraw his defense of the removal proceeding and return home to his native land, thus ending his detention immediately. He has the keys in his pocket."), where she would be in the same circumstances she would have been in had she never entered the United States.

***

## CONCLUSION

For the foregoing reasons, the Court should grant a stay pending appeal of paragraphs 1 and 2 of its March 30, 2018 Order because it enjoins ORR to facilitate abortions of UACs in its care, and prevents ORR from carrying out its custodial responsibilities by notifying parents and medical personnel as it deems necessary.   Given the immediate irreparable harm caused by the Order's interference with ORR's ability to carry out its statutory and custodial responsibilities, if a stay has not been granted by Monday, April 9, 2018, we intend to seek a stay from the Court of Appeals.

DATED: April 3, 2018

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

AUGUST E. FLENTJE
Special Counsel

ERNESTO H. MOLINA
Deputy Director
Office of Immigration Litigation

BY: /s/ *W. Daniel Shieh*
W. DANIEL SHIEH
SABATINO F. LEO
MICHAEL HEYSE
Trial Attorneys
Office of Immigration Litigation
Civil Division, U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, D.C.  20044
Phone: (202) 305-9802
Fax: (202) 305-1890
daniel.shieh@usdoj.gov
sabatino.f.leo@usdoj.gov
michael.heyse@usdoj.gov

*Attorneys for Defendants*