# Exhibit A

*Medical Services Requiring Heightened ORR Involvement*

**Applicability**

This policy brings up to date the March 21, 2008, policy on medical procedures requiring heightened ORR involvement (hereinafter "Medical Procedures 2008 policy") as it applies to unaccompanied alien children ("UAC"), as defined in 6 U.S.C. § 279(g)(2). ORR issued the Medical Procedures 2008 policy stating that certain decisions would require heightened ORR involvement and limited decision-making by grantees. This document updates the cross-references in the Medical Procedures 2008 policy and otherwise brings that policy up to date to reflect current policy, including policy on abortion.

**General Policy**

Serious medical services, including significant surgical or medical procedures, abortions, and services that may threaten the life of a UAC, require heightened ORR involvement and limited decision-making by grantees.

**General Procedures**

When a grantee learns that a UAC has been advised by a doctor to undergo or wishes to seek serious medical services requiring heightened ORR involvement (i.e., significant surgical or medical procedures, abortions, and services that may threaten the life of a UAC), the grantee must follow the procedures for Significant Incident Documentation and Reporting at section 5.8 of the ORR Policy Guide (https://www.acf.hhs.gov/orr/resource/children-entering-the-united-states-unaccompanied-section-5#5.8) and for Medical Services at section 3.4 (https://www.acf.hhs.gov/orr/resource/children-entering-the-united-states-unaccompanied-section-3#3.4 ). In addition, for all serious medical services that require heightened ORR involvement other than abortions, the grantee must immediately notify the Deputy Director for Children's Programs and provide all available details about the situation. If the grantee is uncertain whether a serious medical service requires heightened ORR involvement, the grantee should notify the Division of Health for Unaccompanied Children and request guidance.

As the situation progresses, grantees must respond to requests from the Deputy Director for Children's Programs for information and updates as soon as possible and no later than within 24 hours of such requests. Further, for medical services and procedures governed by this policy other than abortion, grantees are prohibited from taking any actions in these cases without direction and approval from ORR. (Note: This does not include emergency medical situations. Follow procedures at section 3.4.5 for responding to medical emergencies.)

For all medical services and procedures governed by this policy (subject to the exceptions for abortion discussed below) in cases requiring heightened ORR involvement, ORR may contact or may require the grantee to contact the UAC's parent or legal guardian. Depending upon the particular circumstances, ORR (or the grantee at ORR's request) may inform the parent or legal guardian of the UAC's medical situation and ask the parent or legal guardian how he/she wishes the situation to be resolved.

**Medical Related Costs**

In instances where the cost of the medical procedure or the medical service requires a Treatment Authorization Request (TAR), the grantee must follow ORR policies related to obtaining a TAR, subject to any congressionally imposed appropriations restrictions. See ORR Policy Guide, 3.4.9 Provider Reimbursement (https://www.acf.hhs.gov/orr/resource/children-entering-the-united-states-unaccompanied-section-3#3.4.3.9).

Approval to cover the related costs in no way implies consent to conduct the procedure or provide the medical service when consent by a parent or legal guardian is required and cannot be obtained. In addition, ORR funds may not be used for legal services or court costs related to the case of a UAC seeking an abortion through a state judicial bypass procedure.

**Procedures Specific to Requests for Abortion and Alignment with State Law:**

Congress made the Secretary of HHS responsible for the care and custody of all unaccompanied alien children. 8 U.S.C. § 1232(b)(1).

Given the authority that Congress vested in HHS, the legal position of HHS is that state courts cannot lawfully compel the ORR federal staff or ORR care providers to: consent to the provision of abortions to UAC; bring UAC to state court; facilitate access to UAC by state-appointed guardians or attorneys ad litem; or provide a state court, or a state-appointed guardian or attorney ad litem, with access to federal records.

Nevertheless, HHS has determined as a matter of policy that HHS and ORR federal staff will exercise their delegated federal custodial authority in a manner informed by child welfare principles and in alignment with state law governing the conduct of medical providers who provide abortions to minors. For example, some states require that physicians provide parental notification of the intent to perform an abortion, receive a state judicial bypass order, or certify that a medical emergency exists, before providing an abortion to a minor. *See, e.g.,* Tex. Occ. Code Ann. § 164.052; Tex. Fam. Code §§ 33.002, 33.003, 33.004. These statutory requirements typically apply to the physicians who provide the abortions and not to the parents, guardians, or conservators of the minors. *See id.*

If a state-licensed physician seeks consent from ORR or ORR care provider staff to provide an abortion to a UAC, the policy of ORR remains that "neither ORR nor the care provider may provide consent."

If a physician seeks the assistance of ORR or ORR care provider staff in providing parental notification before performing an abortion, in compliance with state law, then ORR shall support the efforts of the physician to comply with state law. Such assistance may involve providing the parent's last known contact information to the physician, or facilitating communication between the physician and the parent. Subject to the exceptions listed below, neither the ORR federal staff nor ORR care providers shall require parental notification of the UAC's intent.

If the UAC obtains a state judicial bypass order authorizing the physician to provide an abortion to the UAC, and the UAC still wishes to have the abortion, then the ORR federal staff shall not undertake actions to prevent the UAC from obtaining the abortion. In that scenario, the ORR federal staff shall instruct the care provider sheltering the UAC that it shall not take actions to prevent the UAC from obtaining the abortion.

If the physician certifies that a medical emergency exists, and the UAC still wishes to have the abortion, then the ORR federal staff shall not undertake actions to prevent the UAC from obtaining the abortion. The ORR federal staff shall instruct care providers that they shall not take actions to prevent a UAC from obtaining an abortion in the event of such certified medical emergency.

### *No Obstruction or Interference*

ORR care providers must notify the ORR federal staff of any UAC who is pregnant or requesting an abortion using the Significant Incident Reporting mechanism in section 5.8 of the ORR Policy Guide. ORR federal staff and ORR care providers shall not take actions to obstruct or interfere with UAC access to state judicial bypass proceedings (however ORR is not required to fund representation in those hearings), non-directive options counseling, abortion counseling, or an abortion. ORR federal staff and ORR care providers shall ensure UAC have access to medical appointments related to pregnancy in the same way they would with respect to other medical conditions.

### *Notification*

ORR federal staff and care providers shall not communicate information about a UAC's pregnancy (including the fact of the pregnancy) or decision whether to have an abortion (before or after the abortion) to individuals other than staff members or the UAC, except that they may nevertheless communicate such information to an applicant or approved sponsor subject to the conditions discussed in the following paragraph, and to others if the UAC: needs emergency medical care and is unable to inform an emergency medical provider herself; or authorizes the ORR federal staff or care providers to communicate the information to a specific individual.

Nothing in this provision prohibits the ORR federal staff from communicating information to an applicant or approved sponsor regarding a serious health complication arising from pregnancy, birth or abortion that ORR finds in good faith the UAC may experience or require follow-up care to address after having been transferred to the custody of that applicant or approved sponsor. In addition, nothing in this provision prohibits the ORR federal staff from communicating information regarding the UAC's pregnancy to an applicant or approved sponsor if the ORR federal staff has found in good faith that ORR must communicate the information to confirm that the applicant or approved sponsor can provide the financial and emotional support needed by the UAC associated with carrying the pregnancy to term, giving birth, and/or parenting.

If the ORR federal staff makes either finding in good faith, then they shall document the finding in a declaration executed pursuant to 28 U.S.C. § 1746, and shall document attempts to first secure the UAC's consent to the disclosure and promptly notify the UAC when the disclosure has been made. Moreover, in all such cases, the information disclosed to the applicant or approved sponsor

should be limited to that which is appropriate to ensure that the sponsor is equipped to adequately care for the UAC, and communicated as close to the conclusion of the sponsorship vetting and approval process as reasonably possible and in time to ensure the sponsor can provide the financial and emotional support needed by the UAC associated with carrying the pregnancy to term, giving birth, or parenting.

When an ORR care provider is required, as a matter of state licensing requirements, to communicate information about a UAC's abortion-related decision to individuals other than the UAC, the ORR care provider acts in consultation with its own legal counsel and without the involvement of the ORR federal staff. The care provider will notify ORR of any communication with individuals other than the UAC that it makes pursuant to a state licensing requirement.

### *Applicability of Hyde Amendment*

Nothing in this policy supersedes applicable Federal appropriations restrictions (known as the "Hyde Amendment"), prohibiting the Federal Government from paying for abortions other than in cases where the pregnancy is the result of an act of rape or incest; or in the case where a woman suffers from a physical disorder, physical injury, or physical illness, including a life-endangering physical condition caused by or arising from the pregnancy itself, that would, as certified by a physician, place the woman in danger of death unless an abortion is performed. *See, e.g.,* sections 506 and 507, Title V of Pub. L. 116-94, "Further Consolidated Appropriations Act, 2020." Nothing in this policy may be read to prohibit ORR or HHS from requesting documentation and otherwise reasonably ensuring that requests for Federal payment adhere to the Hyde Amendment restrictions.

### *Care Providers with Sincerely Held Religious Objections to Pregnancy Termination*

Nothing in this policy prohibits ORR from providing accommodations to care providers who maintain a sincerely held religious objection to abortion. If a UAC in the care of such a provider is discovered to be pregnant, ORR's field staff will personally deliver any legally required notice to the UAC orally and in writing, along with other pregnancy-related information required by ORR policy.